# Exhibit A-1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|

## OCTOBER 2024                    02269

E-Filing Number: 2410041108

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN UQDAH | L□ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| EMMANUEL BULLOCK | L□ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
|  | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
|  | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 11 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration       ☐ Mass Tort          ☐ Commerce          ☐ Settlement<br>☒ Jury              ☐ Savings Action     ☐ Minor Court Appeal  ☐ Minors<br>☐ Non-Jury          ☐ Petition           ☐ Statutory Appeals   ☐ W/D/Survival<br>☐ Other: |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED**<br>**PRO PROTHY**<br><br>OCT **17** 2024<br><br>**L. BREWINGTON** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>          YES          NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: KAREN UQDAH , EMMANUEL BULLOCK

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C.<br>1525 LOCUST STREET<br>19TH FLOOR<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)772-1000 | none entered | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 309348 | sherrell.dandy@klinespecter.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *SHERRELL DANDY* | Thursday, October 17, 2024, 04:07 pm |

**COMPLETE LIST OF DEFENDANTS:**

1. L□ORÉAL USA, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
2. L□ORÉAL USA PRODUCTS, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
   10 HUDSON YARDS
   NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
   64 ROSS ROAD
   SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
   64 ROSS ROAD
   SAVANNAH GA 31405
6. BEAUTY BELL ENTERPRISE
   ALIAS: HOUSE OF CHEATHAM LLC
   647 MIMOSA BLVD.
   ROSWELL GA 30075
7. HOUSE OF CHEATHAM, LLC
   1445 ROCK MOUNTAIN BLVD
   STONE MOUNTAIN GA 30083
8. LUSTER PRODUCTS, INC.
   1104 WEST 43RD STREET
   CHICAGO IL 60609
9. AFAM CONCEPT, INC.
   ALIAS: JF LABS, INC.
   7401 S. PULASKI ROAD
   CHICAGO IL 60629
10. AVLON INDUSTRIES, INC.
    1999 NORTH 15TH STREET
    MELROSE PARK IL 60160
11. THE GIANT COMPANY, LLC
    1149 HARRISBURG PIKE
    CARLISLE PA 17013

# Exhibit A-2

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
    TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
    BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
    SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                    ATTORNEYS FOR PLAINTIFFS

*Filed and Attested by the Office of Judicial Records 17 OCT 2024 04:11 pm L. BREWINGTON*

---

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W<br>1049 LAURELEE AVENUE<br>READING, PA 19605 | IN THE COURT OF COMMON PLEAS *PHILADELPHIA* COUNTY, PENNSYLVANIA |
| *Plaintiffs* | |
| V. | |
| L'ORÉAL USA, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10017 | |
| AND | |
| L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001 | **JURY TRIAL DEMANDED** |
| AND | |
| SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001 | |
| AND | |
| STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405 | |
| AND | |

Case ID: 241002269

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

BEAUTY BELL ENTERPRISE D/B/A
HOUSE OF CHEATHAM, INC. AND
HOUSE OF CHEATHAM LLC
647 MIMOSA BLVD
ROSWELL, GA 30075

AND

HOUSE OF CHEATHAM, LLC
1445 ROCK MOUNTAIN BLVD
STONE MOUNTAIN, GA 30083

AND

LUSTER PRODUCTS, INC.
1104 WEST 43RD STREET
CHICAGO, IL 60609

AND

AFAM CONCEPT, INC. D/B/A JF LABS,
INC.
7401 S. PULASKI ROAD
CHICAGO, IL 60629

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

THE GIANT COMPANY, LLC
1149 HARRISBURG PIKE
CARLISLE, PA 17013

*Defendants*

Case ID: 241002269

## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 241002269

## CIVIL ACTION – COMPLAINT

Plaintiffs, Karen Uqdah and Emmanuel Bullock, through their undersigned counsel, Kline & Specter, P.C., hereby demand damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.      Plaintiffs Karen Uqdah and Emmanuel Bullock are adult individual citizens and residents of Pennsylvania, residing therein at 1049 Laurelee Avenue, Reading, PA 19605.

2.      Defendant, L'Oréal USA, Inc., ("L'Oréal") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

3.      Defendant, L'Oréal USA Products, Inc., ("L'Oréal Products") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

4.      Defendant, SoftSheen-Carson, LLC, ("Softsheen") is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.      Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson, LLC, will be collectively referred to as "L'Oréal Defendants."

Case ID: 241002269

6.     Defendant Strength of Nature, LLC, ("Strength of Nature") is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

7.     Defendant Godrej SON Holdings, Inc., ("Godrej") is, a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, GA. Upon information and belief, at all times relevant to this action, Godrej SON Holdings, Inc., has been the sole member and interested party of Strength of Nature, LLC.

8.     Defendants Strength of Nature, LLC and Godrej SON Holdings, Inc. will be collectively referred to as "Strength of Nature Defendants."

9.     Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. ("Beauty Bell") is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Blvd, Roswell, Georgia 30075. Upon information and belief, Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Gorgia.

10.     Defendant House of Cheatham, LLC, ("House of Cheatham") is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

11.     Defendants Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc and House of Cheatham, LLC, will be collectively referred to as "House of Cheatham Defendants."

Case ID: 241002269

12.     Defendant Luster Products, Inc. ("Luster Products") is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd Street, Chicago, IL 60609.

13.     Defendant AFAM Concept, Inc. d/b/a JF Labs Inc. ("AFAM"), is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, IL 60629.

14.     Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

15.     Defendant The Giant Company, LLC a/k/a and/or d/b/a Giant is a corporation with its principal place of business and headquarters located at 1149 Harrisburg Pike, Carlisle, PA 17013. At all times relevant hereto, The Giant Company owned and/or operated Giant located at 2174 W Union Blvd, Bethlehem, PA 18018.

## JURISDICTION

16.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, House of Cheatham Defendants, Defendant Luster Products, Defendant AFAM Concept, and Defendant Avlon Industries (hereinafter "Manufacturer Defendants") contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Mrs. Uqdah purchased and applied to her hair, to various companies and stores within the

Case ID: 241002269

Commonwealth of Pennsylvania, including but not limited to Defendant The Giant Company, LLC (hereinafter "Retailer Defendant").

20.     At all times relevant hereto, Manufacturer Defendants engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to be sold by Retailer Defendant.

21.     At all times relevant hereto, Retailer Defendant conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and merchandise, including Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm (hereinafter "Chemical Hair Relaxer Products") in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including the Chemical Hair Relaxer Products, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.     At all times relevant hereto, Manufacturer Defendants had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.     Additionally, Manufacturer Defendants' presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, Manufacturer Defendants consented to the exercise of

Case ID: 241002269

jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24. A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

25. Upon information and belief, at all relevant times, Manufacturer Defendants sold their products in Philadelphia County and regularly conducts business in Philadelphia County.

26. Upon information and belief, at all relevant times, The Giant Company LLC, has and continues to regularly conduct business in Philadelphia County through the operation of their nine Philadelphia retail locations.

27. The damages Plaintiffs seek, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiffs seek more than $50,000 in damages.

## **FACTUAL BACKGROUND**

28. At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

a. Dark & Lovely

b. Optimum

c. Bantu; and,

d. Mizani.

Case ID: 241002269

29.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

    a.     African Pride

    b.     Dr. Miracle's

    c.     Gentle Treatment

    d.     TCB; and,

    e.     Ultra Sheen.

30.     At all times material hereto, House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Africa's Best brand that Mrs. Uqdah used to chemically straighten her hair.

31.     At all times material hereto, Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Luster's Pink Oil brand that Mrs. Uqdah used to chemically straighten her hair.

32.     At all times material hereto, Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Hawaiian Silky brand that Mrs. Uqdah used to chemically straighten her hair.

33.     At all times material hereto, Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were

Case ID: 241002269

specifically marketed to black women, including but not limited to the Affirm brand that Mrs. Uqdah used to chemically straighten her hair.

34.    Mrs. Uqdah developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

35.    Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

36.    This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

37.    Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau.  The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

38.    In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool.  The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

39.    In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse. Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

Case ID: 241002269

40.     In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

41.     Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

42.     The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

43.     The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

44.     For first-time application, the relaxer cream is placed on the hair from the root to the end.  After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

45.     Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 241002269



46.    In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

47.    In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 241002269



48.     For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

49.     In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child.  Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Case ID: 241002269

50.     Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

51.     Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



52.     It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

53.     The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:



Case ID: 241002269

 



54.    Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

## ENDOCRINE DISRUPTING CHEMICALS

55.    Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 241002269

56.    These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

57.    EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

58.    This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

59.    A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

60.    Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

## Phthalates

61.    Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

62.    Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

63.    Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 241002269

64.    Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

65.    In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

66.    Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

**Parabens**

67.    Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

68.    Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

69.    A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

70.    In February of 2012, an article published in New America Medica authored by Thandisizwe Chimurenga entitled "How Toxic is Black Hair Care?" discussed prior and ongoing research regarding EDCs in black hair care products, and noted that "a team of researchers led by Dr. Lauren Wise of Boston University's Slone Epidemiology Center found strong evidence indicating that Black women's hair relaxer use increases the risk for uterine fibroid tumors by exposing Black women to various chemicals through scalp lesions and burns from the products."

Case ID: 241002269

71.     Chimurenga further noted that "May of 2011, Dr. Mary Beth Terry and others authored a study, the findings of which showed that African-American and African-Caribbean women were more likely to be exposed to hormonally-active chemicals in hair products."

72.     An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

73.     Dr. Terry's study, "Racial/Ethnic Differences in Hormonally-Active Hair Product Use: A Plausible Risk Factor for Health Disparities," published in the Journal of Immigrant Health, found that the African-American and African Caribbean women surveyed used products that contained chemicals—commonly referred to as endocrine-disrupting chemicals (EDCs)—linked to various reproductive and birth defects, breast cancer and heart disease.

74.     Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

75.     In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

76.     The synergistic effects of the combination of the known EDCs in the hair relaxers and other unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

Case ID: 241002269

77.     Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

78.     Despite decades of studies revealing the harmful effects of EDCs, the presence of EDCs in chemical hair relaxers, and the overwhelming disparity of gynecologic related injuries in black women that are known to be caused by EDC exposure, Defendants continue to produce the chemical hair relaxers without warning of the toxicity to the consumer.

## PLAINTIFF KAREN UQDAH'S HAIR RELAXER USE

79.     Plaintiff, Karenn Uqdah, consistently and frequently used Hair Relaxers, starting in 1968 through her final use on or around 2018.

80.     For decades, Mrs. Uqdah used the Chemical Hair Relaxer Products, which are manufactured and advertised by the named Manufacturer Defendants.

### L'Oréal Defendants

81.     Mrs. Uqdah used different variations of L'Oréal Defendants' Dark & Lovely hair relaxers, including but not limited to Dark and Lovely Beautiful Beginnings No-Mistake Smooth Relaxer.

82.     Mrs. Uqdah used different variations of L'Oréal Defendants' Optimum hair relaxers, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

83.     Mrs. Uqdah used different variations of L'Oréal Defendants' Bantu hair relaxers, including but not limited to Bantu No Base Relaxer.

84.     Mrs. Uqdah used different variations of L'Oréal Defendants' Mizani hair relaxers, including but not limited to Mizani Sensitive Scalp Relaxer.

Case ID: 241002269

85.     Mrs. Uqdah has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oréal Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Strength of Nature Defendants</u>

86.     Mrs. Uqdah used different variations of Strength of Nature Defendants' African Pride hair relaxers, including but not limited to:

   a.   African Pride Olive Miracle Deep Conditioning Crème-on-Crème No Lye Relaxer 8 Salon Pack Touch-UpsGentle Treatment No-Lye Relaxer

   b.   African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer

   c.   African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer With Aloe Deep Conditioner

   d.   African Pride Olive Miracle Deep Conditioning No-Lye Relaxer One Complete Application; and,

   e.   African Pride Olive Miracle Deep Conditioning No-Lye Relaxer, One Complete Touch-Up.

87.     Mrs. Uqdah used different variations of Strength of Nature Defendants' Dr. Miracle's hair relaxers, including but not limited to Dr. Miracle's No Lye Relaxer Kit.

88.     Mrs. Uqdah used different variations of Strength of Nature Defendants' Gentle Treatment hair relaxers, including but not limited to Gentle Treatment No-Lye Relaxer.

89.     Mrs. Uqdah used different variations of Strength of Nature Defendants' TCB hair relaxers, including but not limited to:

Case ID: 241002269

a.  TCB Naturals Conditioning Argan Oil Vitamin E & Olive No-Lye Relaxer, 2 Applications; and,

b.  TCB No-Base Crème Hair Relaxer with Protein & DNA.

90.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxers, including but not limited to:

a.    UltraSheen Supreme Conditioning No-Lye RelaxerGentle Treatment No-Lye Relaxer

b.    UltraSheen Ultra Moisturizing No-Lye Relaxer; and,

c.    UltraSheen Ultra Moisturizing No-Lye Relaxer, with Keratin.

91.    Mrs. Uqdah has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>House of Cheatham Defendants</u>

92.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Africa's Best hair relaxers, including but not limited to Africa's Best Herbal Intensive No-Lye Relaxer System.

93.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Affirm hair relaxers, including but not limited to:

a.    Affirm Crème Relaxer; and,

b.    Affirm Sensitive Scalp Relaxer.

94.    Mrs. Uqdah has reason to believe that House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer

Case ID: 241002269

products known to House of Cheatham, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

Defendant Luster Products

95.    Mrs. Uqdah used different variations of Defendant Luster Products' Luster Pink Oil hair relaxers, including but not limited to Luster's Pink Oil Moisturizer No-Lye Conditioning Relaxer.

96.    Mrs. Uqdah has reason to believe that Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Luster Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

Defendant AFAM

97.    Mrs. Uqdah used different variations of Defendant AFAM's Hawaiian Silky hair relaxers, including but not limited to Hawaiian Silky - Crème Conditioning No Lye Silky Smooth Sheen Relaxer.

98.    Mrs. Uqdah has reason to believe that Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant AFAM Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

Defendant Avlon

99.    Mrs. Uqdah used different variations of Defendant Avlon's Affirm hair relaxers, including but not limited to:

   a.    Affirm Crème Relaxer; and,

   b.    Affirm Sensitive Scalp Relaxer.

Page **22** of **41**

Case ID: 241002269

100.    Mrs. Uqdah has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

101.    She reapplied the relaxer to newly grown hair approximately every three months at both home and add hair salons using home hair relaxer kits until her last application on or around 2018.

102.    Mrs. Uqdah purchased hair relaxer home kits from various retailers, including but not limited to Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant.

103.    Mrs. Uqdah purchased multiple hair relaxer home kits from Giant for several years up until 2015, including the Chemical Hair Relaxer Products.

104.    The Chemical Hair Relaxer Products purchased and used by the Mrs. Uqdah to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

105.    Mrs. Uqdah has reason to believe that the Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm contained:

a.      phthalates, including but not limited to diethyl phthalate (DEP), bis(2-ethyhexyl) phthalate (DEHP), and benzylbutyl phthalate

b.      Bisphenol A;

c.      cyclosiloxanes, including but not limited to octamethylcycloetrasiloxane (D4), decamethylcyclopentasiloxane (D5), and dodecamethylcyclohexylsiloxane (D6) parabens, including but not limited methyl paraben, ethyl paraben, bis(2-ethylhexyl);

Case ID: 241002269

d.    antimicrobials, including but not limited to o-phenylphenol, triclosan, and triclocarban;

e.    ethanolamines, including but not limited to menoethanolamine and diethanolamine;

f.    alkylphenols, including but not limited to 4-t-octylphenol, 4-t-nonylphenol, nonylphenol monoethoxylate, and nonylphenol diethoxylate;

g.    UV filters including, but not limited to benzophenone, benzophenone-1, benzophenone-2, benzophenone-3, oxtinoxate, and octadimethyl PABA;

h.    fragrances, including but not limited to benzylcetate, eugenol, hexyl cinnemal, limonene, linalool, methyl eugenol, methyl salicylate, pinene, terpineol, AHTN, bucinal, diphenyl ether, DPMI, HHCB, isobornyl acetate, methyl ionone, musk ketone, musk xylene, and phenethyl alcohol.

106.    The Chemical Hair Relaxer Products purchased and used by Mrs. Uqdah increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

**HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS**

107.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

108.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

109.    Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

Case ID: 241002269

110.     There are two types of endometrial cancers.  Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

111.     Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

112.     Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

113.     Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

114.     Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

115.     One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body.  Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

116.     Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

117.      For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

118.     Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

119.     Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

Case ID: 241002269

120.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

121.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

122.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

123.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

124.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

125.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

126.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

127.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair

Case ID: 241002269

relaxers.  Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70.  However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

128.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years.  The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

129.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

130.    The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

## PLAINTIFF KAREN UQDAH'S CANCER DIAGNOSIS

131.    In December of 2016, at the age of fifty-eight, Ms. Uqdah was diagnosed with endometrial adenocarcinoma, FIGO grade 2.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 241002269

132.     Mrs. Uqdah's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

133.     Ms. Uqdah suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy, radiation, and chemotherapy.

## DISCOVERY RULE

134.     Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

135.     Plaintiffs reserve the right to plead and invoke the discovery rule.  Mrs. Uqdah's endometrial cancer is a latent injury.  Accordingly, under such circumstances, Plaintiffs could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiffs lacked the salient facts behind the cause of her endometrial cancer, and Plaintiffs could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiffs' action.

136.     Further, Plaintiffs did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

137.     The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Mrs. Uqdah at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiffs.

## COUNT I
## STRICT LIABILITY – DESIGN DEFFECT

Case ID: 241002269

**(Karen Uqdah v. All Defendants)**

138.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

139.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and distribution of the Chemical Hair Relaxer Products in a defective and unreasonably dangerous condition to consumers, including Mrs. Uqdah.

140.     Mrs. Uqdah used the Chemical Hair Relaxer Products frequently and consistently.

141.    Defendants marketed and advertised the Chemical Hair Relaxer Products as a safe product for use by consumers, specifically to black women and women of color, including Mrs. Uqdah, despite knowing that they contained EDCs and other harmful chemicals.

142.    At all relevant times, the Chemical Hair Relaxer Products reached their intended consumers, including Mrs. Uqdah, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

143.    Manufacturer Defendants had a duty to create the Chemical Hair Relaxer Products in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

144.    Retailer Defendants had a duty to ensure that the Chemical Hair Relaxer Products were not defective and safe for their intended use before selling said products to consumers, such as Ms. Uqdah.

145.    Defendants' Chemical Hair Relaxer Products were defective as they were formulated, designed, and manufactured with carcinogens.

Case ID: 241002269

146.    The Defendants' Chemical Hair Relaxer Products were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as Mrs. Uqdah, would contemplate.

147.    Further, the magnitude of the danger associated with use of the Chemical Hair Relaxer Products outweighs the utility of these products.

148.    The dangers of the Chemical Hair Relaxer Products were unknown to the ordinary consumer.

149.    Mrs. Uqdah did not know of these dangers. If she would have known, these dangers would have been unacceptable to her, and she would not have used the Chemical Hair Relaxer Products.

150.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

151.    At the time of Mrs. Uqdah's exposure, the Chemical Hair Relaxer Products were being used in a normal, intended, or anticipated manner, as a chemical hair straightener product.

152.    Mrs. Uqdah used the Chemical Hair Relaxer Products without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

153.    The foreseeable risks associated with use of the Chemical Hair Relaxer Products exceeded the alleged benefits associated with their design and formulation.

154.    Defects in Defendants' Chemical Hair Relaxer Products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

Case ID: 241002269

155.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and,

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN
### (Karen Uqdah v. All Defendants)

156.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

157.     Mrs. Uqdah brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

158.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products, which are defective and unreasonably dangerous to its consumers, including Mrs. Uqdah because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

Case ID: 241002269

159.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

160.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

161.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

162.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of the Chemical Hair Relaxer Products; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

163.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

164.    Mrs. Uqdah reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

165.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Mrs. Uqdah could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

Case ID: 241002269

166.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Mrs. Uqdah was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

167.    Defendants' failure to warn regarding the dangers associated with use of the Chemical Hair Relaxer Products increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

168.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT III
## NEGLIGENCE
### (Karen Uqdah v. Manufacturer Defendants)

169.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

Case ID: 241002269

170.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products.

171.    Mrs. Uqdah used the Chemical Hair Relaxer Products.

172.    Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of the Chemical Hair Relaxer Products, including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

173.    Defendants had a duty to provide true and accurate information and warnings concerning the risks of using the Chemical Hair Relaxer Products.

174.    Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products and the propensity for the Hair Relaxers to cause cancer.

175.    Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of the Chemical Hair Relaxer Products were unaware of the carcinogenic risks associated with use of the product.

176.    Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

> a.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine whether they were safe for their intended use;
>
> b.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 241002269

c.   Marketing, advertising, and recommending the use of the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

d.   Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

e.   Failing to disclose the risk of serious harm associated with use the Chemical Hair Relaxer Products;

f.   Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use the Chemical Hair Relaxer Products;

g.   Failing to use reasonable and prudent care in the design, development, and manufacturing of the Chemical Hair Relaxer Products, so as to avoid the risk of serious harm associated with use;

h.   Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within the Chemical Hair Relaxer Products, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

i.   Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to the Chemical Hair Relaxer Products, such as side effects of exposure to endocrine-disrupting chemicals;

Case ID: 241002269

j.     Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included the Chemical Hair Relaxer Products; and,

k.     Marketing, advertising, and recommending the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

l.     Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

m.     Failing to disclose the risk of serious harm associated with use of Chemical Hair Relaxer Products;

n.     Representing that the Chemical Hair Relaxer Products were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not; and

o.     Continuing to manufacture and sell the Chemical Hair Relaxer Products, with the knowledge that the relaxers were unreasonably safe and dangerous.

177.    It was reasonably foreseeable that consumers, including Mrs. Uqdah, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Chemical Hair Relaxer Products.

178.    Defendants' negligent decisions to market and distribute the Chemical Hair Relaxer Products increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Mrs. Uqdah's cancer.

Case ID: 241002269

179.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.     Economic losses, including medical care and lost earnings; and,

    b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES
### (Karen Uqdah v. All Defendants)

180.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

181.     At all relevant times, Manufacturer Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Chemical Hair Relaxer Products that Mrs. Uqdah used into the stream of commerce.

182.     At the time Manufacturer and Retailer Defendants, marketed, sold, and distributed their Chemical Hair Relaxer Products for use by Mrs. Uqdah, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 241002269

183.    Before the time of Mrs. Uqdah's use of the Chemical Hair Relaxer Products, Defendants impliedly warranted to consumers, including Mrs. Uqdah, that their relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

184.    Defendants, however, failed to disclose that the Chemical Hair Relaxer Products have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Mrs. Uqdah's cancer.

185.    Mrs. Uqdah reasonably relied upon the skill, superior knowledge, and judgment of Defendants, and upon their implied warranties that their Chemical Hair Relaxer Products were of merchantable quality and fit for their intended purpose or use.

186.    Manufacturer Defendants' Chemical Hair Relaxer Products were expected to reach, and did in fact reach, consumers and/or users, including Mrs. Uqdah, without substantial change in the condition in which they were manufactured and by Manufacturer Defendants and sold by Retailer Defendants.

187.    At all relevant times to this litigation, Defendants were aware that consumers and users of their Chemical Hair Relaxer Products, including Mrs. Uqdah, would use the products as marketed; therefore, Mrs. Uqdah was a foreseeable user of the Chemical Hair Relaxer Products.

188.    Defendants intended that their Chemical Hair Relaxer Products relaxers be used in the manner in which Mrs. Uqdah was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

Case ID: 241002269

189.    In reliance on Defendants' implied warranty, Mrs. Uqdah used the Chemical Hair Relaxer Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Manufacturer and Retailer Defendants.

190.    Mrs. Uqdah could not have reasonably discovered or known of the risks of serious injury associated with the Chemical Hair Relaxer Products.

191.    Defendants breached their implied warranty to Mrs. Uqdah in that the Chemical Hair Relaxer Products were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

192.    Defendants' Chemical Hair Relaxer Products have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Mrs. Uqdah sustained.

193.    The harm caused by Defendants' Chemical Hair Relaxer Products far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

194.    As a direct and proximate result of Defendants' wrongful acts and omissions Mrs. Uqdah has suffered severe and permanent physical and emotional injuries.

195.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

        a.    Economic losses, including medical care and lost earnings; and

        b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

Case ID: 241002269

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

**COUNT V**
**LOSS OF CONSORTIUM**
**(Emmanuel Bullock v. All Defendants)**

196.    The Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

197.    As a result of the negligence detailed at length above of all the above-named Defendants, their agents, servants, employees and agents ostensible or direct set forth herein, Plaintiff Emmanuel Bullock suffered the loss of services, society and comfort and companionship of his wife, Karen Uqdah.

1.    As the result of the negligence of the above-named Defendants, Emmanuel Bullock claims the full measure of damages allowable under Pennsylvania law for the loss of consortium of his wife, Karen Uqdah.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Case ID: 241002269

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:  October 17, 2024

Case ID: 241002269

## <u>VERIFICATION</u>

I, Karen Uqdah, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: __10/17/2024__

_____
Karen Uqdah, Plaintiff

## VERIFICATION

I, Emmanuel Bullock, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: __10/17/2024__

_____
Emmanuel Bullock, Plaintiff

# Exhibit A-3

**GOLDBERG SEGALLA, LLP**
**BY: JOSEPH J. WELTER, ESQUIRE**
**ATTORNEY ID NO. 307885**
**BY: ROBERT J. HAFNER, ESQUIRE**
**ATTORNEY ID NO. 44105**
**BY: STEPHEN A. SHEINEN, ESQUIRE**
**ATTORNEY ID. NO. 61993**
**BY: NICOLE CASPERS, ESQUIRE**
**ATTORNEY ID NO. 335320**
**1700 Market Street, Suite 1418**
**Philadelphia, PA 19103-3907**
**T: 267.519.6800/F:267.519.6801**
**EMAIL:** jwelter@goldbergsegalla.com
rhafner@goldbergsegalla.com
ssheinen@goldbergsegalla.com
ncaspers@goldbersegalla.com

*Attorneys for Defendant,*
AFAM Concept, Inc. (incorrectly
pled as AFAM Concept, d/b/a JF
Labs, Inc. )

*Filed and Attested by the*
*Office of Judicial Records*
*28 OCT 2024 02:46 pm*
*J. GILLIAM*

| | | |
|---|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK | : | COURT OF COMMON PLEAS |
| Plaintiffs | : | PHILADELPHIA COUNTY |
| | : | |
| Vs. | : | OCTOBER TERM, 2024 |
| | : | |
| L'OREAL USA, INC, ET AL | : | NO. 2269 |
| | : | |

### ENTRY OF APPEARANCE AND DEMAND FOR JURY TRIAL

**TO THE OFFICE OF THE PROTHONOTARY**:

Please enter the appearances of Joseph J. Welter, Esquire, Robert J. Hafner, Esquire, Stephen A.

Sheinen, Esquire and Nicole Caspers, Esquire on behalf of AFAM Concept, Inc. (incorrectly pled as

AFAM Concept, Inc. d/b/a JF Labs, Inc.) only in the above matter.

### DEMAND FOR JURY TRIAL

Defendant AFAM Concept, Inc. (incorrectly pled as AFAM Concept, Inc. d/b/a JF Labs, Inc.)

hereby demands a jury of 12 members and two (2) alternates in the above captioned matter.

GOLDBERG SEGALLA

By:   /S/ Stephen A. Sheinen
JOSEPH J. WELTER, ESQUIRE
ROBERT J. HAFNER, ESQUIRE
STEPHEN A. SHEINEN, ESQUIRE
NICOLE CASPERS, ESQUIRE
Attorneys for Defendant
AFAM Concept, Inc. (incorrectly pled as AFAM
Concept, Inc. d/b/a JF Labs, Inc.)

Case ID: 241002269

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2024 a true and correct copy of the

within Entry of Appearance was filed with the Court and served upon all counsel of record via the

ECF System.

GOLDBERG SEGALLA

By:    */S/ Stephen A. Sheinen*
STEPHEN A. SHEINEN, ESQUIRE
Attorney for Defendant
AFAM Concept, Inc. (incorrectly pled as AFAM
Concept, Inc. d/b/a JF Labs, Inc.)

# Exhibit A-4

KAREN UQDAH,

   Plaintiff,

  v.

AVLON INDUSTRIES, INC., et al.,

   Defendants.

:
:
:
:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

OCTOBER TERM, 2024
NO. 2269

*Filed and Attested by the
Office of Judicial Records
20 NOV 2024 03:41 pm
S. GILLIAM*

## ORDER

   AND NOW this _____ day of _____, 2024, upon consideration of Defendant Avlon Industries, Inc.'s Preliminary Objections to Plaintiff's Complaint, and any responses thereto, it is **HEREBY**

**ORDERED AND DECREED** that the Preliminary Objections are **SUSTAINED,** and

   1.  Any and all claims in Plaintiff's Complaint against Defendant Avlon Industries, Inc. are **DISMISSED WITH PREJUDICE;** and

   2.  Plaintiff's claims for punitive damages against Defendant Avlon Industries, Inc. are **DISMISSED WITH PREJUDICE.**

           BY THE COURT:

           _____

                  J.

**Notice To Plead**: You are hereby notified to file a written response to the enclosed Preliminary Objections within 20 days or a judgment will be entered against you.

*Christopher McGowan*
Christopher McGowan, Esquire

**GOLDBERG SEGALLA LLP**
**BY:  CHRISTOPHER MCGOWAN**
**      JOSEPH CAGNOLI, JR., ESQUIRE**
**ATTORNEY ID NO.:  88744/58687**
**1400 MARKET STREET, SUITE 1268**
**PHILADELPHIA, PA 19103-3907**
T:  267-519-6760
F:  267-519-6761
Email:  cmcgowan@goldbergsegalla.com

*Attorneys for Defendant*
*Avlon Industries, Inc.*

| | | |
|---|---|---|
| KAREN UQDAH,<br><br>          Plaintiff,<br><br>     v.<br><br>AVLON INDUSTRIES, INC., et al.,<br><br>          Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>OCTOBER TERM, 2024<br>NO. 2269 |

**PRELIMINARY OBJECTIONS OF AVLON INDUSTRIES, INC. , TO PLAINTIFF'S COMPLAINT**

   Defendant, Avlon Industries, Inc., (hereinafter referred to as "Avlon" or "Moving Defendant"), by and through its undersigned counsel, Goldberg Segalla LLP, hereby files the following Preliminary Objections to Plaintiff's Complaint pursuant to Pennsylvania Rule of Civil Procedure 1028, and in support thereof, avers as follows:

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

2

Case ID: 241002269
Control No.: 24111598

1.      On October 14, 2024, Plaintiff filed a Complaint against Avlon Industries, Inc.. A true and correct copy of the Complaint is attached hereto as Exhibit A.

2.      Plaintiff alleges that she developed endometrial cancer as a result of using various hair relaxer products for five decades. (*See* Ex. A.)

3.      Plaintiff filed this lawsuit after the publication of a first-ever "groundbreaking study" observing a purported association between the use of hair straightening products and uterine cancer (the "Chang Article"). (Ex. A ¶¶ 126, 127 n.1.)[1]

4.      Plaintiff alleges that she used 14 different hair relaxer brands over more than three decades and alleges that these products are associated with 11 different Defendants. (Ex. A ¶¶ 2-4, 6-7, 9-10, 12-15)

5.      Plaintiff does not identify all of the hair relaxer products she used. Rather, she alleges that she used products from various brands including, but not limited to, Avlon Industries, Inc.'s Affirm brand, all of which have marketed multiple hair relaxer products over time. (Ex. A ¶¶ 33, 99)

6.      Plaintiff alleges that she used "different variations" of hair relaxers from Avlon's Affirm hair relaxer "including but not limited to Affirm Crème Relaxer; Affirm Sensitive Scalp Relaxer; and Affirm FiberGuard Sensitive Scalp Conditioning Relaxer." (Ex. A ¶99.) But Plaintiff fails to identify any of the other variations of Avlon hair relaxer products she used.

7.      Plaintiff alleges that she used various relaxer products for approximately 50 years beginning in 1968, during which time she  used at least 13 other types of hair relaxers manufactured by seven other defendants. (Ex. A ¶ 79)

---

[1] (Citing Che-Jung Chang, PhD, et al., *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, 114 J. Nat'l Cancer Inst., no. 12, Dec. 2022, at 1636 (published Oct. 17, 2022), https://academic.oup.com/jnci/article/114/12/1636/6759686.)

Case ID: 241002269
Control No.: 24111598

8.    Plaintiff does not disclose when or how frequently she used the products beyond claiming that she used a hair relaxer belonging to one of the 14 brands approximately every three months. (Ex. A ¶¶ 83, 101.)

9.    Plaintiff resides in Reading, Berks County, Pennsylvania. (Ex. A ¶ 1.)

10.    Defendants are located either in Cumberland County, Pennsylvania, or outside of Pennsylvania entirely. (Ex. A ¶¶ 2-4, 6-7, 9-10, 12-15.)

11.    Pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(1), (a)(2), (a)(3), (a)(4), and 2149(a), Avlon Industries, Inc. now files the within Preliminary Objections to Plaintiff's Complaint.

## II. **PRELIMINARY OBJECTIONS**

12.    Preliminary objections may be filed by any party to any pleading on grounds that include: the pleading fails to conform to law or rule of court or includes scandalous or impertinent matter; the pleading is not sufficiently specific; the pleading is legally insufficient (demurrer); or venue is improper. Pa.R.Civ.P. 1028(a)(1)-(4).

13.    All preliminary objections are to be raised at one time. Pa.R.Civ.P. 1028(b). Two or more preliminary objections may be raised in one responsive pleading. *Id.* The grounds for each preliminary objection shall be stated and may be inconsistent with each other. *Id.* The role of the trial court in ruling on preliminary objections is to determine whether the facts, as pled, are legally sufficient to allow a claim to proceed. *Firing v. Kephart,* 353 A.2d 833, 835 (Pa. 1976).

### B.    **Counts III and IV Should Be Dismissed Pursuant to Rule 1028(a)(4) Because Federal Law Preempts These Claims.**

14.    Avlon Industries, Inc. incorporates by reference all preceding paragraphs as if fully set forth herein.

4

Case ID: 241002269
Control No.: 24111598

15.     Plaintiff's claims for negligence (Count III) and breach of implied warranties (Count IV) are expressly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). The FDCA, 21 U.S.C. § 301, *et seq.,* provides that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. § 379s(a).

16.     While FDCA preemption does not apply to products liability claims, it bars all other claims that seek to impose labeling requirements that are not identical to those imposed by the FDCA and its regulations. *Critcher v. L'Oréal USA, Inc.,* 959 F.3d 31, 35-36 (2d Cir. 2020).

14.     Plaintiff's Complaint would require Avlon Industries, Inc. to identify constituent ingredients in the fragrance component of its hair relaxers. (Ex. A ¶ 76 (alleging that "unknown chemicals" are "hidden under the ingredient title 'fragrances'").) However, FDA regulations expressly do not require disclosing the ingredients in the fragrance component. 21 C.F.R. § 701.3(a).

18.     Plaintiff's non-products liability claims are therefore preempted.

**WHEREFORE**, Avlon Industries, Inc. respectfully requests that Counts III and IV of the Complaint be dismissed.

C.     <u>**Counts I through IV Should Be Dismissed Pursuant to Rules 1028(a)(2) and (a)(3) Because Plaintiff Fails to Satisfy Pennsylvania's Fact-Pleading Standards and Plaintiff's Allegations Are Insufficiently Specific.**</u>

19.     Avlon Industries, Inc. incorporates by reference all preceding paragraphs as if fully set forth herein.

20.     Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2), a preliminary objection may be filed where a pleading fails to conform to law or rule of court. Pa.R.Civ.P.

Case ID: 241002269
Control No.: 24111598

1028(a)(2). Rule 1028(a)(3) separately provides that a preliminary objection may be filed if a pleading is insufficiently specific. *Id.* 1028(a)(3).

21.    The Commonwealth of Pennsylvania is a fact pleading jurisdiction. Under Pennsylvania's system of fact pleading, the plaintiff bears the burden of defining the issues, and setting forth every act or performance essential to that end in the complaint. *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.,* 613 A.2d 1235, 1238 (Pa. Super. Ct. 1992).

22.    Further, pursuant to Pennsylvania Rule of Civil Procedure 1019(a), the material facts on which a cause of action or defense is based shall be stated in a concise and summary form. Pa.R.Civ.P. 1019(a).

23.    Rule 1019(f) further provides that "[a]verments of time, place and items of special damages shall be specifically stated." Pa.R.Civ.P. 1019(f).

24.    Pleadings are to place the defendant on notice of the intended grounds for suit, and should not require the defendant to guess at their substance. *Schweikert v. St. Luke's Hosp. of Bethlehem,* 886 A.2d 258, 270 (Pa. Super. Ct. 2005).

25.    Plaintiff's allegations against Avlon Industries, Inc. are so vague and conclusory that they cannot apprise Avlon Industries, Inc. of the precise nature of Plaintiff's claims. As a result, Avlon Industries, Inc. cannot understand the specific basis for which recovery is sought and cannot, therefore, understand the grounds for defense.

26. Plaintiff's Complaint violates the specificity requirements because it fails to identify all of the Avlon Industries, Inc. products Plaintiff alleges she used, when she used them and how often she used them, and makes no attempt to identify the chemical Plaintiff claims caused her injury and whether any such chemical was included in a product that she used. This lack of

6

Case ID: 241002269
Control No.: 24111598

specificity, alone, is sufficient grounds to dismiss all of Plaintiff's claims against Avlon Industries, Inc.

**WHEREFORE**, Avlon Industries, Inc. respectfully requests that the Complaint be dismissed.

### D.    Plaintiff's Strict Liability Causes of Action (Counts I and II) Should Be Dismissed Pursuant to Rule 1028(a)(4) Because Plaintiff Fails to Identify All of the Products that Caused Her Injury and How the Injuries Were Caused.

27.    Avlon Industries, Inc. incorporates by reference all preceding paragraphs as if fully set forth herein.

28.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection in the nature of a demurrer may be filed if a pleading is legally insufficient. Pa.R.Civ.P. 1028(a)(4).

29.    "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Feingold v. Hendrzak,* 15 A.3d 937, 934 (Pa. Super. Ct. 2011) (citation omitted). However, "the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion." *Silo v. Ridge,* 728 A.2d 394, 398 (Pa. Commw. Ct. 1999) (citation omitted) (internal quotation marks omitted).

30.    To state a strict products liability claim, Pennsylvania law requires that an allegedly defective product be "***causally*** connected to a compensable injury." *Tincher v. Omega Flex, Inc.,* 104 A.3d 328, 383-84 (Pa. 2014) (emphasis added); *Spino v. John S. Tilley Ladder Co.,* 696 A.2d 1169, 1142 (Pa. 1997) ("Pennsylvania law requires that a plaintiff prove two elements in a product

Case ID: 241002269
Control No.: 24111598

liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.").

31.     The Complaint does not identify all of the Avlon Industries, Inc. products allegedly used by Plaintiff, much less allege a causal connection between any such product and Plaintiff's alleged injury.

**WHEREFORE**, Avlon Industries, Inc. respectfully requests that Counts I and II of the Complaint be dismissed.

### E.    Plaintiff's Negligence and Warranty Causes of Action (Counts III and IV) Should Be Dismissed Pursuant to Rule 1028(a)(4) Because Plaintiff Fails to Identify Products, Fails to Allege a Duty, and Fails to Allege Causation.

32.     Avlon Industries, Inc. incorporates by reference all preceding paragraphs as if fully set forth herein.

33.     Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection may be filed if a pleading is legally insufficient. Pa.R.Civ.P. 1028(a)(4).

34.     "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Feingold,* 15 A.3d at 934 (citation omitted). However, "the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion." *Silo,* 728 A.2d at 398 (citation omitted) (internal quotation marks omitted).

35.     Like strict liability claims, claims for negligence and breach of warranty under Pennsylvania law similarly require proof that the defendant's negligence or breach of warranty caused the plaintiff's injury. *See, e.g., Rhodes v. Avis Budget Car Rental, LLC,* No. C.A. 15- 1459, 2016 WL 1435443, at *3, *7 (W.D. Pa. Apr. 12, 2016) (dismissing claims for negligence and

Case ID: 241002269
Control No.: 24111598

breach of warranty where the plaintiff's allegations could not establish that the defendant's conduct caused the plaintiff's injury).

36.    Additionally, a negligence claim is appropriately dismissed where the plaintiff does not specifically allege the existence of a statutory or common law duty. *See Phillips v. Cricket Lighters,* 834 A.2d 1000, 1008 (Pa. 2003) ("It is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty 'to conform to a certain standard of conduct;' that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." (citation omitted)).

37.    Plaintiff's Complaint identifies some of the Avlon Industries, Inc. products she allegedly used, but alleges that she used other "variations" of Avlon Industries, Inc. products, which she fails to name. (Ex. A ¶ 99.) Plaintiff's failure to identify all of the products she used renders her unable to properly allege that Avlon Industries, Inc. owed her a duty of care as to any of those products. Furthermore, Plaintiff's Complaint similarly does not identify the ingredient or chemical in any product that she alleges caused her to develop endometrial cancer. Her failure to allege such facts demonstrating causation is also fatal to her negligence claim.

38.    Plaintiff's failure to allege all of the products she used and how they were defective is also fatal to her breach of warranty claim. To prevail on a claim for breach of implied warranty of merchantability, a plaintiff must show (1) that the seller is a merchant with respect to goods of that kind and (2) that the goods are merchantable, including that they "are fit for the ordinary purposes for which such goods are used" and that they "conform to the promises or affirmations of fact made on the container or label if any." *See* 13 Pa.C.S.A. § 2314. Without identifying all of the products she used, Plaintiff necessarily cannot allege that the goods failed to conform to promises made on their containers. And because Plaintiff does not allege what promises were made

Case ID: 241002269
Control No.: 24111598

on the labels of the few products she does name, she has not pled a warranty claim as to any of those products.

39.    Plaintiff's negligence and warranty claims are insufficiently pled and should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).

**WHEREFORE**, Avlon Industries, Inc. respectfully requests that Counts III and IV of the Complaint be dismissed.

## F.    Plaintiff's Claim for Punitive Damages Should be Stricken Pursuant to Rule 1028(a)(4).

33.     Avlon Industries, Inc. incorporates by reference all preceding paragraphs as if fully set forth herein.

34. Avlon Industries, Inc. objects to Plaintiff's claims for punitive damages because Plaintiff fails to allege the requisite levels of conduct on behalf of Avlon Industries, Inc.. Claims for punitive damages must be supported by allegations of malicious, willful, or reckless conduct. *See Wright v. Ryobi Techs., Inc.,* 145 F. Supp. 3d 439, 455-56 (E.D. Pa. 2016) (applying Pennsylvania law) ("Punitive damages may be awarded because the defendant's conduct was outrageous, or because the defendant's motive was evil, or because of the defendant's reckless indifference to the rights of others . . . . Punitive damages are only warranted for conduct that is malicious, wanton, reckless, willful, or oppressive." (citations omitted)). In *Wright,* for example, the court granted summary judgment for the defendants on the plaintiff's punitive damages claim because his evidence that a safer design of the product at issue was possible was not alone sufficient to show knowledge of "a high degree of risk of physical harm to another" followed by a deliberate act, or failure to act, in conscious disregard of that risk. *Id.* at 457.

42.    Plaintiff merely alleges that Avlon Industries, Inc. failed to exercise reasonable care with respect to the manufacture of the Affirm brands. These allegations do not meet the pleading

Case ID: 241002269
Control No.: 24111598

threshold required to state a claim for punitive damages, and thus each and every one of Plaintiff's punitive damages claims should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).

**WHEREFORE**, Avlon Industries, Inc. respectfully requests that Plaintiff's claims for punitive damages be dismissed with prejudice.

### G.    Counts I through IV Should Be Dismissed Pursuant to Rule 1028(a)(1) Because Venue is Improper in Philadelphia.

43.    Avlon Industries, Inc. incorporates by reference all preceding paragraphs as if fully set forth herein.

44.    Pennsylvania Rule of Civil Procedure 1028(a)(1) provides for the filing of preliminary objections on the basis of improper venue. Pa.R.Civ.P. 1028(a)(1).

45.    Pennsylvania Rule of Civil Procedure 2149(a)(2) provides that venue is proper in any county where a corporation, or similar entity, "regularly conduct business." *Zampana-Barry v. Donaghue,* 921 A.2d 500, 502 (Pa. Super. Ct. 2007); *Gilfor ex rel. Gilfor v. Altman,* 770 A.2d 334, 345 (Pa. Super. Ct. 2001).[2]

46.    If a lawsuit involves joint or joint and several liability claims against multiple defendants, it may be brought in any county where venue is proper against any one of the defendants. *Kim v. Dep't of Transp.,* 270 A.3d 1284, 1290 (Pa. Commw. Ct. 2022); *Zappala v. Brandolini Property Management, Inc.,* 589 Pa. 516, 530 (Pa. 2006); *Hausmann v. Bernd,* 271 A.3d 486, 492 (Pa. Super. Ct. 2022).

47.    Plaintiff has improperly filed her Complaint in Philadelphia County. Based on the face of the Complaint, none of the Defendants are located in Philadelphia County. Rather, they are

---

[2] It is undisputed that none of the other means of establishing venue, as set forth in Rule 2179, even arguably apply here

Case ID: 241002269
Control No.: 24111598

located in Cumberland County, Pennsylvania, or outside of Pennsylvania completely. (Ex. A ¶¶ 2-4, 6-7, 9-10, 12-15.)

48.    Pennsylvania Rule of Civil Procedure 2149(a) is intended to ensure that a case is tried in a location that has a logical connection to the dispute or the parties involved, balancing the interests of convenience and fairness in the litigation process.

49.    Because Plaintiff alleges she resides in Cumberland County, purchased multiple hair relaxer home kits from retailers located in Cumberland County, and does not allege she purchased any hair relaxer products in Philadelphia County, venue in this County is improper.

**WHEREFORE**, Avlon Industries, Inc. respectfully requests that the Court sustain these Preliminary Objections and dismiss all of Plaintiff's four causes of action and her claims for punitive damages with prejudice. In the alternative, Avlon Industries, Inc. requests that this action be transferred to Cumberland County, Pennsylvania.

**GOLDBERG SEGALLA LLP**


BY: _Christopher McGowan_____
CHRISTOPHER MCGOWAN, ESQ.
JOSEPH CAGNOLI, JR, ESQ
Attorneys for Defendant(s)
Avlon Industries, Inc.


Dated:        November 7, 2024

Case ID: 241002269
Control No.: 24111598

**Goldberg Segalla LLP**                              *Attorneys for Defendant*
**BY:  CHRISTOPHER MCGOWAN**                   *Avlon Industries, Inc.*
    **JOSEPH CAGNOLI**
**ATTORNEY ID NO.:  88744/58687**
**1400 Market Street, Suite 1268**
**Philadelphia, PA 19103-3907**
T:  267-519-6760
F:  267-519-6761
Email:  cmcgowan@goldbergsegalla.com

|  |  |
|---|---|
| KAREN UQDAH EdD, | : COURT OF COMMON PLEAS |
|        Plaintiff(s), | : PHILADELPHIA COUNTY |
|    v. | : OCTOBER TERM, 2024 |
|  | : NO.:  02269 |
|  | : |
| Avlon Industries, Inc., et al. | : |
|        Defendant(s). | : |
|  | : |

### MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY OBJECTIONS OF AVLON INDUSTRIES, INC , TO PLAINTIFF'S COMPLAINT

Defendant, Avlon Industries, Inc., (hereinafter referred to as "Avlon" or "Moving Defendant"), by and through its undersigned counsel, Goldberg Segalla LLP, hereby submits the following Memorandum of Law in Support of its Preliminary Objections to Plaintiff's Complaint.

## I.    MATTER BEFORE THE COURT

Before the Court are Preliminary Objections on behalf of Avlon Industries, Inc. to Plaintiff's Complaint and Plaintiff's claims of punitive damages pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(1), (2), (3) and (4) and 2149(a). The Complaint fails to allege any facts on which Plaintiff may be entitled to relief—Plaintiff does not identify each of the products that she claims caused her injuries, nor does she, more critically, identify what chemicals were contained in any product she allegedly used that may have caused her injuries. Additionally, Philadelphia is not a proper venue for Plaintiff's claims because none of the parties are alleged to

13

Case ID: 241002269
Control No.: 24111598

be based in Philadelphia. For the reasons set forth below, Avlon Industries, Inc. respectfully requests that this Court sustain its Preliminary Objections and dismiss Plaintiff's Complaint, or, in the alternative, transfer the action to Cumberland County, Pennsylvania.

## II.    STATEMENT OF QUESTIONS INVOLVED

1.  Should Plaintiff's non-products liability claims (Counts III and IV) be dismissed because they are preempted by federal law?

*Proposed answer:* Yes.

2.      Should Plaintiff's Complaint be dismissed for insufficient specificity and failure to conform to Pennsylvania Rule of Civil Procedure 1019(a) because Plaintiff fails to identify all of the products she used, her frequency of use, or the chemicals contained in the products?

*Proposed answer:* Yes.

3.      Should Plaintiff's strict liability claims (Counts I and II) be dismissed because they are legally insufficient to state a claim against Avlon Industries, Inc., given that Plaintiff fails to identify all of the products she used and fails to allege causation?

*Proposed answer:* Yes.

4.      Should Plaintiff's negligence claim (Count III) be dismissed because it is legally insufficient to state a claim against Avlon Industries, Inc., given that Plaintiff has not alleged sufficient facts to establish a duty owed to her by Avlon Industries, Inc. nor facts showing that her injury was caused by a product manufactured by Avlon Industries, Inc.?

*Proposed answer:* Yes.

5.      Should Plaintiff's breach of warranty claim (Count IV) be dismissed because it is legally insufficient to state a claim against Avlon Industries, Inc., given Plaintiff has not alleged facts showing that her injury was caused by a product manufactured by Avlon Industries, Inc.?

14

Case ID: 241002269
Control No.: 24111598

*Proposed answer:* Yes.

6.    Should Plaintiff's claim for punitive damages be dismissed because it is legally insufficient to state a claim against Avlon Industries, Inc., given that Plaintiff has not sufficiently alleged facts showing that Avlon Industries, Inc. acted with reckless indifference to the safety of others?

*Proposed answer:* Yes.

7.    Should this Court dismiss Plaintiff's Complaint for improper venue or, in the alternative, transfer this action to Cumberland County?

*Proposed answer:* Yes.

## III.    RELEVANT FACTS

### A.    Allegations Of The Complaint

#### 1.    General Allegations Unrelated to Plaintiff

The Complaint focuses very little on Avlon Industries, Inc.. Instead, it provides lengthy discussions about the invention and use of hair relaxers and the targeting of the African American community, starting around the 1970s, by persons and entities other than Avlon Industries, Inc.. (*See* Ex. A ¶¶ 35-54.)

The Complaint then turns its focus to endocrine-disrupting chemicals ("EDCs"), specifically phthalates, identifying one phthalate in particular, Di-2-ethylhexylphthalate ("DEHP"). (Ex. A ¶¶ 55-78.) Plaintiff alleges that chemical hair relaxers contain EDCs, which "can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases." (*Id.* ¶ 58.)

15

Case ID: 241002269
Control No.: 24111598

The Complaint associates uterine and endometrial cancers with exposure to EDCs (Ex. A ¶¶ 107-130), but only the October 2022 Chang Article made a tacit association between hair relaxers and Plaintiff's injury. The Chang Article authors observed "novel" findings of a relationship between hair relaxers and uterine cancer. (*Chang, supra* note 1, at 1638.) The study noted that "[b]rands or ingredients of hair products were not collected" (*id.* at 1638, 1634), and that "[m]ore research is warranted to replicate [the] findings in other settings and to identify specific chemicals driving this observed association" (*id.* at 1636).

## 2.    Allegations Regarding Plaintiff

Plaintiff alleges that she used hair relaxers approximately every three months beginning in 1972. (Ex. A ¶¶ 79, 101.) The Complaint identifies 14 purported hair relaxer brands that Plaintiff used over five decades. (*Id.* ¶¶ 81-100.) One of the brands listed is Avlon's Affirm brand (*Id.* ¶¶ 33, 99.) While Plaintiff identifies some of the Affirm brand products she used, she also alleges she used "different variations" of these hair relaxer products, including but not limited to the products she names, and she does not identify the other products in her Complaint. (Ex. A ¶ 99.) Plaintiff alleges that her use of these various products, including at least 13 other products manufactured by the other named Defendants, resulted in her being diagnosed with uterine and endometrial cancer in December of 2016. (*Id.* ¶¶ 34, 131, 132.)

## B.    Notable Omissions From The Complaint

The Complaint reveals more by what it omits than by what it contains. While Plaintiff's Complaint identifies the Affirm brand sold by Avlon and alleges that she used "different variations" of hair relaxer, she only identifies some of the Affirm brand products that she actually used. (Ex. A ¶ 99.) Furthermore, Plaintiff does not identify a single product she used that contains

Case ID: 241002269
Control No.: 24111598

DEHP, or any other phthalate, nor does she provide the frequency of her product use. Plaintiff also has not identified any material misrepresentation or omission made by Avlon Industries, Inc..

### C.    <u>Allegations Concerning Venue</u>

Plaintiff's Complaint alleges that she resides in Reading, Cumberland County, Pennsylvania. (Ex. A ¶ 1.) It further alleges that Avlon Industries, Inc. have their principal places of business at 1999 North 15th Street, Melrose Park, Illinois 60160. (*Id.* ¶ 14.) The remaining Defendants are either located outside of the state of Pennsylvania (*id.* ¶¶ 2-4, 6-7, 9-10, 12-14) or are located in Carlisle, Pennsylvania, which are all located in Cumberland County, Pennsylvania. (*Id.* ¶¶ 15.) Plaintiff does not allege she purchased the hair relaxer products in Philadelphia County, and the incident spurring the instant suit did not occur in Philadelphia County because Plaintiff does not reside there.

## IV.    <u>LEGAL STANDARD</u>

### A.    <u>Preliminary Objections in the Nature of a Demurrer Based on Legal Insufficiency Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).</u>

Pursuant to Pennsylvania Rule of Civil Procedure 1028(a), preliminary objections may be filed "by any party to any pleading." Pa.R.Civ.P. 1028(a). Preliminary objections may be made on the grounds of legal insufficiency of a pleading styled as a demurrer. *Id.* 1028(a)(4). In evaluating a demurrer, the question for the court is "whether, on the facts averred, the law says with certainty that no recovery is possible." *Werner v. Plater-Zyberk,* 799 A.2d 776, 783 (Pa. Super. Ct. 2002). If, on a review of the facts, the complaint is legally insufficient, a preliminary objection in the nature of a demurrer will be sustained. *See Cardenas v. Schober,* 783 A.2d 314, 321 (Pa. Super. Ct. 2001).

Additionally, "[i]n reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may

Case ID: 241002269
Control No.: 24111598

be drawn from those facts . . . ." *Santiago v. Pa. Nat. Mut. Cas. Ins. Co.,* 613 A.2d 1235, 1238 (Pa. Super. Ct. 1992). The plaintiff's "conclusions or averments of law are not considered to be admitted as true by a demurrer." *MacGregor v. Mediq Inc.,* 576 A.2d 1123, 1125 (Pa. Super. Ct. 1990). Accordingly, a court "may not supply a fact missing in the complaint." *Hart v. O'Malley*, 647 A.2d 542, 552-53 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa. 1996).

**B.**    **Preliminary Objections Based Upon Plaintiff's Failure to Properly Plead Pursuant to Pennsylvania Rules of Civil Procedure Rule 1028(a)(2) and (a)(3).**

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides that preliminary objections may be made on the ground that a pleading fails to conform to law or rule of court. Pa.R.Civ.P. 1028(a)(2). Pennsylvania Rule of Civil Procedure 1019(a) further mandates that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." *Id.* 1019(a). "'The complaint must not only apprise the defendant of the claim being asserted, but **it must also summarize the essential facts to support the claim.'**" *Donaldson v. Davidson Bros.,* 144 A.3d 93, 103 (Pa. Super. Ct. 2016) (citation omitted).

Pennsylvania Rule of Civil Procedure 1028(a)(3) similarly provides that preliminary objections may be made on the ground that a pleading is insufficiently specific. Pa.R.Civ.P. 1028(a)(3). This rule asks "'whether the complaint is sufficiently clear to enable the defendant to prepare his defense,' or 'whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense.'" *Rambo v. Greene,* 906 A.2d 1232, 1236 (Pa. Super. Ct. 2006) (citation omitted). "In this Commonwealth, the pleadings must define the issues and thus every act or performance to that end must be set forth in the complaint." *Koch v. First*

Case ID: 241002269
Control No.: 24111598

*Union Corp.,* Nos. CONTROL 100727, CONTROL 100746, 2002 WL 372939, at *2 (Pa. Com.

Pl. Jan. 10, 2002) (citation omitted) (internal quotation marks omitted).

Preliminary objections "are properly granted when the pleadings are legally insufficient

for one or more of several reasons enumerated in Rule of Civil Procedure 1028 . . . [including] (2)

failure of a pleading to conform to law or rule of court . . .; [and] (3) insufficient specificity in a

pleading." *Baker v. Cambridge Chase, Inc.,* 725 A.2d 757, 764 (Pa. Super. Ct. 1999) (second

omission in original). Finally, "a court is not required to allow amendment of a pleading if a party

will be unable to state a claim on which relief could be granted." *Werner v. Zazyczny,* 681 A.2d

1331, 1338 (Pa. 1996).

### C.    Preliminary Objections Based Upon Improper Venue Pursuant to Pennsylvania Rules of Civil Procedure Rule 1028(a)(2) and (a)(3).

Pennsylvania Rule of Civil Procedure 1028(a)(1) provides for the filing of preliminary

objections on the basis of improper venue. Pa.R.Civ.P. 1028(a)(1). Pennsylvania Rule of Civil

Procedure 2149(a)(2) provides that venue is proper in any county where a corporation, or similar

entity, "regularly conduct business." *Zampana-Barry v. Donaghue,* 921 A.2d 500, 502 (Pa. Super.

Ct. 2007); *Gilfor ex rel. Gilfor v. Altman,* 770 A.2d 334, 345 (Pa. Super. Ct. 2001). If a lawsuit

involves joint or joint and several liability claims against multiple defendants, it may be brought

in any county where venue is proper against any one of the defendants. *Kim v. Dep't of Transp.,*

270 A.3d 1284, 1290 (Pa. Commw. Ct. 2022); *Zappala v. Brandolini Property Management, Inc.,*

589 Pa. 516, 530 (Pa. 2006); *Hausmann v. Bernd,* 271 A.3d 486, 492 (Pa. Super. Ct. 2022).

Pennsylvania Rule of Civil Procedure 2149(a) is intended to ensure that a case is tried in a location

that has a logical connection to the dispute or the parties involved, balancing the interests of

convenience and fairness in the litigation process.

Case ID: 241002269
Control No.: 24111598

## V.    ARGUMENT

### A.    Plaintiff's Non-Products Liability Claims are Preempted by Federal Law.

Plaintiff's negligence and warranty causes of action are expressly preempted by the FDCA. Under the Supremacy Clause of the United States Constitution, "federal law is 'the supreme Law of the land' and any conflicts between federal and state laws must be resolved in favor of federal law." *Werner v. Plater-Zyberk,* 799 A.2d 776, 787 (Pa. 2002) (citation omitted). One recognized method of preemption, express preemption, exists where "there is an explicit statutory command that state law be displaced." *Id.* "It is also well established that federal law may impliedly preempt state law to the extent that the state law conflicts with a federal regulatory scheme." *Id.* at 788.

With regard to the labeling of cosmetics, the FDCA includes an express preemption provision that prohibits any state from "establish[ing] or continu[ing] in effect any requirement for labeling or packaging of a cosmetic that is ***different from*** or ***in addition to,*** or that is ***otherwise not identical with,*** a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. § 379s(a) (emphases added). The only exception to this broad preemption is for products liability claims. *Id.* § 379s(d).

Thus, a plaintiff cannot seek to "impose labeling requirements that are additional to, or different from, those that [the FDCA] has established." *Critcher v. L'Oréal USA, Inc.,* 959 F.3d 31, 38 (2d Cir. 2020). Congress conferred authority to the Food and Drug Administration ("FDA") to promulgate rules and regulations under the FDCA, 21 U.S.C. § 371(a), and the FPLA, 15 U.S.C. § 1454(a). Federal regulations do not require cosmetic manufacturers to designate phthalates apart from what it requires to be designated as a "fragrance." 21 C.F.R. § 701.3(a) ("The label on each package of a cosmetic shall bear a declaration of the name of each ingredient in descending order

20

Case ID: 241002269
Control No.: 24111598

of predominance, ***except that fragrance or flavor may be listed as fragrance or flavor.***" (emphasis added)).

The "sweeping preemptive force" of the FDCA led the Second Circuit to affirm the dismissal of analogous mislabeling claims in *Critcher,* 959 F.3d at 38. There, the plaintiffs asserted consumer protection, unjust enrichment, and breach of warranty claims against Avlon Industries, Inc., alleging various cosmetic products' labels were misleading because they did not disclose that consumers "will not be able to access or use a large percentage . . . of the product." *Id.* at 36. While the FDCA requires that labels contain an "accurate statement of the quantity of the [products'] contents in terms of weight, measure, or numerical count," the FDA promulgated more "specific labeling requirements" consistent with the statute, and no statute or regulation required plaintiffs' desired disclosure. *Id.* at 35. Thus, because the FDCA preempts "*any* state law that provides for labeling requirements that are not *exactly the same* as those set forth in the FDCA and its regulations," the claims were found to be preempted. *Id.* at 35-36.

Plaintiff accuses Avlon Industries, Inc. of falsely marketing, mislabeling, and/or failing to disclose the existence of phthalates in its products. Plaintiff then speculates that she could not identify from the ingredient label whether a product contains phthalates because phthalates may be part of the product's fragrance. (Ex. A ¶ 76.) As Avlon Industries, Inc. has no obligation to identify fragrance ingredients, and certainly has no obligation to identify ingredients that are not in their products, Plaintiff's claims are preempted. [3]

**B.    Plaintiff's Complaint Should Be Dismissed Because Plaintiff Fails to Comply with Pennsylvania's Fact Pleading Standard.**

---

[3] Plaintiff's claims are also impliedly preempted both because the FDCA occupies the field and because Plaintiff's demands conflict with the FDCA. *See Plater-Zyberk,* 799 A.2d at 787.

Case ID: 241002269
Control No.: 24111598

Plaintiff's claims should be dismissed because Plaintiff fails to identify all of the products she used. Pennsylvania has a specific pleading standard, fact pleading, which places on the plaintiff the burden of defining the issues and setting forth every act or performance essential to that end in the complaint. *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.,* 613 A.2d 1235, 1238 (Pa. Super. Ct. 1992). Pennsylvania Rule of Civil Procedure 1019(a) further mandates that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.Civ.P. 1019(a). Additionally, subsection (f) requires that "[a]verments of time, place and items of special damage shall be specifically stated." *Id.* 1019(f). Pennsylvania Rule of Civil Procedure 1022 adds that each paragraph in a pleading "shall contain as far as practicable only one material allegation." *Id.* 1022. Each of Plaintiff's causes of action fails because she does not meet this fact pleading standard. She fails to identify all of the products she used, she does not allege how or when she used specific products, nor does she allege what chemicals caused her injury. These deficiencies are fatal to her claims.

Plaintiff did not properly plead her strict liability claims for design defect and failure to warn, because she failed to allege the necessary facts as to each particular product. The court in *Commonwealth v. Monsanto Co.,* 269 A.3d 623, 661 (Pa. Commw. Ct. 2021) confirmed that "[a]s required to plead a valid design defect claim, Plaintiffs allege that Defendants' PCB products were defective, the products were defective when they left Monsanto's hands, and the defects harmed the public and/or Plaintiffs' natural resources." As to failure to warn claims, "[t]he first element of a strict-liability claim is that the product be defective [including where it has an inadequate warning]. . . . 'The second element of a strict-liability failure-to-warn claim is that the defective warning caused the plaintiff's injury.'" *Id.* at 663-64 (quoting *Whyte v. Stanley Black & Decker, Inc.,* 514 F. Supp. 3d 684, 700 (W.D. Pa. 2021)). Here, in her design defect and her failure to warn

Case ID: 241002269
Control No.: 24111598

claims, Plaintiff identifies only some of the products she allegedly used. The product she used is material to her strict products liability claims, thus by failing to name all of the products she used, Plaintiff has not met Pennsylvania's fact-pleading requirements under Rule 1019(a). As to the products Plaintiff does identify, she does not allege the defect in any product or how it caused her injury. Failure to identify these necessary facts is similarly fatal to both her design defect and failure to warn claims. These claims should therefore be dismissed.

Plaintiff's claim for negligence fails for similar reasons. As to the unnamed products in Plaintiff's Complaint, Plaintiff has not alleged a duty owed to her by Avlon Industries, Inc. to conform to a particular standard of conduct. *Barton v. Lowe's Home Ctrs., Inc.,* 124 A.3d 349, 359 (Pa. Super. Ct. 2015). In a products liability action, a plaintiff can allege a duty by showing a relationship between the purchaser of a product and the manufacturer of that product. *Id.* Here, Plaintiff cannot allege such a relationship because she does not include facts specifying what particular products she purchased from Avlon Industries, Inc.. As her Complaint fails to allege what particular product she allegedly used that was manufactured by Avlon Industries, Inc., she cannot establish the first element of her negligence claim. Similarly, as to the products Plaintiff does name, she has not alleged how the products caused her injury and thus cannot establish the third element of her negligence claim: causation. *See Phillips v. Cricket Lighters,* 834 A.2d 1000, 1008 (Pa. 2003). Accordingly, her negligence claim should be dismissed.

Finally, Plaintiff's claim for breach of warranty also fails because she has not included allegations in her Complaint as to all of the products she allegedly used. "Under Pennsylvania law, contract claims for breach of the implied warranty of merchantability and fitness for a particular purpose may also fall within the sphere of products liability actions." *Barton,* 124 A.3d at 357. Such warranties are "implied by law to protect buyers from loss where goods purchased are below

Case ID: 241002269
Control No.: 24111598

commercial standards." *Id.* Here, Plaintiff fails to allege facts identifying each of the particular goods that she used. The products she allegedly used, and which allegedly harmed her, are material facts underlying her claims. Without them, her breach of warranty claim cannot proceed. As to the Avlon Industries, Inc. products she has identified, Plaintiff has failed to specify what aspect of these products' warnings or labels were insufficient. Thus, this claim should also be dismissed for failure to abide by Pennsylvania's fact-pleading standard.

Plaintiff's failure to meet her burden of pleading the material facts underlying her claims with the requisite specificity leaves Avlon Industries, Inc.to guess at which of its hair relaxer products she may have used for 50 years, how the product was defective, and what component of the product harmed her. This leaves Avlon Industries, Inc. unable to properly prepare a defense to the action. This situation is precisely what Rules 1028 and 1019 exist to protect against, and Plaintiff's Complaint should be dismissed in its entirety accordingly.

### C.     Plaintiff's Strict Liability Claims Fail as a Matter of Law Because She Fails to Identify All of the Products She Used or Allege Causation.

Plaintiff brings two claims against Avlon Industries, Inc. in strict liability: one alleging design defect and the other alleging a failure to warn. As detailed below, both claims fail as a matter of law because they lack an essential component of a strict products liability claim: identification of every product that caused the complained-of injury. *See Cummins v. Firestone Tire & Rubber Co.,* 495 A.2d 963, 968-69 (Pa. Super. Ct. 1985) (affirming the dismissal of the plaintiff's strict liability cause of action because he could not "adequately aver the requisite connection between appellees and the defective product," which constituted a "fatal deficiency" to his claim); *see also Tincher v. Omega Flex, Inc.,* 104 A.3d 328, 331 (Pa. 2014) ("[I]n Pennsylvania, the cause of action in strict products liability requires proof, in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product."). As Plaintiff does not

24

Case ID: 241002269
Control No.: 24111598

allege all of the products she used in either of her strict liability causes of action, nor does she allege how any product caused her harm, Plaintiff's design defect and failure to warn claims must be dismissed.

<strong>1.    <u>Plaintiff's Strict Liability Design Defect Claim Fails Because She Does Not Identify Every Product She Used or How the Products were Defective.</u></strong>

Plaintiff's design defect claim (Count I) fails because the Complaint does not identify a defect in any product—let alone an actual product Plaintiff purportedly used. To prevail on a design defect claim, "the plaintiff must prove that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm." *Barton v. Lowe's Home Ctrs., Inc.,* 124 A.3d 349, 354-55 (Pa. 2015) (citing *Riley v. Warren Mfg., Inc.,* 688 A.2d 221, 224 (Pa. Super. Ct. 1997)). In Pennsylvania, a defective condition may be proven "by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Tincher v. Omega Flex, Inc.,* 104 A.3d 328, 335 (Pa. 2014). No matter which method a plaintiff elects, the baseline requirement remains the same: the plaintiff must allege both that a particular product is defective and what makes it purportedly defective. Here, Plaintiff does neither.

Plaintiff's design defect claim first fails because she does not identify all of the Avlon Industries, Inc. products she allegedly used. Plaintiff instead alleges that she used "different variations" of Affirm brand products "including but not limited to" Affirm Crème Relaxer; Affirm Sensitive Scalp Relaxer; and Affirm FiberGuard Sensitive Scalp Conditioning Relaxer. (Ex. A ¶ 99.) By failing to identify the other products she allegedly used, Plaintiff has not satisfied her pleading burden.

Case ID: 241002269
Control No.: 24111598

In *Barton,* the court found that the plaintiff had included sufficient detail in his complaint alleging a design defect in a lawnmower so as to avoid dismissal. The allegations in his complaint included that:

> (1) [Plaintiff] purchased a Husqvarna lawnmower (with a Kohler engine) from Lowe's; (2) just three days later, he used the lawnmower for the first time to cut grass on his property and then stored the lawnmower in his barn; (3) later that day, the engine or mower caught fire and/or exploded inside the barn, because the engine ran too hot and melted the fuel lines, causing fuel to leak onto the hot engine or muffler; and (4) the barn burned down.

124 A.3d at 355. The court determined that the allegations were sufficient to survive preliminary objections because "when a brand new lawnmower catches fire or explodes after its first use, it could be the result of a defect in its design or manufacture." *Id.* at 356. Although more specifics would likely be unearthed during the discovery process, the plaintiff's complaint sufficiently "furnish[ed] a concise overview of the defects that he intend[ed] to prove." *Id.*

In contrast to the detailed allegations in the complaint in *Barton,* Plaintiff's Complaint includes hardly any specific factual allegations. Instead, Plaintiff's 41-page Complaint recounts the history of chemical hair relaxer products (¶¶ 35-54), details what endocrine disrupting chemicals are and how they purportedly work (¶¶ 55-78), and makes allegations concerning the link between chemical hair relaxers and endometrial cancers (¶¶ 107-130). Plaintiff does not identify all of the products she actually used, nor does she specify when or how often she used hair relaxer products, or what ingredient in the products rendered them defective. Plaintiff merely alleges that over the course of 50 years, she used hair relaxers from any one of 14 different brands approximately every three months. (Ex. A ¶¶ 80, 101.) Accordingly, Plaintiff's strict liability design defect claim fails as a matter of law and should be dismissed.

**2.     Plaintiff's Strict Liability Failure to Warn Claim Fails Because Plaintiff Does Not Identify All of the Products She Used, How the Products Were Defective, or How the Purported Defect Injured Her.**

Case ID: 241002269
Control No.: 24111598

Plaintiff's failure to warn claim (Count II) is similarly lacking because the Complaint does not identify all of the products she allegedly used, the nature of any defect, nor how the purported defect injured her. In order to prevail on a failure to warn claim, "a plaintiff must prove that the lack of warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury." *Barton,* 124 A.3d at 355 (quoting *Weiner v. Am. Honda Motor Co.,* 718 A.2d 305, 309 (Pa. Super. Ct. 1998)). In *Chandler v. L'Oréal USA, Inc.,* 333 F. Supp. 3d 551, 556 (W.D. Pa. 2018), *aff'd*, 774 F. App'x 752 (3d Cir. 2019), the plaintiff purchased a L'Oréal USA product: the Regular Optimum Salon Haircare Defy Breakage Salon No-Lye Relaxer (the "Defy Breakage relaxer"). Although it was her first time using this particular product, the plaintiff "did not read the warnings on the exterior of the Defy Breakage relaxer box and while she read the warnings/instructions which were provided inside the box, she concedes that she ignored same." *Id.* at 562. The plaintiff alleged that she experienced hair loss after using the Defy Breakage relaxer and she brought claims including failure to warn under both negligence and strict liability theories. *Id.* at 559, 561. The court recited several of the safety warnings that were "clearly state[d] under bold headings" on the exterior of the packaging, including that the product must be tested on a strand of hair before using because failure to do so "can damage hair or result in permanent hair loss." *Id.* at 563. Similar warnings appeared on the interior instruction sheet, yet the plaintiff did not heed them. The court determined "that the product's packaging and instruction sheet clearly warn consumers that failure to follow the written instructions may result in injury, including permanent hair loss, the exact injury about which Plaintiff complains" and granted summary judgment for L'Oréal USA on the failure to warn claim. *Id.* at 563-64.

Here, such an evaluation is not possible because Plaintiff has not identified all of the specific products she used nor when she used them. Instead, Plaintiff avers that she used "different

Case ID: 241002269
Control No.: 24111598

variations" of Affirm brand over a period of approximately 50 years. (Ex. A ¶ 80, 99.) Although Plaintiff identifies at three product from Affirm, she alleges that her use of Avlon Industries, Inc. products is not limited to these products, and fails to specify what additional products she used. (*Id.* ¶ 99.) Affirm brand markets various products. This ambiguity thus makes it impossible for her to allege how Avlon Industries, Inc.'s warnings rendered each product she used unreasonably dangerous. As a result, Plaintiff also cannot allege that her injury was "proximately" caused by Avlon Industries, Inc..

Furthermore, Plaintiff fails to allege any direct link between an ingredient contained in any Avlon Industries, Inc. product and risk of developing endometrial cancer. Plaintiff's conclusory and speculative allegations cannot satisfy her pleading burden. For these reasons, the claim must be dismissed.

> **D.    Plaintiff's Negligence Claim Fails Because She Does Not Allege a Duty Owed to Her By Avlon Industries, Inc., Nor Does She Allege How the Products Caused Her Injury.**

Plaintiff's negligence claim (Count III) should also be dismissed because Plaintiff fails to allege a duty owed to her by Avlon Industries, Inc.. Pennsylvania law requires that, in order to prevail on a claim sounding in negligence, a plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question and actual loss or damage was sustained by the plaintiff. *Phillips v. Cricket Lighters,* 834 A.2d 1000, 1008 (Pa. 2003). Plaintiff's negligence claim should be dismissed because the Complaint does not allege facts supporting a claim that Avlon Industries, Inc. owed her a common law or statutory duty as to the unnamed products she claims to have used, nor does it allege any facts explaining what ingredient in the products she does identify caused her harm.

28

Case ID: 241002269
Control No.: 24111598

In order to determine whether a duty exists, courts weigh the following factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus ex rel. Althaus v. Cohen,* 756 A.2d 1166, 1169 (Pa. 2000) (citations omitted). Although Plaintiff alleges she used three Affirm brand hair relaxer products, she also alleges that she used other "variations" of these products (Ex. A ¶¶ 99) which she fails to identify and thus cannot properly allege which Affirm brand products. Even if she had identified all of the products she allegedly used, a relationship between Plaintiff and Avlon Industries, Inc. as a manufacturer alone is not sufficient to impose a duty on Avlon Industries, Inc.. Similarly, though the social utility of hair relaxers may weigh in favor of a duty, this factor is likewise not dispositive.

As to foreseeability, Plaintiff's Complaint relies heavily on the Chang Article, which was the first to associate hair relaxer use with uterine cancer and was published in October 2022. (*Chang, supra* note 1, at 1638; Ex. A ¶¶ 126-130.) Despite the recent date of publication, Plaintiff's Complaint contends that Avlon Industries, Inc. did not perform sufficient testing "after learning that their formulations could be carcinogenic." (Ex. A ¶ 176(b)). Plaintiff's allegations that products allegedly manufactured by Avlon Industries, Inc. (or any one of 13 other brands) over the course of decades might possibly be carcinogenic based on the limited and qualified findings of one recent study is a far cry from foreseeable and unreasonable harm. *Compare with Barton,* 124 A.3d at 359 (finding that the design or manufacture of a lawnmower engine foreseeably created an unreasonable risk of harm to others when it exploded after its first use while standing in a barn). Factor three thus weighs against a finding of duty as do factors four and five; although the public has an interest in product safety, the consequences of finding a duty on such threadbare

29

Case ID: 241002269
Control No.: 24111598

allegations as exist here will discourage companies from manufacturing innovative products. The public interest in engaging companies in litigation over minimal, ambiguous, and vague allegations made without any factual substance is weak, thereby weighing against a finding of duty here. In sum, Plaintiff's allegations are not sufficient to establish a duty owed to her by Avlon Industries, Inc. and thus her negligence claim must fail as a matter of law.

Plaintiff's failure to identify many of the products she purportedly used is also fatal to her negligence claim because she cannot allege causation. For example, in *Cummins v. Firestone Tire & Rubber Co.,* 495 A.2d 963, 966 (Pa. Super. Ct. 1985), the plaintiff was injured when a car tire and rim exploded at a car service garage he was visiting. The damaged car parts were irretrievable and, thus, the plaintiff brought his negligence and strict liability claims against various manufacturers of truck wheel rims, the owner of the fleet of trucks, manufacturers of truck trailers and tractors, suppliers of truck tires and rims, and the owner of the real estate where the accident occurred. *Id.* Several defendants filed preliminary objections, arguing that the plaintiff could not bring negligence claims without specifically identifying a defendant as the one responsible for the rim at issue. *Id.* The preliminary objections were sustained and the trial court dismissed the complaint as to those defendants. *Id.* at 966-67. On appeal, the Superior Court agreed and held that identification of the manufacturer of the "particular offending product" is required to bring a negligence claim, and because the plaintiff was unable to identify any one manufacturer of the offending product, "there can be no allegations of duty, breach of duty or legal causation, and hence there can be no liability." *Id.* at 967-68.

Here, Plaintiff's Complaint is similarly lacking in facts alleging a particular offending product and an associated manufacturer for some of the products she claims to have used. Plaintiff alleges that she used "different variations" of hair relaxer from each brand not limited to the 14

Case ID: 241002269
Control No.: 24111598

she names in her Complaint. (Ex. A ¶¶ 83-99.) As she has not identified the remaining products, she is unable to identify the defect associated with the product or the causative link between the defective product and her injury. *See Klein v. Council of Chem. Assn's*, 587 F. Supp. 213, 223 (E.D. Pa. 1984) ("Because plaintiffs have failed to identify a specific product, plaintiffs cannot allege a causal connection between conduct of the defendants and [the plaintiff's] injuries. Plaintiffs have failed to allege a cause of action for negligence against the product defendants."). Moreover, as to the products Plaintiff does identify in her Complaint, Plaintiff does not allege what ingredient or chemical contained in those products caused her injuries. Thus, Plaintiff's negligence claim fails to state a claim as a matter of law and should be dismissed.

E.   **Plaintiff's Breach of Implied Warranties Claim Should Be Dismissed Because She Fails to State What Product She Used and How It Was Defective.**

Plaintiff's claim for a breach of the implied warranty of merchantability (Count IV) also fails as a matter of law.[4] In Pennsylvania, to prevail on a claim for breach of implied warranty of implied warranty of fitness for a particular purpose, this claim also must fail. The Pennsylvania Commercial Code provides that, when a seller has reason to know of any particular purpose for which the goods are required and also knows that the buyer is relying on the seller's skill or judgment to furnish suitable goods, that an implied warranty then exists that the goods shall be fit for such purpose. *See* 13 Pa.C.S.A. § 2315. A "'particular purpose' differs from the 'ordinary purpose' for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business" as contrasted with the ordinary purpose, which covers the

---

[4] Plaintiff's Complaint styles Count IV as a "Breach of Implied Warranties," however, the language of this cause of action regarding goods not being "of merchantable quality and safe and fit for the use for which they were intended" indicates that her claim is specifically one of a breach of implied warranty of merchantability. To the extent that Plaintiff intended to also plead a breach of the implied warranty of fitness for a particular purpose, Avlon Industries, Inc. addresses that claim as well.

Case ID: 241002269
Control No.: 24111598

uses for which the goods are customarily used. *Gall,* 555 A.2d at 790 (quoting 13 Pa.C.S.A. § 2315, Uniform Commercial Code Comment 2).

*Gall* is instructive on this point. In *Gall,* the plaintiffs brought a claim for breach of implied warranties against the local county health department, alleging that they contracted giardiasis because the defendants had failed to property treat and protect the water supply. *Id.* at 787. The court held that "[t]he sale of water for drinking and household use does not carry with it the implied warranty of fitness for a particular purpose" and sustained the defendants' preliminary objections in the nature of a demurrer to the plaintiffs' claim of breach of warranty of fitness for a particular purpose. *Id.* at 790.

Similarly, here, Plaintiff's breach of warranty of fitness for a particular purpose claim fails because any type of hair relaxer product Plaintiff may have used would have been used for its ordinary purpose: chemically straightening hair. Thus, she cannot sustain a claim for breach of implied warranty of fitness for a particular purpose.

### F.    <u>Plaintiff Has Not Adequately Pled a Claim for Punitive Damages.</u>

Plaintiff's demand for an award of punitive damages for each of her four causes of action fails because she has not sufficiently alleged that Avlon Industries, Inc.'s conduct was malicious, willful, or done with knowledge of a high risk of physical harm. (Ex. A ¶¶ 142, 168, 179, 195.) In Pennsylvania, "punitive damages are an 'extreme remedy' available in only the most exceptional matters." *Phillips v. Cricket Lighters,* 883 A.2d 439, 445 (Pa. 2005) (citation omitted). A claim for punitive damages "must be based on '"malicious", "wanton", "reckless", "willful", or "oppressive" conduct on the part of defendant.'" *Chambers v. Montgomery,* 192 A.2d 355, 358 (Pa. 1963) (quoting *Hughes v. Babcock,* 37 A.2d 551, 554 (Pa. 1944)); *see also Feld v. Merriam,* 485 A.2d 742, 748 (Pa. 1984) ("The state of mind of the actor is vital. The act, or the

32

Case ID: 241002269
Control No.: 24111598

failure to act, must be intentional, reckless or malicious."). In determining whether a defendant exhibited reckless indifference sufficient to support an award of punitive damages, the court "must analyze whether the complaint's allegations establish that the actor actually knew or had reason to know of facts which created a high risk of physical harm to plaintiff. Further, the defendant must have proceeded to act in conscious disregard of or indifference to that risk." *Field v. Phila. Elec. Co.*, 558 A.2d 1140, 1149 (Pa. Super. Ct. 1989).

For example, in *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436 (Pa. Super. Ct. 1987), the plaintiff, executor of a decedent's estate, brought claims for punitive damages against a hospital, several of its doctors, and a pharmaceutical company for administering a drug to the decedent that allegedly led to her death. The court explained that "[p]unitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *Id.* at 447. As the plaintiff's complaint had alleged facts against the hospital and doctors that were only sufficient to support a claim for ordinary negligence, the court affirmed the dismissal of punitive damages claims against those defendants. *Id.* at 447-48. However, because the plaintiff alleged that the pharmaceutical company "knew of a serious risk of illness and death resulting from [the drug's] use, and deliberately and negligently failed to communicate that knowledge to the medical community" the court found the punitive damages claim appropriate as to that defendant. *Id.* at 448.

Here, Plaintiff does not allege that any conduct of Avlon Industries, Inc. was malicious, wanton, reckless, willful, or oppressive. She merely contends that Avlon Industries, Inc. knew, or should have known, of unreasonable risks of harm associated with unidentified Affirm brand products including their alleged propensity to cause cancer, and that it "concealed, downplayed, or otherwise suppressed" information about the risks. (Ex. A ¶¶ 162.) Importantly, Plaintiff's

Case ID: 241002269
Control No.: 24111598

allegations that Avlon Industries, Inc. should have known that its products were potentially carcinogenic are belied by her own allegations that any purported association between hair relaxers and uterine cancer was revealed in a "groundbreaking study" published in October of 2022. (Ex. A ¶ 126.) This recent development is a far cry from knowledge and deliberate withholding of information supporting a "serious risk of illness and death" that supported a punitive damages claim in *McDaniel*. Plaintiff's allegations that Avlon Industries, Inc. failed to sufficiently test its products and failed to disclose a recently suggested risk of harm associated with endocrine-disrupting chemicals does not rise to the level of malicious and intentional conduct sufficient to warrant an "extreme" damages remedy. Accordingly, as Plaintiff has not alleged facts sufficient to support an award of punitive damages for any of her four claims, all of her punitive damages claims should be dismissed.

### G.  **Philadelphia County is the Wrong Venue for Plaintiff's Complaint.**

Alternatively, Plaintiff's Complaint should be dismissed as being filed in an improper venue, or transferred to Cumberland County. Pennsylvania Rule of Civil Procedure 1028(a)(1) allows for preliminary objections to be raised where a complaint is filed in an improper venue. If a lawsuit involves joint or joint and several liability claims against multiple defendants, it may be brought in any county where venue is proper against any one of the defendants. *Kim v. Dep't of Transp.,* 270 A.3d 1284, 1290 (Pa. Commw. Ct. 2022); *Zappala v. Brandolini Property Management, Inc.,* 589 Pa. 516, 530 (Pa. 2006); *Hausmann v. Bernd,* 271 A.3d 486, 492 (Pa. Super. Ct. 2022). Pennsylvania Rule of Civil Procedure 2149(a) further provides that venue is proper in any county where a corporation, or similar entity, "regularly conduct business." *Zampana-Barry v. Donaghue,* 921 A.2d 500, 502 (Pa. Super. Ct. 2007); *Gilfor ex rel. Gilfor v.*

Case ID: 241002269
Control No.: 24111598

*Altman,* 770 A.2d 334, 345 (Pa. Super. Ct. 2001).[5] But venue does not lie under this prong unless the entity "regularly conducts business" in the forum county by engaging in business "sufficient in quantity and quality" to justify appearing in that county. *Hangey,* 304 A.3d at 1127 (Pa. 2023).

For instance, in *Watson v. Baby Trend, Inc.,* Baby Trend filed preliminary objections to the amended complaint on the basis of improper venue. *Watson v. Baby Trend, Inc.,* 308 A.3d 860 (Pa. Super. Ct. 2024). It contended that the venue was not proper in Philadelphia County because the plaintiffs did not live in Philadelphia County, the car seat at issue was not alleged to have been purchased there, the cause of action did not arise there, and Baby Trend did not conduct "substantial, continuous, and systemic business" in Philadelphia County. *Id.* at 862. The Court of Common Pleas of Philadelphia County sustained the defendant's preliminary objections because of the lack of business contacts Baby Trend had with Philadelphia and transferred venue, and the appellate court affirmed. *Id.* at 867-869.

Venue is similarly inappropriate here. Plaintiff has improperly filed her Complaint in Philadelphia County, as Plaintiff's Complaint alleges that she resides in Reading, Cumberland County, Pennsylvania. (Ex. A ¶ 1.) It further alleges that Avlon Industries, Inc. LLC have their principal places of business in New York. (*Id.* ¶ 14.) The remaining Defendants are either located outside of the state of Pennsylvania (*id.* ¶¶ 2-4, 6-7, 9-10, 12-14) or are located in Carlisle, Pennsylvania, which is in Cumberland County, Pennsylvania. (*Id.* ¶¶ 15.) Plaintiff does not allege she purchased the hair relaxer products in Philadelphia County, and the incident spurring this lawsuit did not occur in Philadelphia County because Plaintiff does not reside there. Nor has Plaintiff alleged any facts suggesting that any defendant maintains contacts in Philadelphia County

---

[5] While Pennsylvania Rule of Civil Procedure 2179 provides that venue may be established in other circumstances, it is undisputed that none of those circumstances exist here.

Case ID: 241002269
Control No.: 24111598

sufficient in both "quantity and quality" to justify venue there. Rather, because Plaintiff alleges she purchased multiple hair relaxer home kits from retailer defendants located in Cumberland County, venue in this County is improper and Plaintiff's Complaint should be dismissed or transferred to Cumberland County.

Thus, Avlon Industries, Inc. respectfully requests that the Preliminary Objections be sustained as to Counts I through IV, or in the alternative, that the Court transfer venue to Cumberland County in compliance with Rule 2149(a).

## VI.    **RELIEF REQUESTED**

For the foregoing reasons, Avlon Industries, Inc. respectfully requests the Court sustain its Preliminary Objections to Plaintiff's Complaint and dismiss all of Plaintiff's claims against Avlon Industries, Inc. with prejudice. Alternatively, Avlon Industries, Inc. requests that this action be transferred to Cumberland County, Pennsylvania.

**GOLDBERG SEGALLA LLP**

BY:    */s/ Christopher McGowan*
        Christopher McGowan Esquire
        Joseph Cagnoli, Jr. Esquire
        Attorneys for Defendant
        Avlon Industries, Inc.

DATE: November 7, 2024

36

Case ID: 241002269
Control No.: 24111598

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 7, 2024, a true and correct copy of the foregoing Defendant Avlon Industries, Inc.'s Preliminary Objections to Plaintiff Karen Uqdah's Complaint was served electronically via the Court's Electronic Filing System in accordance with Pennsylvania Rule of Civil Procedure 205.4(g).

Date: November 7, 2024　　　　　**GOLDBERG SEGALLA LLP**

　　　　　　　　　　　　　　　　BY:　*/s/ Christopher McGowan*
　　　　　　　　　　　　　　　　　　　Christopher McGowan Esquire
　　　　　　　　　　　　　　　　　　　Joseph Cagnoli, Jr. Esquire
　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　Avlon Industries, Inc.

Case ID: 241002269
Control No.: 24111598

## **VERIFICATION**

I, Christopher McGowan, Esquire, hereby state that we are attorneys in the firm of Goldberg Segalla LLP, and that we represent Avlon Industries, Inc. in the foregoing matter; that we are authorized to make this Verification on its behalf; that all of the facts stated in the foregoing Preliminary Objections are true and correct to the best of our knowledge, information and belief; and that this Verification is taken subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.


By: *__Christopher McGowan__*
Christopher McGowan, Esquire

Dated:  November 7, 2024

38

Case ID: 241002269
Control No.: 24111598



# EXHIBIT A

Case ID: 241002269
Control No.: 24111598

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**OCTOBER 2024**    02269

E-Filing Number: 2410041108

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN UQDAH | L'ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| EMMANUEL BULLOCK | L'ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 11 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

OCT **17** 2024

**L. BREWINGTON**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES    NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: KAREN UQDAH , EMMANUEL BULLOCK

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C.<br>1525 LOCUST STREET<br>19TH FLOOR<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)772-1000 | none entered | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 309348 | sherrell.dandy@klinespecter.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| SHERRELL DANDY | Thursday, October 17, 2024, 04:07 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 241002269
Control No.: 24111598

**COMPLETE LIST OF DEFENDANTS:**

1. L'ORÉAL USA, INC.
     10 HUDSON YARDS
     NEW YORK NY 10001
2. L'ORÉAL USA PRODUCTS, INC.
     10 HUDSON YARDS
     NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
     10 HUDSON YARDS
     NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
     64 ROSS ROAD
     SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
     64 ROSS ROAD
     SAVANNAH GA 31405
6. BEAUTY BELL ENTERPRISE
     ALIAS: HOUSE OF CHEATHAM LLC
     647 MIMOSA BLVD.
     ROSWELL GA 30075
7. HOUSE OF CHEATHAM, LLC
     1445 ROCK MOUNTAIN BLVD
     STONE MOUNTAIN GA 30083
8. LUSTER PRODUCTS, INC.
     1104 WEST 43RD STREET
     CHICAGO IL 60609
9. AFAM CONCEPT, INC.
     ALIAS: JF LABS, INC.
     7401 S. PULASKI ROAD
     CHICAGO IL 60629
10. AVLON INDUSTRIES, INC.
     1999 NORTH 15TH STREET
     MELROSE PARK IL 60160
11. THE GIANT COMPANY, LLC
     1149 HARRISBURG PIKE
     CARLISLE PA 17013

Case ID: 241002269
Control No.: 24111598

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                ATTORNEYS FOR PLAINTIFFS

*Filed and Attested by the Office of Judicial Records 17 OCT 2024 04:17 pm E. BREWINGTON*

---

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W<br>1049 LAURELEE AVENUE<br>READING, PA 19605 | IN THE COURT OF COMMON PLEAS<br>*PHILADELPHIA* COUNTY,<br>PENNSYLVANIA |
| *Plaintiffs* | |
| V. | |
| L'ORÉAL USA, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10017 | |
| AND | |
| L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001 | |
| AND | |
| SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001 | **JURY TRIAL DEMANDED** |
| AND | |
| STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405 | |
| AND | |

---

Page **1** of **41**

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

BEAUTY BELL ENTERPRISE D/B/A
HOUSE OF CHEATHAM, INC. AND
HOUSE OF CHEATHAM LLC
647 MIMOSA BLVD
ROSWELL, GA 30075

AND

HOUSE OF CHEATHAM, LLC
1445 ROCK MOUNTAIN BLVD
STONE MOUNTAIN, GA 30083

AND

LUSTER PRODUCTS, INC.
1104 WEST 43RD STREET
CHICAGO, IL 60609

AND

AFAM CONCEPT, INC. D/B/A JF LABS,
INC.
7401 S. PULASKI ROAD
CHICAGO, IL 60629

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

THE GIANT COMPANY, LLC
1149 HARRISBURG PIKE
CARLISLE, PA 17013

                                        *Defendants*

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Page **3** of **41**

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

## CIVIL ACTION – COMPLAINT

Plaintiffs, Karen Uqdah and Emmanuel Bullock, through their undersigned counsel, Kline & Specter, P.C., hereby demand damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.    Plaintiffs Karen Uqdah and Emmanuel Bullock are adult individual citizens and residents of Pennsylvania, residing therein at 1049 Laurelee Avenue, Reading, PA 19605.

2.    Defendant, L'Oréal USA, Inc., ("L'Oréal") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

3.    Defendant, L'Oréal USA Products, Inc., ("L'Oréal Products") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

4.    Defendant, SoftSheen-Carson, LLC, ("Softsheen") is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.    Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson, LLC, will be collectively referred to as "L'Oréal Defendants."

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

6.      Defendant Strength of Nature, LLC, ("Strength of Nature") is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

7.      Defendant Godrej SON Holdings, Inc., ("Godrej") is, a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, GA. Upon information and belief, at all times relevant to this action, Godrej SON Holdings, Inc., has been the sole member and interested party of Strength of Nature, LLC.

8.      Defendants Strength of Nature, LLC and Godrej SON Holdings, Inc. will be collectively referred to as "Strength of Nature Defendants."

9.      Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. ("Beauty Bell") is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Blvd, Roswell, Georgia 30075. Upon information and belief, Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Gorgia.

10.     Defendant House of Cheatham, LLC, ("House of Cheatham") is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

11.     Defendants Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc and House of Cheatham, LLC, will be collectively referred to as "House of Cheatham Defendants."

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

12.     Defendant Luster Products, Inc. ("Luster Products") is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd Street, Chicago, IL 60609.

13.     Defendant AFAM Concept, Inc. d/b/a JF Labs Inc. ("AFAM"), is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, IL 60629.

14.     Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

15.     Defendant The Giant Company, LLC a/k/a and/or d/b/a Giant is a corporation with its principal place of business and headquarters located at 1149 Harrisburg Pike, Carlisle, PA 17013. At all times relevant hereto, The Giant Company owned and/or operated Giant located at 2174 W Union Blvd, Bethlehem, PA 18018.

## JURISDICTION

16.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, House of Cheatham Defendants, Defendant Luster Products, Defendant AFAM Concept, and Defendant Avlon Industries (hereinafter "Manufacturer Defendants") contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Mrs. Uqdah purchased and applied to her hair, to various companies and stores within the

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

Commonwealth of Pennsylvania, including but not limited to Defendant The Giant Company, LLC (hereinafter "Retailer Defendant").

20.     At all times relevant hereto, Manufacturer Defendants engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to be sold by Retailer Defendant.

21.     At all times relevant hereto, Retailer Defendant conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and merchandise, including Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm (hereinafter "Chemical Hair Relaxer Products") in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including the Chemical Hair Relaxer Products, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.     At all times relevant hereto, Manufacturer Defendants had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.     Additionally, Manufacturer Defendants' presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, Manufacturer Defendants consented to the exercise of

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.      A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

25.      Upon information and belief, at all relevant times, Manufacturer Defendants sold their products in Philadelphia County and regularly conducts business in Philadelphia County.

26.      Upon information and belief, at all relevant times, The Giant Company LLC, has and continues to regularly conduct business in Philadelphia County through the operation of their nine Philadelphia retail locations.

27.      The damages Plaintiffs seek, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiffs seek more than $50,000 in damages.

## FACTUAL BACKGROUND

28.      At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

   a.      Dark & Lovely

   b.      Optimum

   c.      Bantu; and,

   d.      Mizani.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

29.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

     a.     African Pride

     b.     Dr. Miracle's

     c.     Gentle Treatment

     d.     TCB; and,

     e.     Ultra Sheen.

30.     At all times material hereto, House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Africa's Best brand that Mrs. Uqdah used to chemically straighten her hair.

31.     At all times material hereto, Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Luster's Pink Oil brand that Mrs. Uqdah used to chemically straighten her hair.

32.     At all times material hereto, Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Hawaiian Silky brand that Mrs. Uqdah used to chemically straighten her hair.

33.     At all times material hereto, Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

specifically marketed to black women, including but not limited to the Affirm brand that Mrs. Uqdah used to chemically straighten her hair.

34.    Mrs. Uqdah developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

35.    Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

36.    This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

37.    Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau. The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

38.    In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool. The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

39.    In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse. Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

40.    In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

41.    Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

42.    The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

43.    The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

44.    For first-time application, the relaxer cream is placed on the hair from the root to the end. After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

45.    Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598



46.    In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

47.    In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598



48.     For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

49.     In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child.  Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Page **13** of **41**

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

50.    Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

51.    Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



52.    It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

53.    The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:



Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

 



54.    Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

**ENDOCRINE DISRUPTING CHEMICALS**

55.    Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

56.    These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

57.    EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

58.    This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

59.    A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

60.    Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

**Phthalates**

61.    Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

62.    Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

63.    Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

64.    Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

65.    In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

66.    Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

### Parabens

67.    Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

68.    Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

69.    A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

70.    In February of 2012, an article published in New America Medica authored by Thandisizwe Chimurenga entitled "How Toxic is Black Hair Care?" discussed prior and ongoing research regarding EDCs in black hair care products, and noted that "a team of researchers led by Dr. Lauren Wise of Boston University's Slone Epidemiology Center found strong evidence indicating that Black women's hair relaxer use increases the risk for uterine fibroid tumors by exposing Black women to various chemicals through scalp lesions and burns from the products."

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

71.     Chimurenga further noted that "May of 2011, Dr. Mary Beth Terry and others authored a study, the findings of which showed that African-American and African-Caribbean women were more likely to be exposed to hormonally-active chemicals in hair products."

72.     An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

73.     Dr. Terry's study, "Racial/Ethnic Differences in Hormonally-Active Hair Product Use: A Plausible Risk Factor for Health Disparities," published in the Journal of Immigrant Health, found that the African-American and African Caribbean women surveyed used products that contained chemicals—commonly referred to as endocrine-disrupting chemicals (EDCs)—linked to various reproductive and birth defects, breast cancer and heart disease.

74.     Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

75.     In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

76.     The synergistic effects of the combination of the known EDCs in the hair relaxers and other unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

77.    Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

78.    Despite decades of studies revealing the harmful effects of EDCs, the presence of EDCs in chemical hair relaxers, and the overwhelming disparity of gynecologic related injuries in black women that are known to be caused by EDC exposure, Defendants continue to produce the chemical hair relaxers without warning of the toxicity to the consumer.

## PLAINTIFF KAREN UQDAH'S HAIR RELAXER USE

79.    Plaintiff, Karenn Uqdah, consistently and frequently used Hair Relaxers, starting in 1968 through her final use on or around 2018.

80.    For decades, Mrs. Uqdah used the Chemical Hair Relaxer Products, which are manufactured and advertised by the named Manufacturer Defendants.

### L'Oréal Defendants

81.    Mrs. Uqdah used different variations of L'Oréal Defendants' Dark & Lovely hair relaxers, including but not limited to Dark and Lovely Beautiful Beginnings No-Mistake Smooth Relaxer.

82.    Mrs. Uqdah used different variations of L'Oréal Defendants' Optimum hair relaxers, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

83.    Mrs. Uqdah used different variations of L'Oréal Defendants' Bantu hair relaxers, including but not limited to Bantu No Base Relaxer.

84.    Mrs. Uqdah used different variations of L'Oréal Defendants' Mizani hair relaxers, including but not limited to Mizani Sensitive Scalp Relaxer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

85.    Mrs. Uqdah has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oréal Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Strength of Nature Defendants</u>

86.    Mrs. Uqdah used different variations of Strength of Nature Defendants' African Pride hair relaxers, including but not limited to:

a.    African Pride Olive Miracle Deep Conditioning Crème-on-Crème No Lye Relaxer 8 Salon Pack Touch-UpsGentle Treatment No-Lye Relaxer

b.    African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer

c.    African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer With Aloe Deep Conditioner

d.    African Pride Olive Miracle Deep Conditioning No-Lye Relaxer One Complete Application; and,

e.    African Pride Olive Miracle Deep Conditioning No-Lye Relaxer, One Complete Touch-Up.

87.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Dr. Miracle's hair relaxers, including but not limited to Dr. Miracle's No Lye Relaxer Kit.

88.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Gentle Treatment hair relaxers, including but not limited to Gentle Treatment No-Lye Relaxer.

89.    Mrs. Uqdah used different variations of Strength of Nature Defendants' TCB hair relaxers, including but not limited to:

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

    a.  TCB Naturals Conditioning Argan Oil Vitamin E & Olive No-Lye Relaxer, 2 Applications; and,

    b.  TCB No-Base Crème Hair Relaxer with Protein & DNA.

90.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxers, including but not limited to:

    a.  UltraSheen Supreme Conditioning No-Lye RelaxerGentle Treatment No-Lye Relaxer

    b.  UltraSheen Ultra Moisturizing No-Lye Relaxer; and,

    c.  UltraSheen Ultra Moisturizing No-Lye Relaxer, with Keratin.

91.    Mrs. Uqdah has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

### House of Cheatham Defendants

92.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Africa's Best hair relaxers, including but not limited to Africa's Best Herbal Intensive No-Lye Relaxer System.

93.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Affirm hair relaxers, including but not limited to:

    a.  Affirm Crème Relaxer; and,

    b.  Affirm Sensitive Scalp Relaxer.

94.    Mrs. Uqdah has reason to believe that House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

products known to House of Cheatham, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Defendant Luster Products</u>

95.    Mrs. Uqdah used different variations of Defendant Luster Products' Luster Pink Oil hair relaxers, including but not limited to Luster's Pink Oil Moisturizer No-Lye Conditioning Relaxer.

96.    Mrs. Uqdah has reason to believe that Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Luster Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Defendant AFAM</u>

97.    Mrs. Uqdah used different variations of Defendant AFAM's Hawaiian Silky hair relaxers, including but not limited to Hawaiian Silky - Crème Conditioning No Lye Silky Smooth Sheen Relaxer.

98.    Mrs. Uqdah has reason to believe that Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant AFAM Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Defendant Avlon</u>

99.    Mrs. Uqdah used different variations of Defendant Avlon's Affirm hair relaxers, including but not limited to:

    a.    Affirm Crème Relaxer; and,

    b.    Affirm Sensitive Scalp Relaxer.

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

100.    Mrs. Uqdah has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

101.    She reapplied the relaxer to newly grown hair approximately every three months at both home and add hair salons using home hair relaxer kits until her last application on or around 2018.

102.    Mrs. Uqdah purchased hair relaxer home kits from various retailers, including but not limited to Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant.

103.    Mrs. Uqdah purchased multiple hair relaxer home kits from Giant for several years up until 2015, including the Chemical Hair Relaxer Products.

104.    The Chemical Hair Relaxer Products purchased and used by the Mrs. Uqdah to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

105.    Mrs. Uqdah has reason to believe that the Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm contained:

a.      phthalates, including but not limited to diethyl phthalate (DEP), bis(2-ethylhexyl) phthalate (DEHP), and benzylbutyl phthalate

b.      Bisphenol A;

c.      cyclosiloxanes, including but not limited to octamethylcycloetrasiloxane (D4), decamethylcyclopentasiloxane (D5), and dodecamethylcyclohexylsiloxane (D6) parabens, including but not limited methyl paraben, ethyl paraben, bis(2-ethylhexyl);

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

d.    antimicrobials, including but not limited to o-phenylphenol, triclosan, and triclocarban;

e.    ethanolamines, including but not limited to menoethanolamine and diethanolamine;

f.    alkylphenols, including but not limited to 4-t-octylphenol, 4-t-nonylphenol, nonylphenol monoethoxylate, and nonylphenol diethoxylate;

g.    UV filters including, but not limited to benzophenone, benzophenone-1, benzophenone-2, benzophenone-3, oxtinoxate, and octadimethyl PABA;

h.    fragrances, including but not limited to benzylcetate, eugenol, hexyl cinnemal, limonene, linalool, methyl eugenol, methyl salicylate, pinene, terpineol, AHTN, bucinal, diphenyl ether, DPMI, HHCB, isobornyl acetate, methyl ionone, musk ketone, musk xylene, and phenethyl alcohol.

106.    The Chemical Hair Relaxer Products purchased and used by Mrs. Uqdah increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

**HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS**

107.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

108.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

109.    Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

110.   There are two types of endometrial cancers. Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

111.   Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

112.   Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

113.   Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

114.   Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

115.   One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body. Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

116.   Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

117.   For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

118.   Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

119.   Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

120. Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

121. In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

122. Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

123. Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

124. According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

125. Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

126. In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

127. The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

relaxers. Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70. However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

128.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years. The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

129.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

130.    The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

**PLAINTIFF KAREN UQDAH'S CANCER DIAGNOSIS**

131.    In December of 2016, at the age of fifty-eight, Ms. Uqdah was diagnosed with endometrial adenocarcinoma, FIGO grade 2.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

132.    Mrs. Uqdah's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

133.    Ms. Uqdah suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy, radiation, and chemotherapy.

### DISCOVERY RULE

134.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

135.    Plaintiffs reserve the right to plead and invoke the discovery rule. Mrs. Uqdah's endometrial cancer is a latent injury. Accordingly, under such circumstances, Plaintiffs could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiffs lacked the salient facts behind the cause of her endometrial cancer, and Plaintiffs could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiffs' action.

136.    Further, Plaintiffs did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

137.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Mrs. Uqdah at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiffs.

### COUNT I
### STRICT LIABILITY – DESIGN DEFFECT

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

**(Karen Uqdah v. All Defendants)**

138.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

139.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and distribution of the Chemical Hair Relaxer Products in a defective and unreasonably dangerous condition to consumers, including Mrs. Uqdah.

140.    Mrs. Uqdah used the Chemical Hair Relaxer Products frequently and consistently.

141.    Defendants marketed and advertised the Chemical Hair Relaxer Products as a safe product for use by consumers, specifically to black women and women of color, including Mrs. Uqdah, despite knowing that they contained EDCs and other harmful chemicals.

142.    At all relevant times, the Chemical Hair Relaxer Products reached their intended consumers, including Mrs. Uqdah, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

143.    Manufacturer Defendants had a duty to create the Chemical Hair Relaxer Products in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

144.    Retailer Defendants had a duty to ensure that the Chemical Hair Relaxer Products were not defective and safe for their intended use before selling said products to consumers, such as Ms. Uqdah.

145.    Defendants' Chemical Hair Relaxer Products were defective as they were formulated, designed, and manufactured with carcinogens.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

146.    The Defendants' Chemical Hair Relaxer Products were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as Mrs. Uqdah, would contemplate.

147.    Further, the magnitude of the danger associated with use of the Chemical Hair Relaxer Products outweighs the utility of these products.

148.    The dangers of the Chemical Hair Relaxer Products were unknown to the ordinary consumer.

149.    Mrs. Uqdah did not know of these dangers. If she would have known, these dangers would have been unacceptable to her, and she would not have used the Chemical Hair Relaxer Products.

150.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

151.    At the time of Mrs. Uqdah's exposure, the Chemical Hair Relaxer Products were being used in a normal, intended, or anticipated manner, as a chemical hair straightener product.

152.    Mrs. Uqdah used the Chemical Hair Relaxer Products without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

153.    The foreseeable risks associated with use of the Chemical Hair Relaxer Products exceeded the alleged benefits associated with their design and formulation.

154.    Defects in Defendants' Chemical Hair Relaxer Products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

155.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and,

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN
### (Karen Uqdah v. All Defendants)

156.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

157.    Mrs. Uqdah brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

158.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products, which are defective and unreasonably dangerous to its consumers, including Mrs. Uqdah because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

Page **31** of **41**

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

159.   The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

160.   Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

161.   However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

162.   Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of the Chemical Hair Relaxer Products; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

163.   Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

164.   Mrs. Uqdah reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

165.   Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Mrs. Uqdah could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

166.   As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Mrs. Uqdah was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

167.   Defendants' failure to warn regarding the dangers associated with use of the Chemical Hair Relaxer Products increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

168.   As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.   Economic losses, including medical care and lost earnings; and

    b.   Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT III
## NEGLIGENCE
### (Karen Uqdah v. Manufacturer Defendants)

169.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

170. At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products.

171. Mrs. Uqdah used the Chemical Hair Relaxer Products.

172. Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of the Chemical Hair Relaxer Products, including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

173. Defendants had a duty to provide true and accurate information and warnings concerning the risks of using the Chemical Hair Relaxer Products.

174. Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products and the propensity for the Hair Relaxers to cause cancer.

175. Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of the Chemical Hair Relaxer Products were unaware of the carcinogenic risks associated with use of the product.

176. Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

    a.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine whether they were safe for their intended use;

    b.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

c.    Marketing, advertising, and recommending the use of the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

d.    Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

e.    Failing to disclose the risk of serious harm associated with use the Chemical Hair Relaxer Products;

f.    Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use the Chemical Hair Relaxer Products;

g.    Failing to use reasonable and prudent care in the design, development, and manufacturing of the Chemical Hair Relaxer Products, so as to avoid the risk of serious harm associated with use;

h.    Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within the Chemical Hair Relaxer Products, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

i.    Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to the Chemical Hair Relaxer Products, such as side effects of exposure to endocrine-disrupting chemicals;

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

j.    Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included the Chemical Hair Relaxer Products; and,

k.    Marketing, advertising, and recommending the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

l.    Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

m.    Failing to disclose the risk of serious harm associated with use of Chemical Hair Relaxer Products;

n.    Representing that the Chemical Hair Relaxer Products were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not; and

o.    Continuing to manufacture and sell the Chemical Hair Relaxer Products, with the knowledge that the relaxers were unreasonably safe and dangerous.

177.    It was reasonably foreseeable that consumers, including Mrs. Uqdah, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Chemical Hair Relaxer Products.

178.    Defendants' negligent decisions to market and distribute the Chemical Hair Relaxer Products increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Mrs. Uqdah's cancer.

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

179.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and,

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES
### (Karen Uqdah v. All Defendants)

180.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

181.    At all relevant times, Manufacturer Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Chemical Hair Relaxer Products that Mrs. Uqdah used into the stream of commerce.

182.    At the time Manufacturer and Retailer Defendants, marketed, sold, and distributed their Chemical Hair Relaxer Products for use by Mrs. Uqdah, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 241002269

Case ID: 241002269
Control No.: 24111598

183.    Before the time of Mrs. Uqdah's use of the Chemical Hair Relaxer Products, Defendants impliedly warranted to consumers, including Mrs. Uqdah, that their relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

184.    Defendants, however, failed to disclose that the Chemical Hair Relaxer Products have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Mrs. Uqdah's cancer.

185.    Mrs. Uqdah reasonably relied upon the skill, superior knowledge, and judgment of Defendants, and upon their implied warranties that their Chemical Hair Relaxer Products were of merchantable quality and fit for their intended purpose or use.

186.    Manufacturer Defendants' Chemical Hair Relaxer Products were expected to reach, and did in fact reach, consumers and/or users, including Mrs. Uqdah, without substantial change in the condition in which they were manufactured and by Manufacturer Defendants and sold by Retailer Defendants.

187.    At all relevant times to this litigation, Defendants were aware that consumers and users of their Chemical Hair Relaxer Products, including Mrs. Uqdah, would use the products as marketed; therefore, Mrs. Uqdah was a foreseeable user of the Chemical Hair Relaxer Products.

188.    Defendants intended that their Chemical Hair Relaxer Products relaxers be used in the manner in which Mrs. Uqdah was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

189.    In reliance on Defendants' implied warranty, Mrs. Uqdah used the Chemical Hair Relaxer Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Manufacturer and Retailer Defendants.

190.    Mrs. Uqdah could not have reasonably discovered or known of the risks of serious injury associated with the Chemical Hair Relaxer Products.

191.    Defendants breached their implied warranty to Mrs. Uqdah in that the Chemical Hair Relaxer Products were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

192.    Defendants' Chemical Hair Relaxer Products have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Mrs. Uqdah sustained.

193.    The harm caused by Defendants' Chemical Hair Relaxer Products far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

194.    As a direct and proximate result of Defendants' wrongful acts and omissions Mrs. Uqdah has suffered severe and permanent physical and emotional injuries.

195.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT V
## LOSS OF CONSORTIUM
### (Emmanuel Bullock v. All Defendants)

196.    The Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

197.    As a result of the negligence detailed at length above of all the above-named Defendants, their agents, servants, employees and agents ostensible or direct set forth herein, Plaintiff Emmanuel Bullock suffered the loss of services, society and comfort and companionship of his wife, Karen Uqdah.

1.    As the result of the negligence of the above-named Defendants, Emmanuel Bullock claims the full measure of damages allowable under Pennsylvania law for the loss of consortium of his wife, Karen Uqdah.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Page **40** of **41**

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:  <u>October 17, 2024</u>

Page **41** of **41**

Case ID: 241002269
Case ID: 241002269
Control No.: 24111598

## **VERIFICATION**

I, Karen Uqdah, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: _10/17/2024_

_____
Karen Uqdah, Plaintiff

## **VERIFICATION**

I, Emmanuel Bullock, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: __10/17/2024__

_____
Emmanuel Bullock, Plaintiff

# Exhibit A-5

**B&R**
Services for Professionals Inc.
PHILADELPHIA, PA 19107
PHONE: (215) 546-7400
FAX: (215) 985-0169

*National Association of Professional Process Servers*

*Filed and Attested by the Office of Judicial Records 08 NOV 2024 12:48 pm G. IMPERATO*

| | | |
|---|---|---|
| Karen Uqdah, et al. | : | **COURT** Court of Common Pleas of Pennsylvania Philadelphia |
| -VS- | | |
| L'oreal Usa, Inc., et. al. | : | **CASE NUMBER** 241000225 |

## AFFIDAVIT

State of _____

County of _____

**B&R Control #** CS212818.01

**Reference Number**

### FORWARDED SERVICE

Now, on 10/28/2024, I do hereby request the Sheriff of Dauphin County
to serve this **Civil Action Complaint, Notice to Plead, Civil Cover Sheet, Verification** and make return thereof in accordance with the Law, for service upon
**The Giant Company, LLC** at **c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110**
By (Competent Adult) Danielle Cargen    Sheriff Check Amt $47.25   #4197

**** SPECIAL INSTRUCTIONS" ****

*SEE ATTACHED*

☐ **Served  Date** _____ **Time** _____ **Accepted By:** _____

In the manner described below.
☐ Personally served.
☐ Adult in charge of residence. Relationship is _____
☐ Adult in charge of residence who refused to give name and/or relationship.  _____
☐ Manager/Clerk of place of residence lodging  _____
☐ Agent or person authorized to accept service  _____
☐ Other _____

**Description of Person**  Age _____ Height _____ Weight _____ Race _____ Sex _____
Other _____

☐ **Not Served  Date** _____ **Time** _____   ☐ Moved  ☐ Unknown  ☐ No Answer  ☐ Vacant

☐ Other _____

The Process Server, was at the time of service a competent adult, over 18 years of age, not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

Process Server/Sheriff _____

Sworn to and subscribed before me this
_____ day of _____

Notary Public _____

| Client | Phone (215) 772-1000 | _____ : _____ | **Filed Date:** 10/17/2024 | **BR Serve By:** 11/16/2024 |
|---|---|---|---|---|

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102



ORIGINAL

Case ID: 241002269

# SHERIFF'S OFFICE OF DAUPHIN COUNTY

**Nicholas Chimienti, Jr.**
*Sheriff*

**David E. Olweiler**
*Chief Deputy*

**David B. Dowling**
*Solicitor*

**Vacant**
*Assistant Chief/Real Estate Deputy*

| KAREN UQDAH AND EMMANUEL BULLOCK, H/W vs. THE GIANT COMPANY, LLC | **Case Number** 2024-T-2681 |
| --- | --- |

## SHERIFF'S RETURN OF SERVICE

| | |
| --- | --- |
| 10/29/2024 | CASE # 241002269 |
| 10/29/2024 | Advance Fee |
| 10/31/2024 | 10:49 AM - DEPUTY JASON R. VOUGHT, BEING DULY SWORN ACCORDING TO LAW, DEPOSES AND SAYS, THE COMPLAINT IN CIVIL ACTION (CICA) WAS SERVED TO DAVE BULAKOWSKI, SERVICE ASSOCIATE, WHO ACCEPTED AS ADULT IN CHARGE AT THE TIME OF SERVICE TO WIT, THE GIANT COMPANY, LLC AT C/O CSC, 2595 INTERSTATE DRIVE, SUITE 103, HARRISBURG, PA 17110. |

JASON R. VOUGHT, DEPUTY

SHERIFF COST: $47.25

SO ANSWERS,

November 01, 2024

NICHOLAS CHIMIENTI, JR., SHERIFF

### COSTS

| DATE | CATEGORY | MEMO | CHK # | DEBIT | CREDIT |
| --- | --- | --- | --- | --- | --- |
| 10/29/2024 | Advance Fee | Advance Fee | 4197 | $0.00 | $47.25 |
| 11/01/2024 | County Fee | | | $47.25 | $0.00 |
| | | | | $47.25 | $47.25 |
| | | | BALANCE: | | $0.00 |

### NOTARY

Affirmed and subscribed to before me this

___1ST___ day of ___NOVEMBER___, ___2024___

Commonwealth of Pennsylvania — Notary Seal
Megan Tritt, Notary Public
Dauphin County
My Commission Expires September 29, 2025
Commission Number 1407107

(c) CountySuite Sheriff, Teleosoft, Inc.

# Exhibit A-6

KAREN UQDAH                          :        COURT OF COMMON PLEAS
                                     :
Plaintiff                            :        PHILADELPHIA COUNTY
                                     :
        Vs.                          :        OCTOBER TERM, 2024
                                     :
L'OREAL USA, INC, et al.             :
                                     :
Defendants.                          :        NO. 2269
                                     :

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of the

Preliminary Objections of Defendant AFAM Concept, Inc. (incorrectly identified as AFAM

Concept, Inc. d/b/a JF Labs, Inc.) to Plaintiff's Complaint and any responses thereto, it is hereby

ORDERED and DECREED that Defendant's Preliminary Objections are SUSTAINED. IT IS

FURTHER ORDERED and DECREED as follows:

1.      All of Plaintiff's claims against Defendant AFAM Concept, Inc. are dismissed,
        with prejudice;

2.      All demands for punitive damages asserted against Defendant AFAM Concept,
        Inc. are stricken, with prejudice; and

3.      All averments of recklessness and "conscious disregard" against Defendant
        AFAM Concept, Inc. are stricken, with prejudice.

                                              BY THE COURT:

                                              _____

                                                                        J.

1

Case ID: 241002269
Control No.: 24112022

To Plaintiff: You are hereby notified to file a written response to the enclosed Preliminary Objections within 20 days or a judgment will be entered against you.

/s/ STEPHEN A. SHEINEN_____
Stephen A. Sheinen, Esquire
**Attorneys for Defendant AFAM Concept, Inc. (incorrectly pled as AFAM Concept, Inc. d/b/a JF Labs, Inc.**

**GOLDBERG SEGALLA LLP**
**BY:  JOSEPH J. WELTER, ESQUIRE**
**ATTORNEY ID NO. 307885**
**BY:  ROBERT J. HAFNER, ESQUIRE**
**ATTORNEY ID NO. 44105**
**BY:  STEPHEN A. SHEINEN, ESQUIRE**
**ATTORNEY ID. NO. 61993**
**BY: NICOLE CASPERS, ESQUIRE**
**ATTORNEY ID NO. 335320**
**1700 Market Street, Suite 1418**
**Philadelphia, PA 19103-3907**
**T: 267.519.6800/F:267.519.6801**
**EMAIL:**     jwelter@goldbergsegalla.com
              rhafner@goldbergsegalla.com
              ssheinen@goldbergsegalla.com
              ncaspers@goldbergsegalla.com

Attorneys for Defendant AFAM Concept, Inc. (incorrectly pled as AFAM Concept, Inc. d/b/a JF Labs, Inc.)

| | | |
|---|---|---|
| KAREN UQDAH | : | COURT OF COMMON PLEAS |
| | : | |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| Vs. | : | OCTOBER TERM, 2024 |
| | : | |
| L'OREAL USA, INC, et al. | : | |
| | : | |
| Defendants. | : | NO. 2269 |
| | : | |

**PRELIMINARY OBJECTIONS OF DEFENDANT AFAM CONCEPT, INC.**
**(INCORRECTLY IDENTIFIED AS AFAM CONCEPT, INC. d/b/a JF LABS, INC.)**
**TO PLAINTIFF KAREN UQDAH'S COMPLAINT**

2

Case ID: 241002269
Control No.: 24112022

Defendant AFAM Concept, Inc., incorrectly pled as AFAM Concept, Inc. d/b/a JF Labs, Inc. ("AFAM"), by and through its undersigned counsel, Goldberg Segalla LLP, pursuant to Pennsylvania Rule of Civil Procedure 1028, hereby files the within Preliminary Objections to Plaintiff's Complaint, and in support thereof, avers as follows:

## I.    PRELIMINARY STATEMENT

1.    AFAM seeks the dismissal of the product liability and breach of warranty claims against it as they are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA").

2.    AFAM further requests that Plaintiff's claims against it be dismissed as they are pled in violation of Pennsylvania's strict fact-pleading standards.

3.    Additionally, AFAM requests that the punitive damages demands and recklessness and conscious disregard averments against it be stricken with prejudice as Plaintiff failed to comply with Pennsylvania's strict fact-pleading requirements in asserting these demands/claims.

## II.    FACTUAL BACKGROUND

4.    Plaintiff commenced this alleged product liability action by filing a Complaint on October 17, 2024 against 11 defendants (various manufacturers and retailers), including AFAM.[1]

5.    Plaintiff claims she contracted cancer after using certain hair relaxer products.

6.    In Plaintiff's four-count Complaint, she asserts claims sounding in Strict Liability-Design Defect (Count I), Strict Liability-Failure to Warn (Count II), Negligence (Count III); and Breach of Implied Warranties (Count IV), against AFAM, among other defendants.

---

[1] *See* Complaint, attached as Exhibit "A"

Case ID: 241002269
Control No.: 24112022

7.     In Plaintiff's Complaint, it is alleged that Plaintiff used Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm which are manufactured and advertised by the named Manufacturer Defendants.[2]

8.     Plaintiff alleges she "consistently and frequently used Hair Relaxers, starting in 1968 through her final use on or around 2018."[3]

9.     Plaintiff further avers she "reapplied the relaxer to newly grown hair approximately every three months at both home and at hair salons using home hair relaxer kits until her last application on or around 2018."[4]

10.     According to the Complaint, "[I]n December of 2016, at the age of fifty-eight, Ms. Uqdah was diagnosed with endometrial adenocarcinoma, FIGO grade 2."[5]

11.     Plaintiff does not delineate the time period of use for each product (instead alleging a block of 50 years of use).

12.     Plaintiff's Complaint includes a list of chemicals that Plaintiff claims are present in all the hair relaxers that she claims to have used. However, Plaintiff fails to link these chemicals to AFAM's products. Plaintiff alleges, generally and without sufficient factual support that " Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm hair relaxers contained:

     a. phthalates;

     b. bisphenol A;

     c. cyclosiloxanes;

     d. antimicrobials;

---

[2] *Id.* at ¶¶21, 80.
[3] *Id.* at ¶ 79.
[4] *Id.* at ¶ 101.
[5] *Id.* at ¶ 131.

Case ID: 241002269
Control No.: 24112022

e. ethanolamines;

f. alkylphenols;

g. UV filters; and

h. fragrances,"

which she speculates may have been in all the hair relaxer products that she used *generally.*[6]

13.     Plaintiff does not set forth specifically which chemicals were present in AFAM products or the proportion of the chemicals that were in those products, which allegedly contributed to her harm.

14.     Instead, Plaintiff devotes countless allegations to irrelevant factual assertions concerning the history of hair relaxer products and their marketing practices, which are not relevant to Plaintiff's claims against any named defendant., including AFAM.

## III.    LEGAL ARGUMENT

### A.    Preliminary Objections Standard

15.     AFAM incorporates by reference the preceding paragraphs as though they were fully set forth at length herein.

16.     In adjudicating preliminary objections, the court should view all clearly pleaded material facts as true, as well as all reasonable inferences drawn therefrom.[7]

17.     There is no requirement, however, that the court accept the pleader's legal conclusions or averments of law when ruling on preliminary objections.[8]

---

[6] *Id.* at ¶ 105.
[7] *Perelman v. Perelman,* 125 A.3d 1259, 1263 (Pa. Super. 2015) (citations omitted), *appeal denied,* 141 A.3d 435 (Pa. 2016).
[8] *See Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 613 A.2d 1235, 1238-39 (Pa. Super. 1992).

Case ID: 241002269
Control No.: 24112022

### B.    Counts II, III and IV Should be Dismissed Against AFAM Pursuant to Rule 1028(a)(4) Due to Federal Law Preemption

18.    AFAM incorporates by reference the preceding paragraphs as though they were fully set forth at length herein.

19.    Plaintiff's negligence, failure to warn and breach of implied warranties claims are expressly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") as they address product labeling requirements.

20.    The FDCA, 21 U.S.C. § 301, *et seq.,* provides that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter."[9]

21.    A plaintiff cannot seek to "impose labeling requirements that are additional to, different from, those that [the FDCA] has established."[10]

22.    Though FDCA preemption does not apply to products liability claims, it bars all other claims that seek to impose labeling requirements that are not identical to those imposed by the FDCA and its regulations.[11]

23.    Plaintiff herein posits the same arguments that were rejected in *Critcher* as she contends that AFAM is required to identify constituent ingredients in the fragrance component of its hair relaxers.[12]

---

[9] 21 U.S.C. § 379s(a).
[10] *Critcher v. L'Oreal USA, Inc.,* 959 F.3d 31, 38 (2d Cir. 2020).
[11] *Id.* at 35-36.
[12] *See* Exhibit "A" at ¶ 76 (alleging that "unknown chemicals" are "hidden under the ingredient title 'fragrances'").

6

Case ID: 241002269
Control No.: 24112022

24.    However, FDCA regulations do not expressly require the disclosure of the ingredients in the fragrance component.[13]

25.    The Georgia Court of Appeals, in *L'Oreal USA, Inc. v. Burroughs*, an opinion issued approximately five months ago, addressed the same issues as the Court will be adjudicating in the instant case.[14]

26.    In *L'Oreal USA, In*c., the court provided that inadequate warning claims are pre-empted by the FDCA if they seek to require warnings that are additional to those required by the FDCA. [15]

27.    The Illinois Circuit Court of Cook County, approximately three months ago, issued a global order in favor of Defendants granting, in part, a consolidated motion to dismiss based on issues of FDCA labeling preemption in 39 separate actions between various plaintiffs and manufacturers of hair relaxer products. In particular, the Court, in *Hayes v. L'Oreal USA, Inc.*, dismissed Plaintiffs' fraud claims as preempted under 21 U.S.C. §379s(a).[16]

28.    Plaintiff herein seeks to impose labeling requirements on AFAM that are additional to those required by the FDCA in her failure to warn, negligence and breach of warranty claims.

29.    The plain language of the FDCA provides that a state cannot impose labeling requirements that are broader than those outlined in the FDCA clearly evincing a congressional intent to control issues pertaining to the labeling of cosmetic products, including those at issue here.

---

[13] 21 C.F.R. § 701.3(a).
[14] 372 Ga. App 30 (June 21, 2024), attached as Exhibit "B."
[15] *Id*. at 40-41.
[16] Motion to Dismiss at 8*, *Hayes v. L'oreal USA, Inc.*, No. 2022-L-011132, 2023-L-001824, 2023-L-001934, 2023-L-003274, 2023-L-002603, 2023-L-005963, 2023-L-005958, 2023-L-005959, 2023-L-005953, 2023-L-005962, 2023-L-006390, 2023-L-006448 (Cir. Ct. Cook County, August 28, 2024), attached as Exhibit "C."

Case ID: 241002269
Control No.: 24112022

30. Plaintiff's failure to warn (Count II), negligence (Count III) and breach of warranty claims (Count IV) are therefore preempted by federal law and must be dismissed.

**WHEREFORE**, Defendant AFAM Concept, Inc., incorrectly identified as AFAM Concept, Inc. d/b/a JF Labs, Inc., respectfully requests that an Order be entered dismissing Plaintiff's Complaint against it, with prejudice.

### C. All of Plaintiff's Claims Against AFAM Should be Dismissed Pursuant to Rule 1028(a)(4) Because They are Violative of Pennsylvania's Fact-Pleading Standards.

31. AFAM incorporates by reference the preceding paragraphs as though they were fully set forth at length herein.

32. The Commonwealth of Pennsylvania is a fact pleading jurisdiction. Under Pennsylvania's system of fact pleading, the plaintiff bears the burden of defining the issues and setting forth every act or performance essential to that end in the complaint.[17]

33. The purpose of such pleadings is to place the defendant on notice of the intended grounds for suit and spare defendant of the exercise of guessing at the substance of plaintiff's allegations.[18]

34. Pennsylvania Rule of Civil Procedure 1019(a) requires that the material facts on which a cause of action is based be set forth in a concise and summary form.

35. Plaintiff' Complaint includes a list of chemicals that Plaintiff claims are present in all the hair relaxers that she claims to have used. However, Plaintiff fails to link these chemicals to AFAM's products. Plaintiff alleges, generally and without sufficient factual support that Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm hair relaxers contained:

---

[17] *Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238 (Pa. Super. 1992).
[18] *Schweikert v. St. Luke's Hosp. of Bethlehem,* 886 A.2d 265, 270 (Pa. Super. 2005).

Case ID: 241002269
Control No.: 24112022

a. phthalates;

b. bisphenol A;

c. cyclosiloxanes;

d. antimicrobials;

e. ethanolamines;

f. alkylphenols;

g. UV filters; and

h. fragrances,

which she speculates may have been in all the hair relaxer products that she used *generally.*[19]

36.    Throughout the Complaint, Plaintiff continuously uses vague and expansive language which does not appropriately place AFAM on notice regarding the parameters of Plaintiff's claims.

37.    The Complaint continuously fails to identify which chemicals Plaintiff believes caused her harm and, though she discusses a litany of chemicals with allegedly harmful effects, Plaintiff fails to adequately link any of those chemicals to AFAM's products.

38.    Accordingly, because Plaintiff violated Pennsylvania's fact-pleading requirements, the Court should dismiss Plaintiff's claims against AFAM.

**WHEREFORE**, Defendant AFAM Concept, Inc., incorrectly identified as AFAM Concept, Inc. d/b/a JF Labs, Inc., respectfully requests that an Order be entered dismissing Plaintiff's Complaint against it, with prejudice.

---

[19] Exhibit "A" at ¶ 105.

Case ID: 241002269
Control No.: 24112022

**D.    Count III Should be Dismissed Pursuant to Rule 1028(a)(4) as Pennsylvania Does Not Recognize a Claim for Failure to Test**

39.    AFAM incorporates by reference the preceding paragraphs as though they were fully set forth at length herein.

40.    Throughout Count III of the Complaint, Plaintiff alleges that AFAM was negligent for "failing to sufficiently test" its Hawaiian Silky product.[20]

41.    However, Pennsylvania courts do not recognize a claim for "negligent failure to test."[21]

42.    Accordingly, Plaintiff's allegations regarding AFAM's failure to test must be stricken.

**WHEREFORE**, Defendant AFAM Concept, Inc., incorrectly identified as AFAM Concept, Inc. d/b/a JF Labs, Inc., respectfully requests that an Order be entered striking Plaintiff's allegations of failure to test hair relaxer products against it, with prejudice.

**E.    Plaintiff's Demand for Punitive Damages and Allegations of Recklessness and Conscious Disregard Against AFAM Should be Stricken Pursuant to Rule 1028(a)(2).**

43.    AFAM incorporates by reference the preceding paragraphs as though they were fully set forth at length herein.

44.    Rule 1028(a)(2) provides that preliminary objections may be filed for a pleading's failure to conform to a rule of law or court, such as Rule 1019(a) requiring that the pleader state the material facts to support their claims.

---

[20] *See* Exhibit "A" at ¶ 176 (a, b, h).
[21] *Viguers v. Philip Morris USA, Inc*., 2003 PA Super. 446, ¶ 21 ("[T]he claim for 'negligent failure to test' is not a viable cause of action recognized by our courts, and we have found no 'duty to test' that would be the basis of such a claim").

Case ID: 241002269
Control No.: 24112022

45.     The standard governing punitive damages in Pennsylvania states that punitive damages may be awarded in cases where conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."[22]

46.     Furthermore, a plaintiff must allege facts demonstrating that the defendant's conduct was of such an outrageous nature as to constitute reckless, intentional, willful, or wanton conduct.[23]

47.     The Restatement (Second) of Torts, which has been adopted in Pennsylvania, defines reckless conduct as follows:

> Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.[24]

48.     Furthermore, "reckless" conduct must be something more than mere negligence and involve a risk of harm to others substantially in excess of that which is required to support a negligence claim.[25]

49.     Recklessness differs from negligence in that the former requires a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man."[26]

---

[22] *Hutchison v. Luddy*, 582 Pa. 114, 121, 870 A.2d 766, 770, 2005 Pa. LEXIS 523, *12 (2005).
[23] *SHV Coal v. Continental Grain, Co*., 587 A.2d 702, 704 (Pa. 1991)(citing *Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc*., 436 Pa. 350, 260 A.2d 801 (1970)).
[24]*Restatement (Second) of Torts* § 500 cmt. a*; Hutchinson v. Luddy*, 870 A. 2d 766 (Pa. 2004); *See also*, *Kerchner v. Naill*, 6 Pa. D.&C.4th 120, 125-26 (C.P. Adams 1989) (defining reckless conduct).
[25] *Restatement (Second) of Torts* § 500; see also *Perez v. Bardo*, 2011 U.S. Dist. WL 941380, at *2 (E.D. Pa. 2011)("A defendant acts recklessly when he creates an unquestionable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent.")
[26] *Restatement (Second) of Torts* § 500.

Case ID: 241002269
Control No.: 24112022

50.    In Plaintiff's Wherefore clauses in Counts I through IV of the Complaint, she asserts demands for punitive damages.

51.    Plaintiff further alleges that AFAM acted recklessly and with conscious disregard for the health and safety of consumers of their hair relaxer products on several occasions in her Complaint.[27]

52.    Plaintiff's demand for punitive damages against AFAM must be stricken because Plaintiff fails to allege the requisite levels of conduct on behalf of AFAM.

53.    Plaintiff failed to plead material facts to support her claims that AFAM acted maliciously, wantonly, recklessly, or willfully.[28]

54.    Plaintiff's allegations that AFAM failed to exercise reasonable care with respect to the manufacture of Hawaiian Silky do not meet the pleading threshold required to state a claim for recklessness, conscious disregard or a demand for punitive damages, and thus each and every one of plaintiff's punitive damages demands and allegations of recklessness and conscious disregard against AFAM should be stricken pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).

    **WHEREFORE**, Defendant AFAM Concept, Inc., incorrectly identified as AFAM Concept, Inc. d/b/a JF Labs, Inc., respectfully requests that an Order be entered striking Plaintiff's demands for punitive damages and recklessness and conscious disregard allegations against it, with prejudice.

---

[27] *See* Exhibit "A" at ¶¶137, 155, 168, 179, and 195.
[28] *See Wright v. Ryobi Techs., Inc.,* 175 F. Supp. 3d 439, 455-56 (E.D. Pa. 2016) (applying Pennsylvania law) ("Punitive damages may be awarded because the defendant's conduct was outrageous, or because the defendant's motive was evil, or because of the defendant's reckless indifference to the rights of others . . . . Punitive damages are only warranted for conduct that is malicious, wanton, reckless, willful, or oppressive." (citations omitted)).

Case ID: 241002269
Control No.: 24112022

**F.      Paragraphs 35-78 of the Complaint Should be Stricken Pursuant to Rule 1028(a)(2) as They include Scandalous or Impertinent Matter.**

55.      AFAM incorporates by reference the preceding paragraphs as though they were fully set forth at length herein.

56.      Under Rule 1028(a)(2), preliminary objections may be sustained when a pleading includes "scandalous or impertinent matter."

57.      Plaintiff's Complaint contains approximately ten pages (pages 10 through 19) of statements regarding western beauty standards and the alleged marketing of hair relaxers to young girls.[29]

58.      These statements are immaterial to Plaintiff's claims or AFAM's conduct.

59.      Accordingly, if the Complaint is not dismissed in its entirety, the court should strike this immaterial matter from the Complaint.

**WHEREFORE**, Defendant AFAM Concept, Inc., incorrectly identified as AFAM Concept, Inc. d/b/a JF Labs, Inc., respectfully requests that an Order be entered striking Plaintiff's statements regarding western beauty standards and the alleged marketing of hair relaxers to young girls (paragraphs 35 through 78), with prejudice.

---

[29] *See* Exhibit "A" at ¶ 35-78.

13

Case ID: 241002269
Control No.: 24112022

Respectfully submitted,

**GOLDBERG SEGALLA LLP**

*/s/ Stephen A. Sheinen*

By:   Joseph J. Welter, Esquire
      Robert J. Hafner, Esquire
      Stephen A. Sheinen, Esquire
      Nicole Caspers, Esquire
      *Attorneys for Defendant*
      AFAM Concept, Inc. (incorrectly identified
      as AFAM Concept, Inc. d/b/a
      JF Labs, Inc.)

Dated: 11/11/2024

14

Case ID: 241002269
Control No.: 24112022

**GOLDBERG SEGALLA LLP**
**BY: JOSEPH J. WELTER, ESQUIRE**
**ATTORNEY ID NO. 307885**
**BY: ROBERT J. HAFNER, ESQUIRE**
**ATTORNEY ID NO. 44105**
**BY: STEPHEN A. SHEINEN, ESQUIRE**
**ATTORNEY ID. NO. 61993**
**BY: NICOLE CASPERS, ESQUIRE**
**ATTORNEY ID NO. 335320**
**1700 Market Street, Suite 1418**
**Philadelphia, PA 19103-3907**
**T: 267.519.6800/F:267.519.6801**
**EMAIL:**      jwelter@goldbergsegalla.com
         rhafner@goldbergsegalla.com
         ssheinen@goldbergsegalla.com
         ncaspers@goldbergsegalla.com

Attorneys for Defendant
AFAM Concept, Inc. (incorrectly
pled as AFAM Concept, Inc.
d/b/a JF Labs, Inc.)

| | | |
|---|---|---|
| KAREN UQDAH | : | COURT OF COMMON PLEAS |
| | : | |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| Vs. | : | OCTOBER TERM, 2024 |
| | : | |
| L'OREAL USA, INC, et al. | : | |
| | : | |
| Defendants. | : | NO. 2269 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY OBJECTIONS**
**OF DEFENDANT AFAM CONCEPT, INC. (INCORRECTLY PLED AS AFAM CONCEPT,**
**INC. d/b/a JF LABS, INC.) TO PLAINTIFF'S COMPLAINT**

Defendant AFAM Concept, Inc. d/b/a JF Labs, Inc. ("AFAM") by and through its

undersigned attorneys, hereby submits the following Memorandum of Law in support of its

Preliminary Objections to Plaintiff, Karen Uqdah's ("Plaintiff"), Complaint.

**I.      MATTER BEFORE THE COURT**

AFAM, in its Preliminary Objections, seeks the dismissal of Plaintiff's negligence, strict

liability-failure to warn and breach of warranty claims because they are preempted by federal law

(the FDCA).  Alternatively, all of Plaintiff's claims against AFAM should be dismissed as they

Case ID: 241002269
Control No.: 24112022

are legally insufficient.  Plaintiff fails to link AFAM's products to the litany of chemicals she claims caused her damages.  Additionally, Plaintiff's demand for punitive damages and averments of recklessness and conscious disregard for the health and safety of consumers should be stricken as Plaintiff failed to allege the necessary material facts to support such averments/demands.

## II.   **QUESTIONS PRESENTED**

A.    Should this Court dismiss Plaintiff's negligence, failure to warn and breach of implied warranties claims against AFAM when such claims are preempted by federal law?

Suggested answer: ***Yes***.

B.    Should this Court dismiss Plaintiff's claims against AFAM when Plaintiff failed to allege that the chemicals that caused her damages were contained within any of AFAM's products rendering this claim legally insufficient?

Suggested Answer: ***Yes***.

C.    Should this Court dismiss Count III of the Complaint against AFAM for its legal insufficiency when Pennsylvania does not recognize a claim for negligent failure to test?

Suggested Answer: **Yes**

D.    Should this Court strike Plaintiff's allegations of recklessness and conscious disregard and her demands for punitive damages when Plaintiff failed to plead the material facts supporting these averments/demands?

Suggested Answer: **Yes**

E.    Should this Court strike the scandalous and impertinent matter from

Case ID: 241002269
Control No.: 24112022

Plaintiff's Complaint when it has no connection to Plaintiff's claims or the various Defendants' defenses pursuant to Rule 1028(a)(2)?

Suggested Answer: **Yes**

## III.     STATEMENT OF FACTS

Plaintiff, Karen Uqdah ("Plaintiff"), initiated this action by filing a Complaint on October 17, 2024. Plaintiff's Complaint arises out of her claimed use of numerous hair relaxer products associated with multiple defendants, which allegedly resulted in a diagnosis of endometrial cancer.[30]  According to the Complaint, plaintiff "consistently and frequently" used various hair relaxers from 1968 through 2018.[31]

Plaintiff claims to have used many different types and brands of hair relaxer products, including Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm associated with (6) different defendants.[32] Plaintiff alleges that AFAM "developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed, including, but not limited to, the Hawaiian Silky brand, that Plaintiff specifically used to chemically straighten her hair."[33]

As will be discussed in detail below, Plaintiff's claims are either preempted by federal law or pled in violation of Pennsylvania's strict fact pleading requirements. The deficiency of Plaintiff's Complaint encompasses Plaintiff's allegations of recklessness and conscious disregard

---

[30] *See* Complaint, attached as Exhibit "A" at ¶ 131.
[31] *Id.* at ¶ 79.
[32] *Id.*  at ¶¶21, 80.
[33] *Id.* at ¶32.

17

Case ID: 241002269
Control No.: 24112022

against AFAM.[34] Similarly, Plaintiff failed to plead the requisite material facts to support the punitive damages demands in all of the Wherefore clauses in the Complaint.[35]

## IV.    ARGUMENT

### A.    Counts II, III and IV of Plaintiff's Complaint Should be Dismissed Against AFAM Pursuant to Rule 1028(a)(4) due to Federal Law Preemption.

The Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.,* provides that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter."[36] A plaintiff cannot seek to "impose labeling requirements that are additional to, different from, those that [the FDCA] has established."[37] Though FDCA preemption does not apply to products liability claims, it bars all other claims that seek to impose labeling requirements that are not identical to those imposed by the FDCA and its regulations.[38]

Plaintiff herein posits the same arguments that were rejected in *Critcher* as she contends that AFAM is required to identify constituent ingredients in the fragrance component of its hair relaxers.[39] However, FDCA regulations expressly do not require disclosing the ingredients in the fragrance component.[40]

---

[34] *See Exhibit "A"* at ¶¶137, 155, 168, 179, and 195.
[35] *Id*.
[36] 21 U.S.C. § 379s(a).
[37] *Critcher* v. *L'Oreal USA,. Inc.,* 959 F.3d 31, 38 (2d Cir. 2020).
[38] *Id.* at 35-36.
[39] *See* Exhibit "A" ¶76 (alleging that "unknown chemicals" are "hidden under the ingredient title 'fragrances'").
[40] 21 C.F.R. § 701.3(a).

Case ID: 241002269
Control No.: 24112022

The Georgia Court of Appeals, in *L'Oreal USA, Inc. v. Burroughs*, approximately five months ago, addressed the same issues as the Court will be adjudicating in the instant case.[41]  In *L'Oreal USA, In*c., the court provided that inadequate warning claims are pre-empted by the FDCA if they seek to require warnings that are additional to those required by the FDCA.[42]

The Illinois Circuit Court of Cook County, approximately three months ago, issued a global order in favor of Defendants granting, in part, a consolidated motion to dismiss based on issues of FDCA labeling preemption in 39 separate actions between various plaintiffs and manufacturers of hair relaxer products. In particular, the Court, in *Hayes v. L'Oreal USA, Inc.*, dismissed Plaintiffs' fraud claims as preempted under 21 U.S.C. §379s(a).[43]

Plaintiff herein seeks to impose labeling requirements on AFAM that are additional to those required by the FDCA in her failure to warn, negligence and breach of warranty claims. The plain language of the FDCA provides that a state cannot impose labeling requirements that are broader than those outlined in the FDCA clearly evincing a congressional intent to control issues pertaining to the labeling of products, including those at issue here.

Plaintiff ignores this unambiguous language.  Accordingly, her failure to warn (Count II), negligence (Count III) and breach of warranty claims (Count IV) are therefore preempted by federal law and must be dismissed.

---

[41] 372 Ga. App 30 (June 21, 2024), attached as Exhibit "B."
[42] *Id*. at 40-41.
[43] Motion to Dismiss at 8, *Hayes v. L'oreal USA, Inc.*, No. 2022-L-011132, 2023-L-001824, 2023-L-001934, 2023-L-003274, 2023-L-002603, 2023-L-005963, 2023-L-005958, 2023-L-005959, 2023-L-005953, 2023-L-005962, 2023-L-006390, 2023-L-006448 (Cir. Ct. Cook County, August 28, 2024), attached as Exhibit "C."

Case ID: 241002269
Control No.: 24112022

**B.    All of Plaintiff's claims Against AFAM Should be Dismissed Pursuant to Rule 1028(a)(2) Because They are Violative of Pennsylvania's Fact-Pleading Requirements.**

The Commonwealth of Pennsylvania is a fact pleading jurisdiction. Under Pennsylvania's system of fact pleading, the plaintiff bears the burden of defining the issues and setting forth every act or performance essential to that end in the complaint.[44] Pennsylvania Rule of Civil Procedure 1019(a) requires that the material facts on which a cause of action is based be set forth in a concise and summary form. The purpose of such pleading requirements is to place the defendant on notice of the intended grounds for suit and spare defendant of the exercise of guessing at the substance of plaintiff's allegations.[45]

Plaintiff alleges, generally and without sufficient factual support, that "Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm hair relaxers contained:

      a. phthalates;

      b. bisphenol A;

      c. cyclosiloxanes;

      d. antimicrobials;

      e. ethanolamines;

      f. alkylphenols;

      g. UV filters; and

      h. fragrances."

Throughout the Complaint, Plaintiff continuously uses vague and expansive language which does not appropriately place AFAM on notice regarding the parameters of Plaintiff's

---

[44] *Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co*., 613 A.2d 1235, 1238 (Pa. Super. 1992).
[45] *Schweikert v. St. Luke's Hosp. of Bethlehem,* 886 A.2d 265, 270 (Pa. Super. 2005).

Case ID: 241002269
Control No.: 24112022

claims. The Complaint continuously fails to adequately link any of the aforementioned chemicals to AFAM's products. Accordingly, because Plaintiff violated Pennsylvania's fact-pleading requirements, the Court should dismiss Plaintiff's claims against AFAM.

### C.    Count III Should be Dismissed Pursuant to Rule 1028(a)(4) as Pennsylvania Does Not Recognize a Claim for Failure to Test.

Throughout Count III of the Complaint, Plaintiff alleges that AFAM was negligent for "failing to sufficiently test" its Hawaiian Silky product.[46] However, Pennsylvania courts do not recognize a claim for "negligent failure to test."[47] Accordingly, Plaintiff's allegations regarding AFAM's failure to test must be stricken.

### D.    Plaintiff's Demand for Punitive Damages and Allegations of Recklessness and Conscious Disregard Against AFAM Should be Stricken Pursuant to Rule 1028(a)(2).

The standard governing punitive damages in Pennsylvania states that punitive damages may be awarded in cases where conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."[48] Furthermore, a plaintiff must allege facts demonstrating that the defendant's conduct was of such an outrageous nature as to constitute reckless, intentional, willful, or wanton conduct.[49]

The Restatement (Second) of Torts, which has been adopted in Pennsylvania, defines reckless conduct as follows:

> Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in

---

[46] *See* Exhibit "A" at ¶ 176 (a, b, h).
[47] *Viguers v. Philip Morris USA, Inc.*, 2003 PA Super. 446, ¶ 21 ("[T]he claim for 'negligent failure to test' is not a viable cause of action recognized by our courts, and we have found no 'duty to test' that would be the basis of such a claim").
[48] *Hutchison v. Luddy*, 582 Pa. 114, 121, 870 A.2d 766, 770, 2005 Pa. LEXIS 523, *12 (2005).
[49] *SHV Coal v. Continental Grain, Co.*, 587 A.2d 702, 704 (Pa. 1991)(citing *Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc.,* 436 Pa. 350, 260 A.2d 801 (1970)).

Case ID: 241002269
Control No.: 24112022

conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.[50]

Furthermore, "reckless" conduct must be something more than mere negligence and involve a risk of harm to others substantially in excess of that which is required to support a negligence claim.[51]  Recklessness differs from negligence in that the former requires a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man."[52]

In Plaintiff's Wherefore clauses in Counts I through IV of the Complaint, she asserts demands for punitive damages.  Plaintiff further alleges that AFAM acted recklessly and with conscious disregard for the health and safety of consumers of their hair relaxer products on several occasions in her Complaint.[53]

Plaintiff's demand for punitive damages against AFAM must be stricken because Plaintiff fails to allege the requisite levels of conduct on behalf of AFAM. Plaintiff failed to plead material facts to support her claims that AFAM acted maliciously, wantonly, recklessly, or willfully.[54]  Plaintiff's allegations that AFAM failed to exercise reasonable care with respect to

---

[50] *Restatement (Second) of Torts* § 500 cmt. a*; Hutchinson v. Luddy*, 870 A. 2d 766 (Pa. 2004); *See also*, *Kerchner v. Naill*, 6 Pa. D.&C.4th 120, 125-26 (C.P. Adams 1989) (defining reckless conduct).

[51] *Restatement (Second) of Torts* § 500; see also *Perez v. Bardo*, 2011 U.S. Dist. WL 941380, at *2 (E.D. Pa. 2011)("A defendant acts recklessly when he creates an unquestionable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent.")

[52] *Restatement (Second) of Torts* § 500.

[53] *See* Exhibit "A" at ¶¶137, 155, 168, 179, and 195.

[54] *See Wright v. Ryobi Techs., Inc.,* 175 F. Supp. 3d 439, 455-56 (E.D. Pa. 2016) (applying Pennsylvania law) ("Punitive damages may be awarded because the defendant's conduct was outrageous, or because the defendant's motive was evil, or because of the defendant's reckless indifference to the rights of others . . . . Punitive damages are only warranted for conduct that is malicious, wanton, reckless, willful, or oppressive." (citations omitted)).

Case ID: 241002269
Control No.: 24112022

the manufacture of Hawaiian Silky do not meet the pleading threshold required to state a claim for recklessness, conscious disregard or a demand for punitive damages, and thus each and every one of plaintiff's punitive damages demands and allegations of recklessness and conscious disregard against AFAM should be stricken pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2).

### E.    Paragraphs 35-78 of the Complaint Should be Stricken Pursuant to Rule 1028(a)(2) as They Include Scandalous or Impertinent Matter.

Rule 1028(a)(2) provides that preliminary objections may be sustained when a pleading includes "scandalous or impertinent matter." Plaintiff's Complaint contains approximately ten pages (pages 10 through 19) of statements regarding western beauty standards and the alleged marketing of hair relaxers to young girls.[55] These statements are immaterial to Plaintiff's claims or AFAM's conduct. Accordingly, if the Complaint is not dismissed in its entirety, the court should strike this immaterial matter from the Complaint.

## V.    CONCLUSION

The majority of Plaintiff's claims against AFAM should be dismissed by virtue of federal law preemption. The plain language of the FDCA mandates that federal law preempt state law when it relates to the labeling of hair products. Accordingly, Plaintiff's failure to warn, negligence and breach of warranty claims against AFAM must be dismissed. Plaintiff violated Pennsylvania's strict fact pleading requirements when it failed to identify which of the allegedly harmful chemicals were contained within Hawaiian Silky, the only product AFAM allegedly manufactured as alleged in the Complaint. Finally, Plaintiff has failed to plead any facts that

---

[55] *See* Exhibit "A" at ¶¶ 35-78.

Case ID: 241002269
Control No.: 24112022

support her demands for punitive damages or her bald, conclusory allegations of reckless and

conscious disregard. These demands and allegations must be stricken, with prejudice.

Respectfully submitted,

**GOLDBERG SEGALLA LLP**

*/s/ Stephen A. Sheinen*

By:    Joseph J. Welter, Esquire
Robert J. Hafner, Esquire
Stephen A. Sheinen, Esquire
Nicole Caspers, Esquire
*Attorneys for Defendant*
AFAM Concept, Inc. (incorrectly identified
as AFAM Concept, Inc. d/b/a
JF Labs, Inc.)

Dated: 11/11/2024

Case ID: 241002269
Control No.: 24112022

**VERIFICATION**

I, Stephen A. Sheinen, Esquire, am counsel for Defendant AFAM Concept, Inc. (incorrectly pled as AFAM Concept, Inc. d/b/a JF Labs, Inc). I hereby verify that the statements made within the foregoing Defendant's Preliminary Objections to Plaintiffs' Complaint are true and correct to the best of my knowledge, information and belief, and that false statements herein are made subject to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn falsification to authorities.

*/s/ STEPHEN A. SHEINEN*
Stephen A. Sheinen, Esquire

Date: 11/11/2024

Case ID: 241002269
Control No.: 24112022

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the

Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that

require filing confidential information and documents differently than non-confidential

information and documents.

Submitted by,

**GOLDBERG SEGALLA LLP**

/s/ Stephen A. Sheinen

By:   Stephen A. Sheinen, Esquire
*Attorneys for Defendant*
*AFAM Concept, Inc. (incorrectly identified as*
*AFAM Concept, Inc. d/b/a JF Labs, Inc.)*

Dated: 11/11/2024

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of November 2024 a true and correct copy of the within Defendant AFAM Concept, Inc.'s (incorrectly pled as AFAM Concept, Inc. d/b/a JF Labs, Inc) Preliminary Objections to Plaintiff's Complaint was filed with the Court and served upon all counsel of record via the Court's ECF System.

### GOLDBERG SEGALLA LLP

By:    */s/ Stephen A. Sheinen*
JOSEPH J. WELTER, ESQUIRE
ROBERT J. HAFNER, ESQUIRE
STEPHEN A. SHEINEN, ESQUIRE
NICOLE CASPERS, ESQUIRE
*Attorneys for Defendant*
*AFAM Concept, Inc.,*
*(Incorrectly identified as AFAM Concept, Inc.*
*d/b/a JF Labs, Inc.).*

27

Case ID: 241002269
Control No.: 24112022

**GOLDBERG SEGALLA LLP**
**BY: JOSEPH J. WELTER, ESQUIRE**
**ATTORNEY ID NO. 307885**
**BY: ROBERT J. HAFNER, ESQUIRE**
**ATTORNEY ID NO. 44105**
**BY: STEPHEN A. SHEINEN, ESQUIRE**
**ATTORNEY ID. NO. 61993**
**BY: NICOLE CASPERS, ESQUIRE**
**ATTORNEY ID NO. 335320**
**1700 Market Street, Suite 1418**
**Philadelphia, PA 19103-3907**
**T: 267.519.6800/F:267.519.6801**
**EMAIL:**     jwelter@goldbergsegalla.com
                      rhafner@goldbergsegalla.com
                      ssheinen@goldbergsegalla.com
                      ncaspers@goldbergsegalla.com

Attorneys for Defendant
AFAM Concept, Inc. (incorrectly
pled as AFAM Concept, Inc.
d/b/a JF Labs, Inc.)

| | | |
|---|---|---|
| KAREN UQDAH | : | COURT OF COMMON PLEAS |
| | : | |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| Vs. | : | OCTOBER TERM, 2024 |
| | : | |
| L'OREAL USA, INC, et al. | : | |
| | : | |
| Defendants. | : | NO. 2269 |
| | : | |

**PRELIMINARY OBJECTIONS OF DEFENDANT AFAM CONCEPT, INC.**
**(INCORRECTLY IDENTIFIED AS AFAM CONCEPT, INC. d/b/a JF LABS, INC.)**
**TO PLAINTIFF KAREN UQDAH'S COMPLAINT**

# EXHIBIT "A"

Case ID: 241002269
Control No.: 24112022

**KLINE & SPECTER** PC
ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

215-792-5608
FAX: 215-402-2352

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 78 / 9590 9402 8751 3310 0800 22**

Avlon Industries, Inc.
1999 North 15th Street
Melrose Park, IL 60160

     *Re:*   *Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

     Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

     Very truly yours

     Sherrell L. Dandy

SLD/cm
encls

Case ID: 241002269
Control No.: 24112022

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**OCTOBER 2024**                    02269

E-Filing Number: 2410041108

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN UQDAH | L□ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| EMMANUEL BULLOCK | L□ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 11 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY**<br>OCT **17** 2024<br>**L. BREWINGTON** | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: KAREN UQDAH , EMMANUEL BULLOCK

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C.<br>1525 LOCUST STREET<br>19TH FLOOR<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)772-1000 | none entered | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 309348 | sherrell.dandy@klinespecter.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| SHERRELL DANDY | Thursday, October 17, 2024, 04:07 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 241002269
Control No.: 24112022

**COMPLETE LIST OF DEFENDANTS:**

1. L'ORÉAL USA, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
2. L'ORÉAL USA PRODUCTS, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
   10 HUDSON YARDS
   NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
   64 ROSS ROAD
   SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
   64 ROSS ROAD
   SAVANNAH GA 31405
6. BEAUTY BELL ENTERPRISE
   ALIAS: HOUSE OF CHEATHAM LLC
   647 MIMOSA BLVD.
   ROSWELL GA 30075
7. HOUSE OF CHEATHAM, LLC
   1445 ROCK MOUNTAIN BLVD
   STONE MOUNTAIN GA 30083
8. LUSTER PRODUCTS, INC.
   1104 WEST 43RD STREET
   CHICAGO IL 60609
9. AFAM CONCEPT, INC.
   ALIAS: JF LABS, INC.
   7401 S. PULASKI ROAD
   CHICAGO IL 60629
10. AVLON INDUSTRIES, INC.
    1999 NORTH 15TH STREET
    MELROSE PARK IL 60160
11. THE GIANT COMPANY, LLC
    1149 HARRISBURG PIKE
    CARLISLE PA 17013

Case ID: 241002269
Control No.: 24112022

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                              ATTORNEYS FOR PLAINTIFFS

*Filed and Attested by the Office of Judicial Records 17 OCT 2024 04:13 pm B. BREWINGTON*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W<br>1049 LAURELEE AVENUE<br>READING, PA 19605<br><br>*Plaintiffs*<br><br>V.<br><br>L'ORÉAL USA, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10017<br><br>AND<br><br>L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405<br><br>AND | IN THE COURT OF COMMON PLEAS<br>*PHILADELPHIA* COUNTY,<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

BEAUTY BELL ENTERPRISE D/B/A
HOUSE OF CHEATHAM, INC. AND
HOUSE OF CHEATHAM LLC
647 MIMOSA BLVD
ROSWELL, GA 30075

AND

HOUSE OF CHEATHAM, LLC
1445 ROCK MOUNTAIN BLVD
STONE MOUNTAIN, GA 30083

AND

LUSTER PRODUCTS, INC.
1104 WEST 43RD STREET
CHICAGO, IL 60609

AND

AFAM CONCEPT, INC. D/B/A JF LABS,
INC.
7401 S. PULASKI ROAD
CHICAGO, IL 60629

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

THE GIANT COMPANY, LLC
1149 HARRISBURG PIKE
CARLISLE, PA 17013

*Defendants*

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

# NOTICE TO PLEAD

| | |
|---|---|
| **NOTICE** | **ADVISO** |

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

## CIVIL ACTION – COMPLAINT

Plaintiffs, Karen Uqdah and Emmanuel Bullock, through their undersigned counsel, Kline & Specter, P.C., hereby demand damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.      Plaintiffs Karen Uqdah and Emmanuel Bullock are adult individual citizens and residents of Pennsylvania, residing therein at 1049 Laurelee Avenue, Reading, PA 19605.

2.      Defendant, L'Oréal USA, Inc., ("L'Oréal") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

3.      Defendant, L'Oréal USA Products, Inc., ("L'Oréal Products") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

4.      Defendant, SoftSheen-Carson, LLC, ("Softsheen") is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.      Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson, LLC, will be collectively referred to as "L'Oréal Defendants."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

6.      Defendant Strength of Nature, LLC, ("Strength of Nature") is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

7.      Defendant Godrej SON Holdings, Inc., ("Godrej") is, a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, GA. Upon information and belief, at all times relevant to this action, Godrej SON Holdings, Inc., has been the sole member and interested party of Strength of Nature, LLC.

8.      Defendants Strength of Nature, LLC and Godrej SON Holdings, Inc. will be collectively referred to as "Strength of Nature Defendants."

9.      Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. ("Beauty Bell") is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Blvd, Roswell, Georgia 30075. Upon information and belief, Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Gorgia.

10.     Defendant House of Cheatham, LLC, ("House of Cheatham") is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

11.     Defendants Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc and House of Cheatham, LLC, will be collectively referred to as "House of Cheatham Defendants."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

12.    Defendant Luster Products, Inc. ("Luster Products") is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd Street, Chicago, IL 60609.

13.    Defendant AFAM Concept, Inc. d/b/a JF Labs Inc. ("AFAM"), is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, IL 60629.

14.    Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

15.    Defendant The Giant Company, LLC a/k/a and/or d/b/a Giant is a corporation with its principal place of business and headquarters located at 1149 Harrisburg Pike, Carlisle, PA 17013. At all times relevant hereto, The Giant Company owned and/or operated Giant located at 2174 W Union Blvd, Bethlehem, PA 18018.

## JURISDICTION

16.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

17.    This Court has original jurisdiction over this civil action.

18.    This Court has personal jurisdiction over the Defendants.

19.    At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, House of Cheatham Defendants, Defendant Luster Products, Defendant AFAM Concept, and Defendant Avlon Industries (hereinafter "Manufacturer Defendants") contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Mrs. Uqdah purchased and applied to her hair, to various companies and stores within the

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

Commonwealth of Pennsylvania, including but not limited to Defendant The Giant Company, LLC
(hereinafter "Retailer Defendant").

20.    At all times relevant hereto, Manufacturer Defendants engaged in the business of
manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising,
transporting, and marketing hair relaxer products which contained dangerous and harmful amounts
of endocrine disrupting chemicals and other harmful substances to be sold by Retailer Defendant.

21.    At all times relevant hereto, Retailer Defendant conducted business in the
Commonwealth of Pennsylvania by: (1) selling and distributing products and merchandise,
including Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best,
Luster's Pink Oil, Hawaiian Silky, and Affirm (hereinafter "Chemical Hair Relaxer Products") in
the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales
and distributions; (2) shipping products and merchandise, including the Chemical Hair Relaxer
Products, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business
in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property
situated in the Commonwealth of Pennsylvania.

22.    At all times relevant hereto, Manufacturer Defendants had, and continues to have,
regular and systematic contact with and conducts business in and from the Commonwealth of
Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of
Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.    Additionally, Manufacturer Defendants' presence in the Commonwealth of
Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise
jurisdiction over it. Additionally, Manufacturer Defendants consented to the exercise of

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.     A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

25.     Upon information and belief, at all relevant times, Manufacturer Defendants sold their products in Philadelphia County and regularly conducts business in Philadelphia County.

26.     Upon information and belief, at all relevant times, The Giant Company LLC, has and continues to regularly conduct business in Philadelphia County through the operation of their nine Philadelphia retail locations.

27.     The damages Plaintiffs seek, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiffs seek more than $50,000 in damages.

## **FACTUAL BACKGROUND**

28.     At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

      a.      Dark & Lovely

      b.      Optimum

      c.      Bantu; and,

      d.      Mizani.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

29.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

    a.    African Pride

    b.    Dr. Miracle's

    c.    Gentle Treatment

    d.    TCB; and,

    e.    Ultra Sheen.

30.     At all times material hereto, House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Africa's Best brand that Mrs. Uqdah used to chemically straighten her hair.

31.     At all times material hereto, Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Luster's Pink Oil brand that Mrs. Uqdah used to chemically straighten her hair.

32.     At all times material hereto, Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Hawaiian Silky brand that Mrs. Uqdah used to chemically straighten her hair.

33.     At all times material hereto, Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were

Case ID: 241002269
Case ID: 241002269
Control No.: 241112022

specifically marketed to black women, including but not limited to the Affirm brand that Mrs. Uqdah used to chemically straighten her hair.

34.    Mrs. Uqdah developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

35.    Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

36.    This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

37.    Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau. The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

38.    In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool. The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

39.    In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse. Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

40.    In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

41.    Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

42.    The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

43.    The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

44.    For first-time application, the relaxer cream is placed on the hair from the root to the end. After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

45.    Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022



46.     In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

47.     In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022



48.     For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

49.     In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child. Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

50.    Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

51.    Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



52.    It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

53.    The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:

 

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

 



54.     Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

## ENDOCRINE DISRUPTING CHEMICALS

55.     Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 241002269
**Case ID: 241002269**
**Control No.: 24112022**

56.    These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

57.    EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

58.    This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

59.    A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

60.    Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

### Phthalates

61.    Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

62.    Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

63.    Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

64.    Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

65.    In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

66.    Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

## Parabens

67.    Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

68.    Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

69.    A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

70.    In February of 2012, an article published in New America Medica authored by Thandisizwe Chimurenga entitled "How Toxic is Black Hair Care?" discussed prior and ongoing research regarding EDCs in black hair care products, and noted that "a team of researchers led by Dr. Lauren Wise of Boston University's Slone Epidemiology Center found strong evidence indicating that Black women's hair relaxer use increases the risk for uterine fibroid tumors by exposing Black women to various chemicals through scalp lesions and burns from the products."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

71.    Chimurenga further noted that "May of 2011, Dr. Mary Beth Terry and others authored a study, the findings of which showed that African-American and African-Caribbean women were more likely to be exposed to hormonally-active chemicals in hair products."

72.    An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer. It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

73.    Dr. Terry's study, "Racial/Ethnic Differences in Hormonally-Active Hair Product Use: A Plausible Risk Factor for Health Disparities," published in the Journal of Immigrant Health, found that the African-American and African Caribbean women surveyed used products that contained chemicals—commonly referred to as endocrine-disrupting chemicals (EDCs)—linked to various reproductive and birth defects, breast cancer and heart disease.

74.    Studies have shown that black women have elevated levels of phthalates in their urine compared to white women. Additionally, a May 2021 study showed higher levels of parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

75.    In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

76.    The synergistic effects of the combination of the known EDCs in the hair relaxers and other unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

Page **18** of **41**

77.    Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

78.    Despite decades of studies revealing the harmful effects of EDCs, the presence of EDCs in chemical hair relaxers, and the overwhelming disparity of gynecologic related injuries in black women that are known to be caused by EDC exposure, Defendants continue to produce the chemical hair relaxers without warning of the toxicity to the consumer.

## PLAINTIFF KAREN UQDAH'S HAIR RELAXER USE

79.    Plaintiff, Karenn Uqdah, consistently and frequently used Hair Relaxers, starting in 1968 through her final use on or around 2018.

80.    For decades, Mrs. Uqdah used the Chemical Hair Relaxer Products, which are manufactured and advertised by the named Manufacturer Defendants.

### L'Oréal Defendants

81.    Mrs. Uqdah used different variations of L'Oréal Defendants' Dark & Lovely hair relaxers, including but not limited to Dark and Lovely Beautiful Beginnings No-Mistake Smooth Relaxer.

82.    Mrs. Uqdah used different variations of L'Oréal Defendants' Optimum hair relaxers, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

83.    Mrs. Uqdah used different variations of L'Oréal Defendants' Bantu hair relaxers, including but not limited to Bantu No Base Relaxer.

84.    Mrs. Uqdah used different variations of L'Oréal Defendants' Mizani hair relaxers, including but not limited to Mizani Sensitive Scalp Relaxer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

85.     Mrs. Uqdah has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oréal Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Strength of Nature Defendants</u>

86.     Mrs. Uqdah used different variations of Strength of Nature Defendants' African Pride hair relaxers, including but not limited to:

    a.  African Pride Olive Miracle Deep Conditioning Crème-on-Crème No Lye Relaxer 8 Salon Pack Touch-UpsGentle Treatment No-Lye Relaxer

    b.  African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer

    c.  African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer With Aloe Deep Conditioner

    d.  African Pride Olive Miracle Deep Conditioning No-Lye Relaxer One Complete Application; and,

    e.  African Pride Olive Miracle Deep Conditioning No-Lye Relaxer, One Complete Touch-Up.

87.     Mrs. Uqdah used different variations of Strength of Nature Defendants' Dr. Miracle's hair relaxers, including but not limited to Dr. Miracle's No Lye Relaxer Kit.

88.     Mrs. Uqdah used different variations of Strength of Nature Defendants' Gentle Treatment hair relaxers, including but not limited to Gentle Treatment No-Lye Relaxer.

89.     Mrs. Uqdah used different variations of Strength of Nature Defendants' TCB hair relaxers, including but not limited to:

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

a.  TCB Naturals Conditioning Argan Oil Vitamin E & Olive No-Lye Relaxer, 2 Applications; and,

b.  TCB No-Base Crème Hair Relaxer with Protein & DNA.

90.  Mrs. Uqdah used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxers, including but not limited to:

a.  UltraSheen Supreme Conditioning No-Lye RelaxerGentle Treatment No-Lye Relaxer

b.  UltraSheen Ultra Moisturizing No-Lye Relaxer; and,

c.  UltraSheen Ultra Moisturizing No-Lye Relaxer, with Keratin.

91.  Mrs. Uqdah has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>House of Cheatham Defendants</u>

92.  Mrs. Uqdah used different variations of House of Cheatham Defendants' Africa's Best hair relaxers, including but not limited to Africa's Best Herbal Intensive No-Lye Relaxer System.

93.  Mrs. Uqdah used different variations of House of Cheatham Defendants' Affirm hair relaxers, including but not limited to:

a.  Affirm Crème Relaxer; and,

b.  Affirm Sensitive Scalp Relaxer.

94.  Mrs. Uqdah has reason to believe that House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

products known to House of Cheatham, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Defendant Luster Products</u>

95.     Mrs. Uqdah used different variations of Defendant Luster Products' Luster Pink Oil hair relaxers, including but not limited to Luster's Pink Oil Moisturizer No-Lye Conditioning Relaxer.

96.     Mrs. Uqdah has reason to believe that Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Luster Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Defendant AFAM</u>

97.     Mrs. Uqdah used different variations of Defendant AFAM's Hawaiian Silky hair relaxers, including but not limited to Hawaiian Silky - Crème Conditioning No Lye Silky Smooth Sheen Relaxer.

98.     Mrs. Uqdah has reason to believe that Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant AFAM Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Defendant Avlon</u>

99.     Mrs. Uqdah used different variations of Defendant Avlon's Affirm hair relaxers, including but not limited to:

    a.     Affirm Crème Relaxer; and,

    b.     Affirm Sensitive Scalp Relaxer.

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

100.    Mrs. Uqdah has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

101.    She reapplied the relaxer to newly grown hair approximately every three months at both home and add hair salons using home hair relaxer kits until her last application on or around 2018.

102.    Mrs. Uqdah purchased hair relaxer home kits from various retailers, including but not limited to Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant.

103.    Mrs. Uqdah purchased multiple hair relaxer home kits from Giant for several years up until 2015, including the Chemical Hair Relaxer Products.

104.    The Chemical Hair Relaxer Products purchased and used by the Mrs. Uqdah to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

105.    Mrs. Uqdah has reason to believe that the Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm contained:

    a.    phthalates, including but not limited to diethyl phthalate (DEP), bis(2-ethylhexyl) phthalate (DEHP), and benzylbutyl phthalate

    b.    Bisphenol A;

    c.    cyclosiloxanes, including but not limited to octamethylcycloetrasiloxane (D4), decamethylcyclopentasiloxane (D5), and dodecamethylcyclohexylsiloxane (D6) parabens, including but not limited methyl paraben, ethyl paraben, bis(2-ethylhexyl);

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

d.      antimicrobials, including but not limited to o-phenylphenol, triclosan, and triclocarban;

e.      ethanolamines, including but not limited to menoethanolamine and diethanolamine;

f.      alkylphenols, including but not limited to 4-t-octylphenol, 4-t-nonylphenol, nonylphenol monoethoxylate, and nonylphenol diethoxylate;

g.      UV filters including, but not limited to benzophenone, benzophenone-1, benzophenone-2, benzophenone-3, oxtinoxate, and octadimethyl PABA;

h.      fragrances, including but not limited to benzylcetate, eugenol, hexyl cinnemal, limonene, linalool, methyl eugenol, methyl salicylate, pinene, terpineol, AHTN, bucinal, diphenyl ether, DPMI, HHCB, isobornyl acetate, methyl ionone, musk ketone, musk xylene, and phenethyl alcohol.

106.    The Chemical Hair Relaxer Products purchased and used by Mrs. Uqdah increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

**HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS**

107.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

108.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

109.    Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

110.    There are two types of endometrial cancers. Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

111.    Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

112.    Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

113.    Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

114.    Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

115.    One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body. Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

116.    Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

117.    For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

118.    Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

119.    Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

120.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

121.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

122.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

123.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

124.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

125.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

126.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

127.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

relaxers. Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70. However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

128.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years. The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

129.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

130.    The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

### PLAINTIFF KAREN UQDAH'S CANCER DIAGNOSIS

131.    In December of 2016, at the age of fifty-eight, Ms. Uqdah was diagnosed with endometrial adenocarcinoma, FIGO grade 2.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

132.    Mrs. Uqdah's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

133.    Ms. Uqdah suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy, radiation, and chemotherapy.

## DISCOVERY RULE

134.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

135.    Plaintiffs reserve the right to plead and invoke the discovery rule. Mrs. Uqdah's endometrial cancer is a latent injury. Accordingly, under such circumstances, Plaintiffs could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiffs lacked the salient facts behind the cause of her endometrial cancer, and Plaintiffs could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiffs' action.

136.    Further, Plaintiffs did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

137.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Mrs. Uqdah at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiffs.

## COUNT I
## STRICT LIABILITY – DESIGN DEFFECT

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

**(Karen Uqdah v. All Defendants)**

138.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

139.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and distribution of the Chemical Hair Relaxer Products in a defective and unreasonably dangerous condition to consumers, including Mrs. Uqdah.

140.    Mrs. Uqdah used the Chemical Hair Relaxer Products frequently and consistently.

141.    Defendants marketed and advertised the Chemical Hair Relaxer Products as a safe product for use by consumers, specifically to black women and women of color, including Mrs. Uqdah, despite knowing that they contained EDCs and other harmful chemicals.

142.    At all relevant times, the Chemical Hair Relaxer Products reached their intended consumers, including Mrs. Uqdah, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

143.    Manufacturer Defendants had a duty to create the Chemical Hair Relaxer Products in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

144.    Retailer Defendants had a duty to ensure that the Chemical Hair Relaxer Products were not defective and safe for their intended use before selling said products to consumers, such as Ms. Uqdah.

145.    Defendants' Chemical Hair Relaxer Products were defective as they were formulated, designed, and manufactured with carcinogens.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

146.    The Defendants' Chemical Hair Relaxer Products were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as Mrs. Uqdah, would contemplate.

147.    Further, the magnitude of the danger associated with use of the Chemical Hair Relaxer Products outweighs the utility of these products.

148.    The dangers of the Chemical Hair Relaxer Products were unknown to the ordinary consumer.

149.    Mrs. Uqdah did not know of these dangers. If she would have known, these dangers would have been unacceptable to her, and she would not have used the Chemical Hair Relaxer Products.

150.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

151.    At the time of Mrs. Uqdah's exposure, the Chemical Hair Relaxer Products were being used in a normal, intended, or anticipated manner, as a chemical hair straightener product.

152.    Mrs. Uqdah used the Chemical Hair Relaxer Products without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

153.    The foreseeable risks associated with use of the Chemical Hair Relaxer Products exceeded the alleged benefits associated with their design and formulation.

154.    Defects in Defendants' Chemical Hair Relaxer Products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

155.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and,

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN
### (Karen Uqdah v. All Defendants)

156.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

157.    Mrs. Uqdah brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

158.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products, which are defective and unreasonably dangerous to its consumers, including Mrs. Uqdah because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

159.   The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

160.   Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

161.   However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

162.   Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of the Chemical Hair Relaxer Products; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

163.   Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

164.   Mrs. Uqdah reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

165.   Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Mrs. Uqdah could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

166.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Mrs. Uqdah was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

167.    Defendants' failure to warn regarding the dangers associated with use of the Chemical Hair Relaxer Products increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

168.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

        a.    Economic losses, including medical care and lost earnings; and

        b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT III
## NEGLIGENCE
### (Karen Uqdah v. Manufacturer Defendants)

169.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

170. At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products.

171. Mrs. Uqdah used the Chemical Hair Relaxer Products.

172. Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of the Chemical Hair Relaxer Products, including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

173. Defendants had a duty to provide true and accurate information and warnings concerning the risks of using the Chemical Hair Relaxer Products.

174. Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products and the propensity for the Hair Relaxers to cause cancer.

175. Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of the Chemical Hair Relaxer Products were unaware of the carcinogenic risks associated with use of the product.

176. Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

    a.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine whether they were safe for their intended use;

    b.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

c.     Marketing, advertising, and recommending the use of the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

d.     Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

e.     Failing to disclose the risk of serious harm associated with use the Chemical Hair Relaxer Products;

f.     Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use the Chemical Hair Relaxer Products;

g.     Failing to use reasonable and prudent care in the design, development, and manufacturing of the Chemical Hair Relaxer Products, so as to avoid the risk of serious harm associated with use;

h.     Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within the Chemical Hair Relaxer Products, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

i.     Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to the Chemical Hair Relaxer Products, such as side effects of exposure to endocrine-disrupting chemicals;

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

j.    Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included the Chemical Hair Relaxer Products; and,

k.    Marketing, advertising, and recommending the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

l.    Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

m.    Failing to disclose the risk of serious harm associated with use of Chemical Hair Relaxer Products;

n.    Representing that the Chemical Hair Relaxer Products were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not; and

o.    Continuing to manufacture and sell the Chemical Hair Relaxer Products, with the knowledge that the relaxers were unreasonably safe and dangerous.

177.    It was reasonably foreseeable that consumers, including Mrs. Uqdah, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Chemical Hair Relaxer Products.

178.    Defendants' negligent decisions to market and distribute the Chemical Hair Relaxer Products increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Mrs. Uqdah's cancer.

Case ID: 241002269

Case ID: 241002269
Control No.: 24112022

179.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and,

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES
### (Karen Uqdah v. All Defendants)

180.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

181.    At all relevant times, Manufacturer Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Chemical Hair Relaxer Products that Mrs. Uqdah used into the stream of commerce.

182.    At the time Manufacturer and Retailer Defendants, marketed, sold, and distributed their Chemical Hair Relaxer Products for use by Mrs. Uqdah, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Page **37** of **41**

Case ID: 241002269
Control No.: 24112022

183.     Before the time of Mrs. Uqdah's use of the Chemical Hair Relaxer Products, Defendants impliedly warranted to consumers, including Mrs. Uqdah, that their relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

184.     Defendants, however, failed to disclose that the Chemical Hair Relaxer Products have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Mrs. Uqdah's cancer.

185.     Mrs. Uqdah reasonably relied upon the skill, superior knowledge, and judgment of Defendants, and upon their implied warranties that their Chemical Hair Relaxer Products were of merchantable quality and fit for their intended purpose or use.

186.     Manufacturer Defendants' Chemical Hair Relaxer Products were expected to reach, and did in fact reach, consumers and/or users, including Mrs. Uqdah, without substantial change in the condition in which they were manufactured and by Manufacturer Defendants and sold by Retailer Defendants.

187.     At all relevant times to this litigation, Defendants were aware that consumers and users of their Chemical Hair Relaxer Products, including Mrs. Uqdah, would use the products as marketed; therefore, Mrs. Uqdah was a foreseeable user of the Chemical Hair Relaxer Products.

188.     Defendants intended that their Chemical Hair Relaxer Products relaxers be used in the manner in which Mrs. Uqdah was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

189.    In reliance on Defendants' implied warranty, Mrs. Uqdah used the Chemical Hair Relaxer Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Manufacturer and Retailer Defendants.

190.    Mrs. Uqdah could not have reasonably discovered or known of the risks of serious injury associated with the Chemical Hair Relaxer Products.

191.    Defendants breached their implied warranty to Mrs. Uqdah in that the Chemical Hair Relaxer Products were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

192.    Defendants' Chemical Hair Relaxer Products have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Mrs. Uqdah sustained.

193.    The harm caused by Defendants' Chemical Hair Relaxer Products far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

194.    As a direct and proximate result of Defendants' wrongful acts and omissions Mrs. Uqdah has suffered severe and permanent physical and emotional injuries.

195.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT V
## LOSS OF CONSORTIUM
### (Emmanuel Bullock v. All Defendants)

196.    The Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

197.    As a result of the negligence detailed at length above of all the above-named Defendants, their agents, servants, employees and agents ostensible or direct set forth herein, Plaintiff Emmanuel Bullock suffered the loss of services, society and comfort and companionship of his wife, Karen Uqdah.

1.    As the result of the negligence of the above-named Defendants, Emmanuel Bullock claims the full measure of damages allowable under Pennsylvania law for the loss of consortium of his wife, Karen Uqdah.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____

SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:  October 17, 2024

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

## **VERIFICATION**

I, Karen Uqdah, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: __10/17/2024__

_____
Karen Uqdah, Plaintiff

## VERIFICATION

I, Emmanuel Bullock, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: 10/17/2024

Emmanuel Bullock, Plaintiff

Case ID: 241002269
Case ID: 241002269
Control No.: 24112022

**GOLDBERG SEGALLA LLP**
**BY:  JOSEPH J. WELTER, ESQUIRE**
**ATTORNEY ID NO. 307885**
**BY:  ROBERT J. HAFNER, ESQUIRE**
**ATTORNEY ID NO. 44105**
**BY:  STEPHEN A. SHEINEN, ESQUIRE**
**ATTORNEY ID. NO. 61993**
**BY: NICOLE CASPERS, ESQUIRE**
**ATTORNEY ID NO. 335320**
**1700 Market Street, Suite 1418**
**Philadelphia, PA 19103-3907**
**T: 267.519.6800/F:267.519.6801**
**EMAIL:**       jwelter@goldbergsegalla.com
              rhafner@goldbergsegalla.com
              ssheinen@goldbergsegalla.com
              ncaspers@goldbergsegalla.com

Attorneys for Defendant
AFAM Concept, Inc. (incorrectly
pled as AFAM Concept, Inc.
d/b/a JF Labs, Inc.)

| | | |
|---|---|---|
| KAREN UQDAH | : | COURT OF COMMON PLEAS |
| | : | |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| Vs. | : | OCTOBER TERM, 2024 |
| | : | |
| L'OREAL USA, INC, et al. | : | |
| | : | |
| Defendants. | : | NO. 2269 |
| | : | |

**PRELIMINARY OBJECTIONS OF DEFENDANT AFAM CONCEPT, INC.**
**(INCORRECTLY IDENTIFIED AS AFAM CONCEPT, INC. d/b/a JF LABS, INC.)**
**TO PLAINTIFF KAREN UQDAH'S COMPLAINT**

# <u>EXHIBIT "B"</u>



**User Name:** Joseph Welter
**Date and Time:** Monday, August 26, 2024 2:19:00PM EDT
**Job Number:** 232013544

## Document (1)

1. _L'Oréal USA, Inc. v. Burroughs, 372 Ga. App. 30_
   **Client/Matter:** 00000

Case ID: 241002269
Control No.: 24112022


Cited
As of: August 26, 2024 6:19 PM Z

# L'Oréal USA, Inc. v. Burroughs

Court of Appeals of Georgia

June 21, 2024, Decided

A24A0313. A24A0314.

**Reporter**

372 Ga. App. 30 *; 2024 Ga. App. LEXIS 250 **; 2024 WL 3082347

L'ORÉAL USA, INC. et al. v. **BURROUGHS**. STRENGTH OF NATURE GLOBAL, LLC v. **BURROUGHS**.

**Subsequent History:** Cert. applied for.

**Prior History:** Product liability, etc. Chatham State Court. Before Judge White.

**Disposition:** Judgment affirmed in part and reversed in part, and case remanded with instructions.

## Core Terms

statute of repose, products, manufacturer, trial court, motion to dismiss, fraud claim, allegations, preempted, punctuation, repose, misrepresentation, labeling, *hair*, federal law, first sale, relaxer, warn, chemical, strict liability, ten years, preemption, triggered, negligence claim, consumer, cosmetic, disease, statute of limitations, manufacturing defect, trial court's order, definite statement

## Case Summary

### Overview

HOLDINGS: [1]-The trial court erred in concluding that the statute of repose did not bar the consumer's products liability claim because it improperly concluded that each application of the *hair* relaxer constituted exposure to a new product, which was contrary to the language of *O.C.G.A. § 51-1-11(b)(2)*, which indicated that the repose period begins with the "first sale"; [2]-The consumer's negligence claim survived under the exception in the *§ 51-1-11(c)*, for claims arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect.

### Outcome

Judgment affirmed in part, reversed in part, and remanded with instructions.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

*HN1* [⬇] Standards of Review, De Novo Review

An appellate court reviews a trial court's ruling on a motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. The appellate court construes the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor.

Governments > Legislation > Statute of Repose

Torts > Procedural Matters > Statute of Repose > Personal Injury

Torts > Procedural Matters > Statute of Repose > Products Liability

Joseph Welter

Case ID: 241002269
Control No.: 24112022

372 Ga. App. 30, *30; 2024 Ga. App. LEXIS 250, **250

Governments > Legislation > Statute of Limitations > Time Limitations

*HN2*[🔻] **Legislation, Statute of Repose**

For product liability claims, Georgia's statute of repose states that no action shall be commenced with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury. *O.C.G.A. § 51-1-11(b)(2)*. Subsection (c) extends the statute of repose to negligence claims against manufacturers, subject to certain exceptions.

Governments > Legislation > Statute of Repose

Torts > Procedural Matters > Statute of Repose > Personal Injury

Torts > Procedural Matters > Statute of Repose > Products Liability

Torts > Products Liability > Theories of Liability > Strict Liability

Governments > Legislation > Statute of Limitations > Time Limitations

*HN3*[🔻] **Legislation, Statute of Repose**

Under Georgia's statute of repose, strict liability actions filed more than ten years after the date of the first sale for use or consumption of the product are completely barred. Indeed the statute of repose may extinguish a cause of action before it even accrues or destroy a previously existing right of action so that it no longer exists. If applicable, a statute of repose stands as an unyielding barrier to a plaintiff's right of action.

Torts > Procedural Matters > Statute of Repose > Products Liability

*HN4*[🔻] **Statute of Repose, Products Liability**

*O.C.G.A. § 51-1-11* does not reference application/use of the product, but rather first sale for use or consumption. *O.C.G.A. § 51-1-11(b)(2)*.

Torts > Procedural Matters > Statute of

Repose > Products Liability

*HN5*[🔻] **Statute of Repose, Products Liability**

It is the last sale of a finished product (containing multiple component parts) to the consumer that is the relevant sale — versus any inter-manufacturer sales of the component parts to other manufacturers who would assemble the product.

Governments > Legislation > Statute of Repose

Torts > Procedural Matters > Statute of Repose > Tolling of Statutory Period

Governments > Legislation > Statute of Limitations > Time Limitations

*HN6*[🔻] **Legislation, Statute of Repose**

Unlike a statute of limitations, a statute of repose is not triggered by the injury. A statute of repose limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered.

Governments > Legislation > Statute of Repose

Torts > Procedural Matters > Statute of Repose > Tolling of Statutory Period

Governments > Legislation > Statute of Limitations > Time Limitations

*HN7*[🔻] **Legislation, Statute of Repose**

A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. A statute of repose stands as an unyielding barrier to a plaintiff's right of action.

Governments > Courts > Judicial Precedent

*HN8*[🔻] **Courts, Judicial Precedent**

Federal district court opinions are not binding on the Court of Appeals of Georgia.

Case ID: 241002269
Control No.: 24112022

Governments > Legislation > Interpretation

*HN9*[⬇] **Legislation, Interpretation**

When an appellate court considers the meaning of a statute, it must presume that the General Assembly meant what it said and said what it meant. And, it is no more the court's function to revise by subtraction than by addition. If possible, every word and every provision is to be given effect. None should needlessly be given an interpretation that causes it to duplicate another provision or have no consequence.

Torts > Products Liability > Theories of Liability > Negligence

Torts > Procedural Matters > Statute of Repose > Products Liability

*HN10*[⬇] **Theories of Liability, Negligence**

The statute of repose also applies to actions claiming negligence of a manufacturer as the basis of liability except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer. *O.C.G.A. § 51-1-11(c)*.

Governments > Legislation > Statute of Repose

Torts > Products Liability > Types of Defects > Manufacturing Defects

Torts > Procedural Matters > Statute of Repose > Products Liability

Torts > Procedural Matters > Statute of Repose > Personal Injury

Torts > Products Liability > Theories of Liability > Negligence

*HN11*[⬇] **Legislation, Statute of Repose**

The intent of the exception to the statute of repose

allowing claims arising out of the negligence of a manufacturer in manufacturing products which cause a disease or birth defect is to afford relief to plaintiffs whose claims are based on certain types of injury the latent effects of which may not be manifest for many years. Accordingly, *O.C.G.A. § 51-1-11*, contemplates a manufacturer's liability outside of the products-liability statute of repose for such negligence that results in a product causing disease or birth defect.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Estoppel

Governments > Legislation > Statute of Limitations > Equitable Estoppel

Contracts Law > ... > Affirmative Defenses > Statute of Limitations > Equitable Estoppel

Torts > ... > Statute of Limitations > Tolling > Equitable Estoppel

Governments > Legislation > Statute of Repose

*HN12*[⬇] **Affirmative Defenses, Estoppel**

Although it is well settled that a statute of repose cannot be tolled, there are narrow circumstances in which a defendant may be equitably estopped from raising the statute of repose as a defense. Particularly, if evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the trier of fact to exist, then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of ultimate repose. In order for this to apply, however, a plaintiff must show fraud by offering evidence of a known failure to reveal negligence.

Antitrust & Trade Law > Consumer Protection > Deceptive Labeling & Packaging > Federal Food, Drug & Cosmetic Act

Constitutional Law > Supremacy Clause > Federal Preemption

*HN13*[⬇] **Deceptive Labeling & Packaging, Federal Food, Drug & Cosmetic Act**

The FDCA contains an express preemption provision,

Case ID: 241002269
Control No.: 24112022

372 Ga. App. 30, *30; 2024 Ga. App. LEXIS 250, **250

21 U.S.C.S. § 379s(a), stating that the federal law preempts any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter.

Civil Procedure > ... > Federal & State Interrelationships > Federal Common Law > Preemption

Constitutional Law > Supremacy Clause > Federal Preemption

**HN14**[⬇] **Federal Common Law, Preemption**

State law is naturally preempted to the extent of any conflict with a federal statute and courts will find preemption where it is impossible for a private party to comply with both state and federal law, and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Further, state law claims that are preempted by federal law are properly dismissed.

Constitutional Law > Supremacy Clause > Federal Preemption

**HN15**[⬇] **Supremacy Clause, Federal Preemption**

The Supreme Court of Georgia has distinguished misrepresentation claims from inadequate warning claims in assessing the preemptive effect of FDA regulations.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Defects of Form

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

**HN16**[⬇] **Defenses, Demurrers & Objections, Defects of Form**

The proper remedy to address deficiencies in pleading is a motion for a more definite statement, not a dismissal of the complaint or judgment on the pleadings,

at least so long as the plaintiff is able and willing to amend her pleadings to conform to the statutory requirements.

## Headnotes/Summary

### Headnotes

Georgia Advance Headnotes

**GA(1)**[⬇] (1)

  Torts.  > Procedure.  > Statutes of Repose.

The trial court's reference to the "last sale of the property as new" as being the sale which triggered the commencement of the statute of repose was misplaced because the language of OCGA § 51-1-11 (b) (2), indicated that the repose period begins with the "first sale."

**GA(2)**[⬇] (2)

  Torts.  > Procedure.  > Statutes of Repose.

The consumer's negligence claim survived under the exception in OCGA § 51-1-11 (c), for claims arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect.

**Counsel:** *Gordon Rees Scully Mansukhani, Leslie K. Eason, Ellis George, Cipollone O'Brien, Dennis S. Ellis, Katherine F. Murray, Nicholas J. Begakis*, for appellants (case no. A24A0313).

*Gilbert Harrell Sumerford & Martin, Mark D. Johnson; Arnold & Porter Kaye Scholer, Lori B. Leskin, Rhonda R. Trotter, Leah A. Schultz*, for appellant (case no. A24A0314).

*The Summerville Firm, Darren Summerville, Elizabeth C. Stone; Bullock Ward Mason, Tina M. Bullock, Danielle W. Mason; Bey & Associates, N. John Bey*, for appellee.

**Judges:**  [**1] GOBEIL, Judge. Barnes, P. J., and Pipkin, J., concur.

Case ID: 241002269
Control No.: 24112022

**Opinion by:** GOBEIL

# Opinion

[*30]  GOBEIL, Judge.

In these related appeals, L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson, LLC, and SoftSheen-Carson (W. I.), Inc. (collectively referred to as "L'Oreal"), and Strength of Nature Global, LLC ("SON") (and together, "Appellants"), appeal from the trial court's order denying Appellants' motions to dismiss Kiara **Burroughs**'s complaint asserting claims for products liability, negligence, and fraud. Appellants present two primary issues for appeal: (1) Does Georgia's ten-year statute of repose for products liability actions (*OCGA § 51-1-11 (b) (2)*) preclude **Burroughs**'s strict liability and/or negligence claims, when she first purchased the products allegedly causing injury more than ten years before filing her action, but claims to have purchased new containers of the same products within ten years of filing her action?; and (2) Are **Burroughs**'s fraud claims preempted by federal law? For the reasons set forth below, we affirm in part, reverse in part, and remand the case to the trial court for further proceedings not inconsistent with this opinion.

*HN1*[⬆] We review the trial court's ruling on a motion to dismiss de novo, and a motion [**2] to dismiss should not be granted "unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in [*31] support thereof." *Golden v. Floyd Healthcare Mgmt., 368 Ga. App. 409, 410 (890 SE2d 288) (2023)* (citation and punctuation omitted). "We construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." Id. (citation and punctuation omitted).

So viewed, the record in this case shows that **Burroughs** began using chemical **hair** relaxers at the age of six, and she used them continuously until she was 25 years old in 2014. During that time period, she purchased and used products from L'Oreal, SON, and Namaste Laboratories, LLC ("Namaste"). As described in her amended complaint, she began using SON products in 1995, and used them through 2014. She used L'Oreal and Namaste products from 2003 through 2014. She alleged that her last purchase of a chemical **hair** relaxer product was in 2014. In 2018, **Burroughs** was diagnosed with uterine fibroids, which have caused her significant health problems in the years since. In

October 2022, a scientific study was released finding an association between chemical **hair** relaxers and [**3] uterine cancers. Publicity surrounding the study alerted **Burroughs** to the possibility that she may have been harmed by her use of chemical **hair** relaxers.

On October 27, 2022, **Burroughs** filed her original complaint against L'Oreal, SON, and Namaste ("Defendants"). In broad terms, she alleged that endocrine-disrupting chemicals (including phthalates) found in Defendants' products are harmful and known to adversely impact the reproductive system. She alleged that uterine fibroids "are associated with phthalate metabolites found in chemical **hair** straightening and **hair** relaxer products" and that uterine fibroids are more common among Black women, who are more likely to use chemical **hair** relaxing products than women of other races. As relevant here, her original complaint raised claims of strict liability (failure to warn), strict liability (design and/or manufacturing defect), negligence (failure to warn), negligence (design and/or manufacturing defect), general negligence, negligent misrepresentation, fraud, and fraudulent concealment.[1]

Defendants all filed motions to dismiss. Namaste's motion focused on the specificity of **Burroughs**'s allegations, arguing that she had not identified specific [**4] Namaste products she had used that allegedly caused her injuries. L'Oreal and SON also were concerned about specificity (and L'Oreal specifically moved in the alternative for a more definite statement on **Burroughs**'s fraud claims), but they [*32] argued further that many of **Burroughs**'s claims were barred by the statute of limitation and the statute of repose. L'Oreal argued additionally that **Burroughs**'s negligent misrepresentation and fraud claims were preempted by the *Federal Food, Drug, and Cosmetic Act* ("FDCA") and its labeling requirements.

On the day Defendants' motions to dismiss were to be argued, **Burroughs** filed an amended complaint. The amended complaint added specificity about which products from each Defendant **Burroughs** had used, and the chemicals found in these products she alleges caused injury. She also significantly amended her claims, listing a total of 34 counts. Broadly, she asserted five categories of claims against each Defendant: (1) strict liability — failure to warn (Counts 1-7); (2) strict

_____

1 **Burroughs**'s original complaint included other claims that she later omitted in her amended complaint, so we do not discuss them here.

liability — design/manufacturing defect (Counts 8-13[2]); (3) negligence — negligent failure to warn (Counts 14-20); (4) general negligence (Counts 21-27); and (5) fraud — fraudulent **[**5]** misrepresentation (Counts 28-34).

Finding that the amended complaint satisfied its concerns, Namaste orally withdrew its motion to dismiss. Appellants, however, wished to proceed on their legal arguments concerning the statute of repose, statute of limitation, preemption, and fraud. After the hearing, the trial court denied Appellants' motions to dismiss. Relevant to the issues on appeal, the trial court ruled that ***Burroughs***'s claims were timely filed under the statute of repose. As for the product liability claims, the court found that "[e]ach application of ***hair*** relaxer constituted exposure to a new product, with her last use occurring in 2014." The trial court noted that it was "the last sale of the property as new" that triggered the statute of repose, or potentially even the date of ***Burroughs***'s injury. And as for the negligence claims, the court found that an exception in the statute of repose allowed for failure-to-warn claims outside the ten-year repose period.

The trial court also ruled that ***Burroughs***'s fraud claims were not preempted by federal law and were sufficiently pled to survive a motion to dismiss. Further, the court found that ***Burroughs***'s fraud claims "additionally **[**6]** toll the … statute of repose … ." This appeal followed.[3]

There are two primary issues raised by Appellants. First, both L'Oreal and SON argue that the trial court erred in concluding that **[*33]** the statute of repose did not bar ***Burroughs***'s products liability and general negligence claims. Second, L'Oreal (alone) contends that ***Burroughs***'s fraud claims are preempted by federal statutes. (However, in its reply brief, SON also makes this argument.)

1. *Statute of Repose*

(a) *Strict Liability and "First Sale"*

---

[2] The counts are misnumbered at this point in the amended complaint, but this misnumbering appears to be a mere scrivener's error and does not affect the substance of any of the claims.

[3] Appellants obtained certificates of immediate review from the trial court, and we granted Appellants' applications for interlocutory appeal. See Case Nos. A23I0259, A23I0264 (July 10, 2023).

**HN2**[⬆] In Georgia,

[t]he manufacturer of any personal property sold as new directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

*OCGA § 51-1-11 (b) (1)*. For product liability claims, Georgia's statute of repose states that no action "shall be commenced … with respect to an injury after ten years from the date of the first sale for use or consumption **[**7]** of the personal property causing or otherwise bringing about the injury." *OCGA § 51-1-11 (b) (2)*. *Subsection (c)* extends the statute of repose to negligence claims against manufacturers, subject to certain exceptions (discussed in more detail below). "The purpose of *OCGA § 51-1-11 (b) (2)* was to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting." *Johnson v. Ford Motor Co., 281 Ga. App. 166, 168 (637 SE2d 202) (2006)* (citation and punctuation omitted), overruled on other grounds by *Campbell v. Altec Indus., 288 Ga. 535 (707 SE2d 48) (2011)*.

**HN3**[⬆] As the Supreme Court of Georgia has explained, under Georgia's statute of repose, "strict liability actions filed more than ten years after the date of the first sale for use or consumption of the product are completely barred." *Chrysler Corp. v. Batten, 264 Ga. 723, 725 (2) (450 SE2d 208) (1994)* (citation and punctuation omitted). Indeed the statute of repose may extinguish a cause of action before it even accrues or destroy a previously existing right of action so that it no longer exists. See *PTI Royston v. Eubanks, 360 Ga. App. 263, 267-268 (1) (861 SE2d 115) (2021)*. If applicable, "[a] statute of repose stands as an unyielding barrier to a plaintiff's right of action." Id.

Appellants assert that the trial court's conclusions regarding the statute of repose are erroneous and include either misunderstandings or misstatements of law. They argue that, because ***Burroughs*** does **[**8]** **[*34]** not contest that she first began purchasing and using their products in 1995 (SON) and 2003 (L'Oreal), the statute of repose began running in those years, and lapsed in 2005 and 2013, respectively,

Case ID: 241002269
Control No.: 24112022

many years before she brought this action in 2022. Appellants contend that the statute does not support a reading that each container of a product constitutes a new "first sale," but that it is a plaintiff's first purchase of a product she might purchase many times later that triggers the commencement of the statute of repose.

First, we agree with Appellants that the trial court's reasoning is flawed.[4] The trial court's first conclusion that "[e]ach application of **hair** relaxer constituted exposure to a new product" is not grounded in the statute. **HN4**[⬆] The statute does not reference application/use of the product, but rather "first *sale* for use or consumption." *OCGA § 51-1-11 (b) (2)* (emphasis supplied). See also *Davis v. Brunswick Corp., 854 FSupp. 1574, 1584 (II) (B) (N.D. Ga. 1993)*, overruled in part on other grounds by *Lewis v. Brunswick Corp., 107 F3d 1494 (11th Cir. 1997)* (applying Georgia's statute of repose to claims of injury from allegedly defective boat design; when boat was picked up or registered by consumer was irrelevant because the date of sale, although not definitively established, was early enough that the statute of repose **[**9]** had run before plaintiff filed lawsuit).

**GA(1)**[⬆] ] (1) The trial court's reference to the "last sale of the property as new" as being the "sale which triggers the commencement of the statute of repose" and its reliance on *Campbell, 288 Ga. at 535*, is misplaced. **HN5**[⬆] ] In *Campbell*, we held that it is the "last sale" of a finished product (containing multiple component parts) to the consumer that is the relevant sale — versus any inter-manufacturer sales of the component parts to other manufacturers who would assemble the product. *Id. at 538*. Thus, *Campbell* does not support the trial court's conclusion that it is the last of multiple sales of the same, finished product to one consumer that triggers the statute of repose.

Finally, the trial court's conclusion that the statute of repose could "also potentially run from the date of [**Burroughs**'s] injury in 2018" is a misstatement of law. **HN6**[⬆] ] Unlike a statute of limitation, a statute of repose is not triggered by the injury. See *Wright v. Robinson, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993)* ("A statute of repose … limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have **[*35]** occurred,

much less have been discovered.") (citation and punctuation omitted); *Golden, 368 Ga. App. at 418 (3) (a)* **HN7**[⬆] ] ("A statute of ultimate repose delineates **[**10]** a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. A statute of repose stands as an unyielding barrier to a plaintiff's right of action.") (citation and punctuation omitted). Accordingly, we agree with Appellants that the trial court's order does not support its denial of Appellants' motions to dismiss.

Outside of the reasons stated in the trial court's order, however, we still could affirm the trial court's denial of Appellants' motions to dismiss if it is right for any reason — so long as the legal basis for affirmance is "apparent from the record [and] was fairly presented in the court below." *Bailey v. Hall, 267 Ga. App. 222, 223 n. 1 (599 SE2d 226) (2004)*. That said, we do not find a compelling reason to do so in this case.

Both Appellants rely on *PTI Royston, 360 Ga. App. at 263*, and we are persuaded by the reading of the statute set forth in that case. *PTI Royston* involved claims arising from the use of baby powder containing talc. *Id. at 263*. The plaintiff had used talc-containing baby powder manufactured by the defendant since 2005, and was diagnosed with ovarian cancer in 2016. *Id. at 263-264*. In 2019, she brought strict liability claims against the defendant for failure to warn, manufacturing defect, and design defect. *Id. at 264*. The defendant moved to dismiss **[**11]** the action, asserting that the ten-year statute of repose set forth in *OCGA § 51-1-11 (b) (2)* barred her claims. Id. The trial court denied the motion to dismiss, finding that the statute of limitation set out in the *Asbestos Claims and Silica Claims Act* (the "Asbestos Act") barred the application of the general tort statute of repose. Id.

We reversed the trial court's judgment, ultimately holding that nothing in the *Asbestos Act* override the statute of repose. *PTI Royston, 360 Ga. App. at 266-271 (1)*. Accordingly, the statute of repose applied to claims arising from asbestos exposure. Id. However, we remanded the case to allow the trial court to determine in the first instance whether the defendant could be equitably estopped from raising the statute of repose as a defense based on fraud. *Id. at 271-272 (2)*.

L'Oreal argues that our holding in *PTI Royston* assumes that, if not for the estoppel issue remaining open for the trial court, the ten-year statute of repose otherwise would have barred the plaintiff's claims — because the plaintiff admitted that the "first sale" of the defendant's

---

[4] We also note that **Burroughs** appears to make no effort to defend the reasoning set forth in the trial court's order. She instead notes that the court's order may be affirmed if right for any reason.

Case ID: 241002269
Control No.: 24112022

talc-containing product occurred in 2005 and she did not [*36] file her lawsuit until 2019.[5] Although we did not explicitly find that the plaintiff's claims were barred by the statute of repose in [**12] *PTI Royston*, we agree that our holdings implicitly rely upon that conclusion (given the facts of that case). If the plaintiff's subsequent purchase of the defendant's products in later years (up through 2016) reset the statute of repose, there would have been no need to consider its application with the *Asbestos Act* because she would have been well within ten years from her last purchase of a product. Further, there would have been no need to remand the case to the trial court to consider equitable estoppel: if the plaintiff's repose had been reset by her last purchase in 2016, she would not have to prove fraud to the trial court because the 2019 lawsuit would have been timely.

We also addressed this argument in footnote 3, where we noted that the parties disagreed about when the *Asbestos Act*'s statute of limitation began to run. *PTI Royston, 360 Ga. App. at 264 n. 3*. However, we ultimately chose not to answer the question because, "if the statute of repose applies" (which we found that it did), the plaintiff's claims would be barred by the statute of repose under any of her statute-of-limitation dates, because she first purchased the defendant's product in 2005, and she did not file her complaint until 2019. Id. This language [**13] lends support to finding that our Court in *PTI Royston* did not believe that plaintiff's subsequent purchases of the talc-containing product reset the statute of repose period.[6]

_____

[5] Although not necessarily at issue in *PTI Royston*, we note that there were no allegations in that case that the formulation of the defendant's products had changed during the time period in which the plaintiff purchased the products — or that the product had, for instance, become contaminated. Similarly, there are no such allegations in the instant case.

[6] We acknowledge that an Illinois federal district court, applying Georgia law, found that the statute of repose began to run at the plaintiff's last consumption of a drug. *Paulsen v. Abbott Laboratories, 563 FSupp.3d 787, 791 (III) (A) (1) (N.D. III. 2021)*. HN8[↑] However, at the outset, federal district court opinions are not binding on this Court. *Walker County v. Tri-State Crematory, 292 Ga. App. 411, 415 (1) n. 4 (664 SE2d 788) (2008)*. Further, in *Paulsen*, the plaintiff's product liability action was not brought until more than ten years after her last consumption of the drug, so there was no need for the court to consider the question now before us: Had her action been brought more than ten years from her first purchase of the drug, but less than ten years from her most recent purchase of

Further, now considering the question explicitly in this case, such assumption from *PTI Royston* is logical given the statutory context and other precedent surrounding our statute of repose. **Burroughs** construes *OCGA § 51-1-11 (b) (2)* as resetting the statute of repose every time the consumer purchases a new container of product. She points to the end of the provision, ten years from the date of the first sale of the "property causing or otherwise bringing [*37] about the injury." *OCGA § 51-1-11 (b) (2)*. She argues that each sale of the product "as new" begins a new repose period, and it ultimately becomes a question of causation — the plaintiff has to prove that it was a bottle purchased within the repose period that caused the injury. According to **Burroughs**, even if that causation question is difficult to prove, it would be sufficient to survive a motion to dismiss.

We disagree, however, and find that the statute supports Appellants' interpretation that it was **Burroughs**'s first purchase of the allegedly injurious products in 1995 and 2003, respectively, that triggered the repose [**14] period in this case. First, the statute indeed uses the words "first sale" to indicate when the repose period begins to run, and Defendants' first sale of the allegedly injury-causing products to **Burroughs** was in 1995 (SON) and 2003 (L'Oreal and Namaste). See *Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013)* HN9[↑] ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant.") (citation and punctuation omitted). And had the General Assembly intended the trigger to be "any sale (of the product as new)" versus the "first sale," it could have so stated. Further, if we were to construe the statute in the manner advanced by **Burroughs**, it would render "first" mere surplusage. And, it is "no more the court's function to revise by subtraction than by addition." See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (1st ed. 2012) ("If possible, every word and every provision is to be given effect. … None should needlessly be given an interpretation that causes it to duplicate another provision or have no consequence."); *Kennedy v. Carlton, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014)* (statutes are to be construed to "avoid[ ] a statutory construction that will render some of the statutory language mere [**15] surplusage"). Finally, the "personal property causing or otherwise bringing about

_____

the drug, would her claim be barred? Thus, the issue was not squarely before the court in *Paulsen*, and we do not find it persuasive here.

Case ID: 241002269
Control No.: 24112022

the injury" in this case are the *hair* relaxer products sold by Defendants. *Burroughs* made no allegations that the products changed in formulation, composition, or otherwise during the time in which she purchased and used various containers of the products. She also made no allegations that the containers of the products purchased within ten years of the filing of her complaint are the ones that caused her injury. Our analysis might be quite different had she made such allegations, but she did not. And, under the statute and our prior discussion of the statute of repose, we are compelled to conclude that *Burroughs*'s strict-liability claims were due to be dismissed because she "cannot introduce evidence within the framework of [her] complaint to show" that she can bypass the statute of repose. *Villa Sonoma at Perimeter Summit Condo. Assn. v. [*38] Commercial Indus. Bldg. Owners Alliance, 349 Ga. App. 666, 666 (824 SE2d 738) (2019).* Accordingly, we reverse the trial court's judgment in part to the extent it denied Appellants' motions to dismiss *Burroughs*'s strict liability — design/manufacturing defect claims.

(b) *Negligence*

*Burroughs* argues that, even if her strict liability claims are barred by the statute of repose, her *GA(2)*[⬆] (2) negligence **[**16]** claims survive under exceptions listed in the statute. We agree.

*HN10*[⬆] The statute of repose also applies to actions claiming negligence of a manufacturer as the basis of liability

except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

*OCGA § 51-1-11 (c).*

The parties do not dispute that the final sentence in this statute applies to *Burroughs*'s negligent failure-to-warn claims (Counts 14-20), and thus the trial court correctly denied the motions to dismiss as they pertained to the counts (and the order is affirmed to this extent). *Chrysler Corp., 264 Ga. at 727 (4)* ("the legislature carefully excluded failure-to-warn causes of action from the statute of repose"). Indeed, in *Chrysler Corp.*, we addressed the potentially harsh consequences that

might result from the statute of repose in a case such as *Burroughs*'s, noting that this exception **[**17]**

reflects the legislature's recognition of the possibility that this duty [to warn] may not emerge until long after the statute of repose has extinguished any cause of action arising out of the product's sale; that the duty to warn arises once the danger becomes known reflects the existing case law with its actual or constructive knowledge standard.

*Id. at 727 (4).*

The parties disagree, however, concerning whether *Burroughs*'s general negligence claims (Counts 21-27) are excepted from the statute of repose. Appellants argue that the exception allowing claims "arising out of the negligence of such manufacturer in manufacturing **[*39]** products which cause a disease or birth defect" applies only to claims of negligence in the manufacturing process, as opposed to in the design, testing, or other parts of the product creation process.

The statutory text is not so limited, and our Supreme Court has described this exception broadly. See, e.g., *Chrysler Corp., 264 Ga. at 725 (2)* ("where the manufacturer's negligence resulted in a product causing disease or birth defect"); *Love v. Whirlpool Corp., 264 Ga. 701, 702 (1) (449 SE2d 602) (1994)* (describing the exception as allowing claims "in which it is alleged that the manufacturer's negligence resulted in a product causing disease or birth defect"). Given that this is **[**18]** the most natural and reasonable interpretation of the statute, that is the meaning we attribute to it. *Herrington v. State, 364 Ga. App. 186, 189 (2) (874 SE2d 389) (2022).* This interpretation of the statute is further supported by our holding in *Fletcher v. Water Applications Distribution Group, 333 Ga. App. 693 (773 SE2d 859) (2015),* reversed in part on other grounds by *Certainteed Corp. v. Fletcher, 300 Ga. 327 (794 SE2d 641) (2016).* In *Fletcher*, we noted that a negligent design defect claim (that we specifically held was not a negligent manufacturing claim) was "not barred by the statute of repose" because the plaintiff claimed "that she suffers from a disease allegedly caused by the [defendant's] negligence." *333 Ga. App. at 696 n. 1.*

*HN11*[⬆] Further, the Supreme Court has described that the intent of this exception "was to afford relief to plaintiffs whose claims are based on certain types of injury latent effects of which may not be manifest for many years." *Love, 264 Ga. at 704 (1).* Accordingly, we conclude that the statute contemplates a manufacturer's liability outside of the products-liability statute of repose

Case ID: 241002269
Control No.: 24112022

for such negligence that results in a product causing disease or birth defect. These are just the type of allegations made in this case. Thus, we affirm the trial court's order to the extent it denied Appellants' motions to dismiss **Burroughs**'s negligence claims.

(c) *Estoppel*

Finally, we address the trial court's finding that **Burroughs**'s claims **[\*\*19]** of fraud "toll[ ]" the statute of repose. *HN12*[⬆] "Although it is well settled that a statute of repose cannot be tolled, there are narrow circumstances in which a defendant may be equitably estopped from raising the statute of repose as a defense." *PTI Royston, 360 Ga. App. at 271 (2)* (citation and punctuation omitted). Particularly, if "evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the trier of fact to exist, then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of ultimate repose." *Id. at 272 (2)* (citation and punctuation omitted). **[\*40]** "In order for this to apply, however, a plaintiff must show fraud by offering evidence of a known failure to reveal negligence." *Smith v. Kayfan, 364 Ga. App. 651, 654-655 (874 SE2d 465) (2022)* (citation and punctuation omitted).

As described below in Division 2, **Burroughs** raised claims of fraudulent misrepresentation alleging that Defendants misrepresented that their products were safe and effective while knowing that they were not. Given our discussion below, the trial court must resolve this issue in the first instance on remand. See *PTI Royston, 360 Ga. App. at 271-272 (2)*.

2. Next, L'Oreal contends[7] that **Burroughs**'s fraud claims are preempted by federal law. **[\*\*20]** For the reasons that follow and parsing the specifics of **Burroughs**'s allegations, we agree in part and disagree in part. *HN13*[⬆] The *FDCA* contains an express preemption provision, *21 USC § 379s (a)*, stating that the federal law preempts "any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a

---

[7] SON argues that **Burroughs**'s fraud claims "were not properly before the [trial] court, in light of" **Burroughs**'s first amended complaint. In its reply brief, SON reiterates this statement, essentially adopts L'Oreal's argument as to preemption, and also argues that **Burroughs**'s fraud claims were not pleaded with the particularity necessary to survive a motion to dismiss.

requirement specifically applicable to a particular cosmetic or class of cosmetics under this *Act*." L'Oreal argues that **Burroughs**'s fraud claim (and her general negligence claim to the extent it alleges negligent misrepresentation) is alleging that L'Oreal was required to provide different information on its label than is required by the federal law — thus attempting to impose additional requirements for its label in violation of preemption principles.

*HN14*[⬆] As an initial matter, "state law is naturally preempted to the extent of any conflict with a federal statute" and courts "will find preemption where it is impossible for a private party to comply with both state and federal law, and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes **[\*\*21]** and objectives of Congress." *Crosby v. Nat. Foreign Trade Council, 530 U. S. 363, 372 (III) (120 SCt 2288, 147 LE2d 352) (2000)* (citations and punctuation omitted). Further, state law claims that are preempted by federal law are properly dismissed. See *Eason v. Marine Terminals Corp., 309 Ga. App. 669, 671 (1) (710 SE2d 867) (2011)*.

Here, we agree with **Burroughs** that her fraud claims are not limited simply to allegations of incomplete labeling or inaccurate statements of ingredients that would conflict with the *FDCA*. Rather, she alleges, at least in part, that Defendants have misrepresented **[\*41]** the use of their products as safe and effective through affirmative product claims. For example, **Burroughs** alleges that SON intentionally advertises its products as "Botanicals" with "Natural" ingredients that are "Ultra Nourishing" as a way to mislead consumers into believing its products are safe and effective. That these statements also appear on the product packaging does not automatically mean federal labeling requirements preempt her claims.

*HN15*[⬆] The Supreme Court of Georgia has distinguished misrepresentation claims from "inadequate warning" claims in assessing the preemptive effect of FDA regulations. In *Poloney v. Tambrands*, a case involving a tampon manufacturer's alleged failure to warn of the risks of toxic shock syndrome, the Court held that although the plaintiffs' **[\*\*22]** medical device product-liability failure-to-warn claims were preempted by the federal warning label requirements, it was "important to note" that the plaintiffs' misrepresentation claims were not preempted (although they were not sufficient to withstand summary judgment). *260 Ga. 850, 852 (1) (412 SE2d 526) (1991)*.

Case ID: 241002269
Control No.: 24112022

372 Ga. App. 30, *41; 2024 Ga. App. LEXIS 250, **22

Thus, to the extent *Burroughs*'s fraud claims are based on affirmative misrepresentations made by Defendants,[8] they are not preempted. See *Smith v. Hi-Tech Pharmaceuticals, 364 Ga. App. 476, 483-484 (1) (875 SE2d 454) (2022)* (plaintiff's misrepresentation claim based on packaging statement that the product was a "synergistic blend of potent herbal derivatives" was not preempted by *FDCA* because "plaintiff was not asking defendant to modify or enhance any aspect of its cosmetics labels that are required by federal law but rather claiming deception as a result of advertising statements" (quoting *Astiana v. Hain Celestial Group, 783 F3d 753, 757-758 (I) (9th Cir. 2015)*)).

And, also under *Smith*, to the extent *Burroughs* seeks to recover damages for Defendants' false or misleading labeling, such misrepresentation is also prohibited under the *FDCA*. Thus, to the extent *Burroughs* is not seeking to impose any different or additional [*42] requirement than that imposed by federal law, she avoids preemption. *364 Ga. App. at 484 (1)* (because plaintiff's "claims under the [state law] mirror the *FDCA* requirement that [**23] labels be truthful and not misleading, they escape express preemption"); *21 USC §§ 331 (a)* (prohibiting the "introduction into interstate commerce of any … cosmetic that is … misbranded"), *362 (a)* (cosmetic is misbranded if "its labeling is false or misleading in any particular"). Again, the federal preemption statute does not allow *Burroughs* to base her claims on labeling "omissions" that Appellants are not required to include under the *FDCA*, footnote 8, supra, but it does allow her state-law claims — as asserted — to survive insofar as they

mirror the requirements of the *FDCA*.[9]

Even though we conclude that *Burroughs*'s fraud claims are not entirely preempted by federal law, *Burroughs*'s allegations against L'Oreal still fail to adequately state a claim of fraud. Although *Burroughs* alleges generally that L'Oreal "fraudulently misrepresented the use of the Products as safe and effective," she includes no affirmative statements made by L'Oreal that are alleged to be false. At most, she alleged that some *hair* relaxer companies used photographs of girls on their packaging that did not actually use the products, but she does not even allege that L'Oreal engaged in this practice. Accordingly, the trial court [**24] erred in denying L'Oreal's "Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement" as to these claims. See *OCGA § 9-11-9 (b)* ("In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity."); *Osprey Cove Real Estate v. Towerview Constr., 343 Ga. App. 436, 441 (3) (808 SE2d 425) (2017)* (where complaint lacked "any allegation concerning a fraudulent statement by" defendant, complaint did not properly plead fraud claim). *HN16*[↑] However, "the proper remedy to address such deficiencies in pleading is a motion for a more definite statement, not a dismissal of the complaint or judgment on the pleadings, at least so long as the plaintiff is able and willing to amend [her] pleadings to conform to the statutory requirements." Id. (citation and punctuation omitted). We therefore reverse the trial court's judgment to the extent that it denied L'Oreal's alternative motion for a more definite statement that would require *Burroughs* to provide additional information to satisfy *OCGA § 9-11-9 (b)*'s requirement for particularity in fraud [*43] pleadings. On remand, the trial court must order a more definite statement from *Burroughs* to satisfy the pleading requirement.

*Burroughs*'s fraud claims against SON and Namaste do include allegations of affirmative misrepresentations [**25] on the packaging of those defendants' products. Thus, the trial court properly denied SON's motion to dismiss in this regard and that portion of the trial court's order is affirmed in part as described above.

---

[8] We do note the specificity of our holding in this case. We agree with L'Oreal that to the extent *Burroughs* seeks to use her fraud claims to allege that Defendants "intentionally failed to disclose the presence of" (as explained in her appellate brief) or "[k]nowingly made omissions" of (as alleged in the amended complaint) certain chemicals she alleges are harmful, those allegations are preempted by federal law, as she would be seeking to impose a requirement on a cosmetic manufacturer above and beyond what is required by federal law. And to the extent the trial court found that "nothing in the *FDCA* or other federal rules prohibits Defendants from disclosing the chemicals comprising the fragrance in their *hair* relaxer products to Plaintiff[,]" such finding is disapproved by this Court. Defendants are subject to the labeling requirement of the *FDCA*, and *Burroughs*'s state-law based fraud claim cannot seek to penalize Defendants for omitting information not required to be disclosed by federal law. Such a claim would run afoul of the preemption principles discussed herein. See *21 USC § 379s (a)*.

[9] The parties do not assert that the specific, affirmative claims at issue here bear the imprimatur of FDA or other federal regulatory agency approval. Accordingly, we do not consider whether any such assent might alter our conclusion concerning labeling or advertising claims.

372 Ga. App. 30, *43; 2024 Ga. App. LEXIS 250, **25

Accordingly, for all of the reasons stated herein, we affirm in part and reverse in part the trial court's judgment, and we remand this case to the trial court for further proceedings as described above.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes, P. J., and Pipkin, J., concur.*

---

**End of Document**

Case ID: 241002269
Control No.: 24112022

**GOLDBERG SEGALLA LLP**
**BY: JOSEPH J. WELTER, ESQUIRE**
**ATTORNEY ID NO. 307885**
**BY: ROBERT J. HAFNER, ESQUIRE**
**ATTORNEY ID NO. 44105**
**BY: STEPHEN A. SHEINEN, ESQUIRE**
**ATTORNEY ID. NO. 61993**
**BY: NICOLE CASPERS, ESQUIRE**
**ATTORNEY ID NO. 335320**
**1700 Market Street, Suite 1418**
**Philadelphia, PA 19103-3907**
**T: 267.519.6800/F:267.519.6801**
**EMAIL:**    jwelter@goldbergsegalla.com
            rhafner@goldbergsegalla.com
            ssheinen@goldbergsegalla.com
            ncaspers@goldbergsegalla.com

Attorneys for Defendant
AFAM Concept, Inc. (incorrectly
pled as AFAM Concept, Inc.
d/b/a JF Labs, Inc.)

| | | |
|---|---|---|
| KAREN UQDAH | : | COURT OF COMMON PLEAS |
| | : | |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| Vs. | : | OCTOBER TERM, 2024 |
| | : | |
| L'OREAL USA, INC, et al. | : | |
| | : | |
| Defendants. | : | NO. 2269 |
| | : | |

**PRELIMINARY OBJECTIONS OF DEFENDANT AFAM CONCEPT, INC.**
**(INCORRECTLY IDENTIFIED AS AFAM CONCEPT, INC. d/b/a JF LABS, INC.)**
**TO PLAINTIFF KAREN UQDAH'S COMPLAINT**

# EXHIBIT "C"

Case ID: 241002269
Control No.: 24112022

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JANITA HAYES, VANESSA PAGE, HASIN RAMADAN, LAPAGENT HOLTON, and SHARMAYNE SKELTON, MALIKA MARSHAL-RIAS, TRACCYE LOVE, SHANEETRA FERGUSON, SAMERREHA PRIDE, TAMEKA MCEWING, TENIKA CAMPELL | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |

2022-L-01132
2023-L-001824
2023-L-001934
2023-L-003274
2023-L-002603
2023-L-005963
2023-L-005958
2023-L-005959
2023-L-005953
2023-L-005962
2023-L-006390
2023-L-006448

v.                                  )  Hon. Patrick Stanton

L'OREAL USA, INC., L'OREAL USA PRODUCTS,   )  Calendar C
INC., SOFTSHEEN-CARSON LLC., SHOFTSHEEN-
CARSON (W.I.), INC., *et al.*

Defendants.

## <u>ORDER</u>

This matter comes on to be heard on Defendants L'Oreal USA, INC., L'Oreal USA

Products, Inc. and ShoftSheen-Carson (W.I.), Inc. ("L'Oreal"), Namaste Laboratories, LLC

("Namaste"), Luster Product's Inc. ("Luster"), Strength of Nature, LLC and Godrej SON

Holdings, Inc. (collectively "Strength of Nature") and Avlon Industries, Inc ("Avlon")[1]'s

motions to dismiss pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-619. After reviewing the

---

[1] Defendant AFAM Concept, Inc.("AFAM") has joined Avlon's Motion to Dismiss against Plaintiff Skelton.

1

Case ID: 241002269
Control No.: 24112022

memoranda on file, attached exhibits, oral argument, and the applicable law, the Court hereby

orders: the motions to dismiss are DENIED IN PART and GRANTED IN PART.

## FACTS

There are now pending before this Court thirty-nine actions against various manufacturers

and sellers of hair straightening products, which Plaintiffs allege have caused them injury.

Specifically, each Plaintiff alleges that Defendants' products contain certain endocrine disrupting

chemicals ("EDCs") and or phthalate-based products that cause or have been associated with

uterine cancer.  The Complaints further allege that the Defendants failed to disclose the existence

of these allegedly dangerous chemicals in their hair-straightening products, which, Plaintiffs

allege, were marketed to African American women and girls. The Complaints allege that these

allegedly dangerous chemicals were not explicitly disclosed on the labeling but instead were

hidden as fragrance ingredients.  These matters have consolidated for pretrial and discovery

purposes on this calendar.  The parties designated Plaintiffs Hayes, Page, Ramadan, and

Skelton's (collectively "Plaintiffs") cases as "bellwether" cases, for the limited purpose of

briefing common issues amongst all complaints, and this Court's ruling will apply to all other

complaints.

Plaintiff Janita Hayes ("Hayes") filed her lawsuit on December, 15 2022. Hayes is an

Alabama resident. Hayes used Defendants' products from approximately 1990-2022. In April

2020, Hayes was diagnosed uterine fibroids and underwent a hysterectomy. Defendants L'Oréal,

Namaste and Luster Products filed motions to dismiss against Hayes.

Plaintiff Vanessa Page ("Page") filed her lawsuit on February 21, 2023. Page is an Illinois

resident. Page used Defendants' products from approximately 1976-2014. In June 2015, Page

Case ID: 241002269
Control No.: 24112022

was diagnosed with endometrial cancer. Defendants L'Oréal, Namaste, and Luster Products filed motions to dismiss against Page.

Plaintiff Hasin Ramadan ("Ramadan") filed her lawsuit on February X, 2023. Ramadan is an Illinois resident. Ramadan used Defendants' products from approximately 1980-2019. In March 2020, Ramadan was diagnosed with uterine cancer. Defendants L'Oréal, Namaste, and Strength of Nature filed motions to dismiss against Ramadan.

Plaintiff Sharmayne Skelton "Skelton" filed her lawsuit on March 15, 2023. Skelton is a Michigan resident. Skelton used Defendants' products from approximately 1987-2022. In August 2022, Skelton was diagnosed with endometrial cancer and underwent a hysterectomy. Defendant Avlon filed a motion to dismiss against Skelton, which Defendant AFAM joined.

## LEGAL STANDARD

A motion to dismiss under section 2-615 attacks the legal sufficiency of a complaint based upon defects apparent on the face of the complaint. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. Illinois is a fact-pleading jurisdiction. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Thus, in order to withstand a 2-615 motion to dismiss, a complaint must contain sufficient averments of fact to state a cause of action. *Lester v. Chicago Park District*, 159 Ill.App.3d 1054, 1057 (1st Dist. 1987). "The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Bogenberger*, 2018 IL 120951, ¶ 23. In making this determination, the Court must take all well-pleaded facts in the complaint as true. *Id.* However, legal conclusions must be disregarded. *Safeway Ins. Co. v.*

Case ID: 241002269
Control No.: 24112022

*Daddono*, 334 Ill. App. 3d 215, 218 (1st Dist. 2002). Dismissal is only appropriate when "it is clear that a plaintiff cannot prove a set of facts that will entitle him to the relief sought." *Id.*

The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 367 (2003). Specifically, section 2-619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9). "Affirmative matter in a section 2-619 motion is something in the nature of a defense which negates the cause of action completely." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994). The moving party thus admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the plaintiff's claim. *Van Meter*, 207 Ill. 2d at 367. When a court rules on a section 2-619 motion to dismiss, it "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

## ANALYSIS

For the ten motions to dismiss before the Court, the Court has reached global rulings where applicable. A detailed reasoning for the issues of preemption, ICFA standing, and statue of repose is below. The 2-619 motions to dismiss based on preemption are GRANTED in part and DENIED in part. The 2-619 motions to dismiss based on ICFA standing are DENIED in part and GRANTED in part. The 2-619 motions to dismiss based on the statute of repose are DENIED.

For all other remaining issues raised, the Court will not address the specific pleading deficiencies given that Plaintiffs have represented to the Court that they will be filing amended complaints, in the form of a single "master" complaint which will be incorporated by each individual plaintiff into a short form complaint. Plaintiffs have represented to the court that the

4

Case ID: 241002269
Control No.: 24112022

some of the pleading deficiencies noted by the motions, e.g., the lack of specific allegations about which product or products each plaintiff used and when they used each product, will be cured.   In addition, during oral argument, counsels for both sides represented to the court that the issue of statute of limitations should be decided once short form pleadings were provided. On the remaining issues, the Court finds on a global basis Plaintiffs have failed to meet their fact pleading burden and Defendants' 2-615 motions are GRANTED without prejudice and Plaintiffs are given 28 days to replead.

First, the Court notes that in general, Plaintiffs failed to properly plead fraud and violations of the ICFA and, as such the claims will be dismissed pursuant to 735 ILCS 5/2-615. Generally, the Court would decline to reach issues raised under Section 2-619. However, in order to aid in the continued management of the case, and at the urging of the parties, the Court will address the preemption and standing arguments.

I.    <u>Preemption</u>

In their respective 2-619 motions to dismiss, Defendants L'Oréal, Namaste, Luster, and Strength of Nature argue that Plaintiffs Hayes, Page, Ramadan, and Skelton's claims are preempted by the Food, Drug, and Cosmetic Act ("FDCA"). During oral argument, Defendants' counsel conceded that the negligence-based product liability claims are not preempted.[2]  Thus, there remains only fraud and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) to be analyzed.

Defendants argue that Plaintiffs' claims are preempted by the FDCA. The FDCA expressly preempts any state law "requirement for labeling or packaging of a cosmetic that is different

---

[2] May 30, 2024 hearing, 15:6-19

Case ID: 241002269
Control No.: 24112022

from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. §379s(a). Defendants argue that state law claims are preempted by the FDCA where such claims impose labelling requirements not identical to those imposed by the FDCA and its regulations.

21 U.S.C. §379s(d) expressly exempts product liability claims under state law from preemption ("Nothing in this section shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State."). Plaintiffs urge this Court to follow United States District Judge Rowland's decision to assert that all of Plaintiffs' claims are claims under state product liability law and therefore not preempted. Plaintiffs point to Black's Law Dictionary which defines "products-liability actions" as "a lawsuit brought against a manufacture, seller, or lessor of a products—regardless of the substantive legal theory or theories on which the lawsuit is brought—for personal injury, death, or property damaged caused by the manufacture, construction, design, formulation, installation, preparation, or assembly of the product." Black's Law Dictionary (11th ed. 2019).

The Court declines to adopt this broad definition of products liability actions as it would render the express preemption provision of §379(a) largely meaningless, because virtually every food, drug or cosmetic regulated by the FDCA could be considered a product. If every claim relating to a FDCA regulated products was exempted from the express preemption because they were "products," then the preemption would be meaningless. As such, the Court finds that the product liability carve-out to the FDCA's preemption does not apply to Plaintiffs' fraud and ICFA claims.

Additionally, Plaintiffs argue that even if the Court does not categorize all of their claims as product liability claims under state law, these claims are not still subject to express preemption.

Case ID: 241002269
Control No.: 24112022

This is because Plaintiffs seek to impose liability on Defendants for conduct that is prohibited by both federal and state law. There are separate federal requirements concerning cosmetics that parallel Plaintiffs' claims for relief, including that federal law prohibits the of marketing "adulterated" cosmetics and the marketing of "misbranded" cosmetics. 21 U.S.C. §331.

With their fraud claims, Plaintiffs rely upon a fraud by omission theory. Plaintiffs claim that Defendants wrongfully evaded disclosing the existence in their products endocrine-disrupting chemicals when combined with a fragrance:

> [T]he regulations do not require the listing of the individual fragrance or flavor, or their specific ingredients, meaning phthalates evade listing when combined with a fragrance. As a result, consumers, including Plaintiff, are not able to determine from the ingredient declaration on the label if phthalates were present in a fragrance used in the herein referenced hair products used by the Plaintiff and placed into the stream of commerce by Defendants.

Hayes Second Am. Compl. ¶152. As conceded by Plaintiffs, the FDCA does not require manufacturers to identify fragrance ingredients on product labels. 21 C.F.R. §701.3(a). Thus, in order for Plaintiffs to prevail on these omission-based claims, Plaintiffs must allege and prove that Defendants had a duty to disclose the existence of these ingredients. To impose such a duty, this Court would need to find that state law imposed a different or additional requirement from that which is required by the FDCA. Unfortunately for Plaintiffs, this is the type of conflicting regulation 21 U.S.C. § 379s(a) is intended to prevent. See *Henning v. Luxury Brand Partners, LLC*, No. 22-cv-07011, 2023 U.S. Dist. LEXIS 89387, 2023 WL 3555998, at 5 (N.D. Cal. May 11, 2023) (state law claims premised on allegations that defendant failed to list benzene in dry shampoo products' ingredients list were preempted by the FDCA); *Barnes v. Unilever United States Inc.*, No. 21 C 6191, 2023 U.S. Dist. LEXIS 41196, 2023 WL 2456385, at 9 (N.D. Ill. Mar. 11, 2023) (deceptive practices claims based on alleged omissions were expressly

Case ID: 241002269
Control No.: 24112022

preempted). Accordingly, to the extent that Plaintiffs' claims rest on the omission of EDCs and phthalates in the ingredient list, the claims are preempted and dismissed.

But Plaintiffs also argue that their claims are not expressly preempted because Plaintiffs only seek to impose liability on Defendants for conduct that is prohibited by both federal and state law. There are separate federal requirements concerning cosmetics that parallel Plaintiffs' claims for relief, including that federal law prohibits the of marketing "adulterated" cosmetics and the marketing of "misbranded" cosmetics. 21 U.S.C. §331. Plaintiffs allege,

> With respect to the whether the product is properly labeled, Title 21 of the Code of Federal Regulations defines the establishment of warning statements related to cosmetic products. Section 740.1 states that '[t]he label of a cosmetic product shall bear a warning statement whenever necessary or appropriate to prevent a health hazard that may be associated with the product.' This warning directive directly correlates with the broad authority of manufactures over their own cosmetic products to ensure that products are safe under labeled or customary conditions of use, properly labeled, and not adulterated or misbranded under FDA laws."

Hayes Second Am. Compl. ¶182.

In a 2-619 motion to dismiss, it is a defendant's burden to prove its affirmative defense. Here, as the Court has noted, Plaintiffs intend to file amended complaints. The Court cannot find that Plaintiffs will not be able to assert claims under state law that parallel FDCA regulations requiring warnings against health hazards and the prohibitions regarding adulterated products. See *Bojko v. Pierre Fabre USA Inc.*, No. 22 C 6728, 2023 U.S. Dist. LEXIS 110443 (N.D. Ill. June 27, 2023).

II.    ICFA Standing

Defendants Namaste and L'Oréal argue that Plaintiff Hayes, an Alabama resident, does not have standing to bring an IFCA claim. Namaste relies on the Illinois Supreme Court's decision in *Avery v. State Farm Mut. Auto. Ins. Co.* which expressly decided that, "the General Assembly

8

Case ID: 241002269
Control No.: 24112022

did not intend the Consumer Fraud Act to apply to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.* 216 Ill. 2d 100, 185 (2005). *Avery* involved a class action suit where the plaintiffs represented a nearly nationwide class of State Farm insurance policyholders who asserted breach-of-contract claims. *Avery*, 216 Ill. 2d at 109. The court conducted an analysis to determine whether the transactions at issue took place inside or outside Illinois. *Id.* at 185. The court acknowledged that it can be difficult to identify the situs of a consumer transaction when parts of it occurred in more than one state, but the place of injury or deception is only one of the relevant circumstances. *Id.* The court cautioned that focusing solely on the place of injury or deception "can create questionable results." *Id.* at 186. The court held, "a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state." *Id.* However, "there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts." *Id.* at 187.

In deciding Namaste and L'Oréal's 2-619 motions to dismiss for lack of IFCA standing, the court must construe all allegations in the complaint in a light most favorable to the plaintiff and take all well-pleaded facts as true. Here, the facts before the court as alleged by Hayes are (1) Namaste has its principal place of business in Illinois and L'Oréal has its principal place of business in New York; Namaste and L'Oréal (2) developed, (3) tested, (4) assembled, (5) manufactured, (6) packaged, (7) labeled, (8) prepared, (9) distributed, and (10) marketed the hair care products; (11) Hayes resides in Alabama; (12) Hayes purchased the hair care product in Alabama; (13) Hayes was injured in Alabama.

Namaste argues the circumstances giving rise to the ICFA claim occurred primarily and substantially in Alabama because Hayes was a resident of Alabama at all times relevant to this

Case ID: 241002269
Control No.: 24112022

action, Hayes purchased and used the hair care products in Alabama, and she was diagnosed and treated in Alabama. While Plaintiff admits that she was injured in and deceived by Defendants in Alabama, she asserts the bulk of the circumstances that made up the fraudulent transactions occurred in Illinois.

In *Avery,* the court reasoned, "if, for example, the bulk of the circumstances that make up a fraudulent transaction occur within Illinois, and the only thing that occurs out-of-sate is the injury or deception, it seems to make little sense to say that the fraudulent transaction has occurred outside Illinois." *Id.* at 186. This is the exact scenario before the court for facts alleged against Namaste. Namaste's reply notes the *Avery* court held that a scheme to defraud emanating from State Farm's headquarters in Illinois was insufficient to create ICFA standing for out-of-state Plaintiffs. However, the court's reasoning specifically relied on the fact the only connection to Illinois was that State Farm's headquarters were there and all other factual circumstances in *Avery* took place in Louisiana. Here, it is only the injury or deception that took place in Alabama. When the Second Amended Complaint is read as a whole and in the light most favorable to Plaintiff, all of the other circumstances in the complaint before the court such as the development of the hair care product, manufacturing of the hair care product, marketing of the hair care product, etc., took place in Illinois. At this stage, Namaste has failed to meet its burden to prove that Plaintiff has not pleaded sufficient facts of the transaction occurring primarily and substantially within Illinois, and Hayes has standing under ICFA. Namaste's 2-619 motion to dismiss is denied.

L'Oréal similarly argues that Plaintiff has not alleged any facts linking her claims against L'Oréal to Illinois. Plaintiff alleged in her complaint that L'Oréal's principal place of business in New York. Plaintiff asserts there is no bright-line test and L'Oréal's products did not change

Case ID: 241002269
Control No.: 24112022

from state to state. L'Oréal concealed material facts form consumers nationwide and Plaintiff

should be allowed to bring a claim under ICFA. Given these allegations, even when the Second

Amended Complaint is read as a whole and in the light most favorable to Plaintiff, L'Oréal has

met its burden in establishing Plaintiff does not have standing under ICFA because she failed to

allege the transaction occurred primarily and substantially within Illinois. L'Oréal's 2-619

motion to dismiss is granted.

III.    Statute of Repose

Because many of the Plaintiffs have alleged use of Defendants' products over the course of many

years, Defendants have moved to dismiss the Second Amended Complaints based on the passage

of the Statute of Repose applicable to product liability actions. 735 ILCS 5/13-213(b).  The

relevant part of 735 ILCS 5/13-213(b) for the Court's analysis reads:

> no product liability action based on any theory or doctrine shall be commenced
> except within the applicable limitations period and, in any event, within 12 years
> from the date of first sale, lease or delivery of possession by a seller or 10 years
> from the date of first sale, lease or delivery of possession to its initial user,
> consumer, or other non-seller, whichever period expires earlier, of any product
> unit that is claimed to have injured or damaged the plaintiff, unless the defendant
> expressly has warranted or promised the product for a longer period and the action
> is brought within that period.

In interpreting a statue, courts must "ascertain and give effect to the intent of the legislature."

*Blum v. Koster,* 235 Ill.2d 21, 29 (2009). "The most reliable indicator of such intent is the

language of the statue, which is to be given its plain and ordinary meaning." *Id.* at 29. When

considering the plain meaning of the statute, "courts must consider the statute in its entirety,

keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it."

*Nelson v. Artley,* 2015 IL 118058, ¶24. The court is to presume that the legislature did not intend

"absurd, inconvenient, or unjust results" and thus a statute should not be interpreted in such a

11

Case ID: 241002269
Control No.: 24112022

way as to yield those results. *Id.* at 27. A statute will be deemed ambiguous where it is capable of being understood in two or more different ways. *Landis v. Marc Realty, L.L.C.*, 235 Ill.2d 1, 11 (2009). If the statue is ambiguous, the court may consider extrinsic aids of construction in its interpretation. *Id.* at 11. Our Supreme Court has held that common sense should be used when deciphering a statute such that the statute be given a "practical and common-sense construction." *Best Buy Stores, L.P. v. Dep't of Revenue*, 2020 IL App (1st) 191680, ¶15; *Nelson*, 2015 IL 118058, ¶29.

Defendants urge the Court to find that the statute of repose should be applied exclusively to the first time a Plaintiff purchased one of their products. In other words, if a Plaintiff alleges that she purchased and used a product of an on from 1980 to 2020, Defendants assert that the statute of repose would lapse in 1990, i.e., ten years after delivery to the initial user. The subsequent uses, they argue, would be irrelevant for purposes of the statute of repose.

But the statute defines "product" as "any tangible object or goods distributed in commerce" and "product unit" as "a single item or unit of a product." 735 ILCS 5/13-213(a)(2). Defendants' hair care products are a product as defined by the statue; it is a tangible object that is distributed in the stream of commerce. The statute says, "first sale...of a product unit." Plaintiffs' alleged continuous buying of Defendants' hair care products does not change the fact that each hair care product is a product individually entered into the stream of commerce. A plain reading of the statute with the relevant facts inserted states, "within 10 years from the date of first sale to Plaintiff of any hair care product claimed to have injured or damaged her."

Thus, it is clear that each time one of the Plaintiff purchased a hair care product, a new repose period began for the sale of that product because it was the "first sale" of **that product** to Plaintiff. In *Delnero v. Rego International, Inc.*, 155 Ill. App. 3d 702, 508 N.E.2d 291 (1st Dist.

Case ID: 241002269
Control No.: 24112022

1987), the court explicitly discussed this continuous use scenario, "[t]he statute of repose clearly

states that strict liability causes of action must be commenced within 10 years from the *first* sale,

lease, or delivery to the *initial* user. Clearly the legislature recognized that a product may be sold,

delivered, or leased more than once. The statute was intended to eliminate 'the fundamental

unfairness involved in imposing current legal and technical standards on products which were

introduced into the stream of commerce more than ten years prior to the commencement of a

given suit.'" (quoting *Thornton v. Mono Manufacturing Co.*, 99 Ill. App. 3d 722, 725 (2nd Dist.

1981). Here, Defendants each year entered new hair care products into the stream of commerce

that Plaintiffs purchased and used.

As Defendants' motions to dismiss have been granted without prejudice for Plaintiffs'

fraud claims, at this time the Court does not need to reach whether the statue of repose was tolled

for fraudulent concealment.

## **CONCLUSION**

For the foregoing reasons, and for any reasons supported by the record, Defendants' 2-619 and

2-615 motions to dismiss are DENIED IN PART and GRANTED IN PART without prejudice.

_____

Judge Patrick T. Stanton

ENTERED
Judge Patrick T. Stanton - 2184
AUG 28 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

13

Case ID: 241002269
Control No.: 24112022

Exhibit A-7

**LITCHFIELD CAVO LLP**
By: Anthony J. Calati, Esquire
    Suchi Vuu, Esquire
Attorney ID Nos.: 326536/323630
1515 Market Street, Suite 1220
Philadelphia, PA 19102
T. 215.557.0111
F. 215.557.3771
*calati@litchfieldcavo.com*
*vuu@litchfieldcavo.com*

*Attorney for Defendant,*
*Beauty Bell Enterprise d/b/a*
*House of Cheatham, Inc.*
*and House of Cheatham LLC*

Filed and Attested by the
Office of Judicial Records
12 NOV 2024 09:18 am
S. GILLIAM

| | |
|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK | COURT OF COMMON PLEAS PHIALDELPHIA COUNTY CIVIL DIVISION |
| Plaintiffs, | |
| v. | No. 241002269 |
| L'OREAL USA, INC., et. al., | |
| Defendants. | |

## ENTRY OF APPEARANCE

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter our appearance for Defendant, Beauty Bell Enterprise d/b/a

House of Cheatham, Inc. and House of Cheatham LLC in the above-referenced matter.


**LITCHFIELD CAVO LLP**


By: */s/ Anthony J. Calati*
   Anthony J. Calati, Esquire


By: _____
   Suchi Vuu, Esquire

Date: November 12, 2024

**LITCHFIELD CAVO LLP**
By:  Anthony J. Calati, Esquire
     Suchi Vuu, Esquire
Attorney ID Nos.:  326536/323630
1515 Market Street, Suite 1220
Philadelphia, PA  19102
T. 215.557.0111
F. 215.557.3771
*calati@litchfieldcavo.com*
*vuu@litchfieldcavo.com*

*Attorney for Defendant,*
*Defendant, Beauty Bell Enterprise d/b/a*
*House of Cheatham, Inc. and House of Cheatham,*
*LLC*

| | |
|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK | COURT OF COMMON PLEAS PHIALDELPHIA COUNTY CIVIL DIVISION |
| Plaintiffs, | |
| v. | No. 241002269 |
| L'OREAL USA, INC., et. al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Suchi Vuu, Esquire, certify that on this 12th day of November, 2024, a true and correct copy of my Entry of Appearance of Defendant, Defendant, Beauty Bell Enterprise d/b/a House of Cheatham, Inc. and House of Cheatham LLC was electronically filed and served via the Court's electronic notification system on all counsel of record.

**LITCHFIELD CAVO LLP**

By:  _____
     Suchi Vuu, Esquire

Dated:  November 12, 2024

# Exhibit A-8

**IN THE COURT OF COMMON PLEAS**
**OF PHILADELPHIA COUNTY, PENNSYLVANIA**

*Filed and Attested by the*
*Office of Judicial Records*
*12 NOV 2024 09:28 am*
*S. GILLIAM*

|  |  |  |
|---|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK, h/w, | : : : : | CIVIL DIVISION |
| Plaintiffs, | : : | No. 241002269 |
| v. | : : |  |
| L'OREAL USA, INC., et. al., | : : |  |
| Defendants. | : : |  |

---

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2024, upon consideration of the Preliminary Objections of Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, to the Complaint of Plaintiffs, Karen Uqdah and Emmanuel Bullock, and any response thereto, it is hereby **ORDERED** and **DECREED** that said Preliminary Objections are **SUSTAINED**; and it is **ORDERED** that all counts against Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, are hereby **DISMISSED**, with prejudice, in the above-captioned matter.

**BY THE COURT:**

_____
                                                    **J.**

**NOTICE TO PLEAD:**

**TO PLAINTIFFS: You are hereby notified to file a written response to the enclosed Preliminary Objections within twenty (20) days from service hereof or a judgment may be entered against you.**

By: _____

*Anthony J. Calati, Esquire*
*Suchi Vuu, Esquire*
*Attorneys for Defendant,*
*Beauty Bell Enterprise, d/b/a House of Cheatham,*
*Inc. and House of Cheatham, LLC*

**LITCHFIELD CAVO LLP**
By:  Anthony J. Calati, Esquire
        Suchi Vuu, Esquire
Attorney ID Nos.:  326536/323630
1515 Market Street, Suite 1220
Philadelphia, PA  19102
T. 215.557.0111
F. 215.557.3771
*calati@litchfieldcavo.com*
*vuu@litchfieldcavo.com*

*Attorneys for Defendant,*
*Beauty Bell Enterprise, d/b/a House of Cheatham, Inc.*
*and House of Cheatham, LLC*

| | |
|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL DIVISION |
| Plaintiffs, | |
| v. | No. 241002269 |
| L'OREAL USA, INC., et. al., | |
| Defendants. | |

### PRELIMINARY OBJECTIONS OF DEFENDANT, BEAUTY BELL ENTERPRISE, d/b/a HOUSE OF CHEATHAM, INC. AND HOUSE OF CHEATHAM, LLC TO THE <u>COMPLAINT OF PLAINTIFFS, KAREN UQDAH AND EMMANUEL BULLOCK</u>

**NOW COMES** the Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, and (hereinafter referred to as the "Beauty Bell"), only by and through its counsel, Litchfield Cavo LLP, and hereby files its Preliminary Objections to the Complaint of Plaintiffs, Karen Uqdah and Emmanuel Bullock, pursuant to the Pennsylvania Rules of Civil Procedure, and, in support thereof, avers as follows:

Case ID: 241002269
Control No.: 24112026

## I.    **FACTUAL BACKGROUND**

1.     Plaintiffs, Karen Uqdah and Emmanuel Bullock, commenced this product liability action by the filing a complaint on October 17, 2024, against 11 defendants, consisting of various manufacturers and a retailer.  Attached as Exhibit "A" is a true and correct copy of the Complaint, without adoption or admission.

2.     In Plaintiffs' five-count Complaint, Plaintiff Karen Uqdah asserts claims of (1) Strict Liability – Design Defect in Count I; (2) Strict Liability – Failure to Warn in Count II; (3) Negligence in Count III; and (4) Breach of Implied Warranties in Count IV, against Beauty Bell, among other Defendants.  *See* Ex. A.

3.     Plaintiff Emmanuel Bullock asserts a Loss of Consortium claim against all Defendants in Count V.  *See* Ex. A.

4.     The Complaint alleges that Plaintiff Karen Uqdah used different variations of Africa's Best and Affirm hair relaxers from Beauty Bell and Defendant House of Cheatham, LLC. Ex. A, ¶ 92, 93.[1]

5.     Plaintiff Karen Uqdah generally alleges she "has reason to believe" that Beauty Bell and Defendant House of Cheatham, LLC, developed, tested, assembled, marketed, manufactured, and sold "other brands of chemical relaxer products known to [Beauty Bell and Defendant House of Cheatham, LLC], but unknown to [Plaintiff], that contained endocrine disrupting chemicals."  Ex. A, ¶ 94.

6.     Plaintiff Karen Uqdah contends that she used 21 different variations of hair relaxers linked to 13 brands over the course of around 50 years, applying hair relaxers approximately every

---

[1] Plaintiff Karen Uqdah alleges she used different hair relaxer variations of the Affirm brand, which she claims was manufactured by Beauty Bell and Defendant House of Cheatham, LLC, in Paragraph No. 93, but then asserts that Defendant Avlon Industries, Inc., manufactured Affirm brand hair relaxers in Paragraph Nos. 33 and 99.

Case ID: 241002269
Control No.: 24112026

3 months at hair salons and at her home from 1968 through on or around 2018, associating these products with both the Manufacturer Defendants and "various retailers, including but not limited to Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant."[2]  Ex. A, ¶¶ 28-33, 79-103.

7.     According to the Complaint, Plaintiff Karen Uqdah, at the age of 58, was diagnosed with "endometrial adenocarcinoma, FIGO grade 2" sometime in December of 2016, and attributes her cancer to the use of hair relaxers.  Ex. A, ¶¶ 34, 131, 132.

8.     Out of the 21 different variations of hair relaxers referenced in the Complaint, Plaintiff Karen Uqdah fails to identify the actual hair relaxer products manufactured or sold by Defendants that caused her injuries, nor does she provide with specificity the time period or frequency of use of the hair relaxers within the 50 years she allegedly used same.

9.     Plaintiff Karen Uqdah also does not set forth which chemicals were present in any of the hair relaxer products ascribed by Plaintiff to Defendants or how much of the chemicals were in those products that she contends contributed to her alleged harm.

10.    Instead, the Complaint is saturated with impertinent factual assertions concerning the history of hair relaxer products and their marketing practices that are not relevant to Plaintiffs' causes of action by any named defendant.

## II.    LEGAL ARGUMENT

11.    As a general matter, the Pennsylvania Rules of Civil Procedure are to be liberally construed and applied.  *See* Pa. R. Civ. P. 126.

12.    Preliminary objections may be filed by any party to any pleading on grounds, including, but not limited to: lack of jurisdiction over the subject matter of the action or the person

---

[2] Plaintiff Karen Uqdah alleges she purchased multiple hair relaxer home kits from Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant, but only named Defendant The Giant Company, LLC, as a Retailer Defendant.

Case ID: 241002269
Control No.: 24112026

of the defendant, improper venue or improper form or service of a writ of summons or a complaint; failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter; insufficient specificity in a pleading; and legal insufficiency of a pleading (demurrer). Pa. R. Civ. P. 1028(a)(1) – (4).

13.     All preliminary objections shall be raised at one time, and they shall state specifically the grounds relied upon and may be inconsistent. Pa. R. Civ. P. 1028(b). Two or more preliminary objections may be raised in one pleading. *Id.*

14.     In considering a preliminary objection, the court should view all clearly pleaded material facts as true, as well as all reasonable inferences drawn therefrom. *Perelman v. Perelman*, 125 A.3d 1259, 1263 (Pa. Super. 2015) (citations omitted), *appeal denied*, 141 A.3d 435 (Pa. 2016). However, there is no requirement that the court accept the pleader's legal conclusions or averments of law when ruling on preliminary objections. *See Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238-39 (Pa. Super. 1992).

15.     "'Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right of relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.'" *Id.* (citations omitted). Accordingly, "to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Envirotest Partners v. Commonwealth, Dept. of Transp.*, 664 A.2d 208, 211 (Pa. Commw. Ct. 1995) (citations omitted).

### A.     Plaintiffs, Karen Uqdah and Emmanuel Bullock, have not established specific personal jurisdiction over Beauty Bell

16.     Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary

Case ID: 241002269
Control No.: 24112026

Objections as though set forth herein.

17.    Beauty Bell is not subject to specific personal jurisdiction in Pennsylvania.

18.    Generally, a challenge to personal jurisdiction, under Pennsylvania law, must be asserted by preliminary objection.  Pa. R. Civ. P. 1028(a)(1); *see also Zappala v. Brandolini Property Management, Inc.*, 589 Pa. 516, 909 A.2d 1272, 1282 (Pa. 2006) (observing that "defenses that must be raised by preliminary objection, including improper venue, personal jurisdiction, and improper service ... must be resolved at the very beginning of the case, before the court expends the time and energy to become deeply involved in the litigation").

19.    Pennsylvania courts recognize two statutory bases for exercising personal jurisdiction over a non-resident corporation: General or specific.

20.    Section 5301(a)(2) of the Judicial Code, 42 Pa. C.S. § 5301(a)(2), permits Pennsylvania courts to exercise general personal jurisdiction over a non-resident corporation if (1) the corporation qualifies as a foreign corporation under the laws of the Commonwealth; (2) the corporation consents to jurisdiction; or (3) the corporation carries on a continuous and systematic part of its business under the laws of the Commonwealth.  A court of this Commonwealth may exercise jurisdiction over a nonresident defendant under this provision if the defendant's activities in Pennsylvania are "continuous and substantial" even if the cause of action is not related to the defendant's activities in the state.  *Bork v. Mills*, 458 Pa. 228, 231–232, 329 A.2d 247, 249 (Pa. 1974); *Efford v. Jockey Club*, 796 A.2d 370, 373 (Pa. Super. 2002).

21.    This Court cannot exercise specific personal jurisdiction over Beauty Bell under Pennsylvania's long-arm statute.

22.    Section 5322 of the Judicial Code, 42 Pa. C.S. § 5322, known as the "long-arm statute," describes circumstances under which courts may exercise specific jurisdiction over a non-

Case ID: 241002269
Control No.: 24112026

resident. Specific jurisdiction "is focused upon the particular acts of the defendant that gave rise to the underlying cause of action." *Efford*, 796 A.2d at 373. Section 5322 provides for the exercise of jurisdiction when a non-resident's conduct falls within the terms of subsection (a). However, additionally, and co-extensively, subsection (b) requires that "our courts' exercise of jurisdiction under the Long Arm Statute conforms with federal Constitutional requirements of due process." *Derman v. Wilair Services, Inc.*, 404 Pa. Super. 136, 590 A.2d 317, petition for allowance of appeal denied, 529 Pa. 621, 600 A.2d 537 (1991). Subsection (b) provides:

> In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa. C.S. § 5322(b).

    23. Even where a party does have the minimum contacts necessary for the exercise of jurisdiction, which Beauty Bell does not, fair justice may not warrant accepting jurisdiction. *Kubik v. Letteri*, 532 Pa. 10, 18, 614 A.2d 1110, 1114 (Pa. 1992).

    24. Pennsylvania courts have repeatedly opined in addressing a defendant's challenge to personal jurisdiction that the burden is first on the defendant, as the moving party, to object to jurisdiction; once raised by a defendant, the burden of establishing personal jurisdiction under Pennsylvania's long arm statute is placed on the plaintiff asserting jurisdiction. *Biel v. Herman Lowenstein, Inc.*, 411 Pa. 559, 192 A.2d 391, 393 (Pa. June 4, 1963) ("It is only when the jurisdictional issue is properly raised that the burden of proof is upon the party asserting the jurisdiction."); *see also Frisch v. Alexson Equipment Corp.*, 423 Pa. 247, 224 A.2d 183, 187 (Pa. Nov. 15, 1966); *Schiavone v. Aveta*, 41 A.3d 861, 865 (Pa. Super. 2012), *aff'd per curiam*, 625 Pa. 349, 91 A.3d 1235 (Pa. 2014).

Case ID: 241002269
Control No.: 24112026

25.     Plaintiffs have the burden of proving jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Com. ex rel. Pappert v. KT&G Corp.*, 863 A.2d 1254, 1257 (Pa. Commw. Ct. 2004).

26.     Out of the 21 hair relaxers Plaintiff Karen Uqdah used during the 50 years she used same, she mentions 3 hair relaxers allegedly manufactured by Beauty Bell and Defendant, House of Cheatham, LLC, in addition to unidentified products of Beauty Bell and Defendant, House of Cheatham, LLC, failing to identify which product caused her injuries/losses.  Ex. A, ¶ 92-94.[3]

27.     In *Hammons*, the Supreme Court of Pennsylvania noted that the Supreme Court of the United States emphasized on the "underlying controversy" rather than the individual claims, opining that specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Hammons v. Ethicon, Inc.,* 662 Pa. 627, 663-64, 240 A.3d 537, 559 (Pa. 2020)*, quoting Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 919, 131 S.Ct. 2846 (internal alterations, citation, and quotation marks omitted).

28.     Upon consideration of the foregoing, Plaintiffs have not and cannot establish Pennsylvania's jurisdiction as it applies to Beauty Bell, as Plaintiff Karen Uqdah has failed to identify a single product attributable to Beauty Bell that gives rise to Plaintiffs' claims against Beauty Bell.

> **B.     All Counts against Beauty Bell (Counts I through V) in the Complaint should be dismissed, pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(3) and 1019, for insufficient specificity in a pleading**

29.     Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary

---

[3] Plaintiff Karen Uqdah alleges she used different hair relaxer variations of the Affirm brand, which she claims was manufactured by Beauty Bell and Defendant House of Cheatham, LLC, in Paragraph No. 93, but then asserts that Defendant Avlon Industries, Inc., manufactured Affirm brand hair relaxers in Paragraph Nos. 33 and 99.

Case ID: 241002269
Control No.: 24112026

Objections as though set forth herein.

30.     Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(3), a preliminary objection may be filed if a pleading is insufficiently specific.  Pa. R. Civ. P. 1028(a)(3).

31.     The Commonwealth of Pennsylvania is a fact-pleading jurisdiction.   Under Pennsylvania's system of fact pleading, the plaintiff bears the burden of defining the issues, and setting forth every act or performance essential to that end in the complaint.  *Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238 (Pa. Super. 1992).

32.     Further, pursuant to Pennsylvania Rule of Civil Procedure 1019(a), the material facts on which a cause of action or defense is based shall be stated in a concise and summary form.  Pa. R. Civ. P. 1019(a).

33.     The Pennsylvania Superior Court has underscored that:

'The purpose of (1019(a)) is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case.'  A complaint therefore must do more than 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'  It should formulate the issues by fully summarizing the material facts.  'Material facts' are 'ultimate facts,' i.e., those facts essential to support the claim.  .  .  .  Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts the plaintiff will eventually have to prove in order to recover, and (2) they are 'sufficiently specific so as to enable defendant to prepare his defense.'

*Baker v. Rangos*, 324 A.2d 498, 505-06 (Pa. Super 1974) (citations omitted).

34.     Rule 1019(f) further provides that "[a]verments of time, place and items of special damages shall be specifically stated."  Pa. R. Civ. P. 1019(f).

35.     Under these rules, a "shotgun approach to pleading," where the Complaint fails to "allege the nature or type of liability relied upon against each defendant" is "simply unacceptable." *Garland v. J.W.J.,* Nos. 05-S-285, 05-S-312, 2006 Pa. Dist. & Cnty. Dec. LEXIS 535, at *10-11 (C.P. June 9, 2006).

Case ID: 241002269
Control No.: 24112026

36.     Pleadings are to place the defendant on notice of the intended grounds for suit, and should not require the defendant to guess at their substance. *Schweikert v. St. Luke's Hosp. of Bethlehem*, 886 A.2d 265, 270 (Pa. Super. 2005).

37.     Here, Plaintiff Karen Uqdah has asserted in overly vague, unspecific and boilerplate allegations set forth in Counts I, II, III, and IV, which violate Rule 1028(a)(3) and Rule 1019, and must be resolved via preliminary objection.  Otherwise, Plaintiff may be permitted to amend the complaint after the expiration of the statute of limitations to assert new causes of action, in the guise of amplifying these amorphously pled claims.

38.     Pleadings are to place the defendant on notice of the intended grounds for suit, and should not require the defendant to guess at their substance. *Schweikert v. St. Luke's Hosp. of Bethlehem*, 886 A.2d 265, 270 (Pa. Super. 2005).

39.     At a minimum, a plaintiff "must set forth concisely the facts upon which his cause of action is based." *Line Lexington Lumber & Millwork Co., Inc. v. Pennsylvania Publ'g Corp.,* 301 A.2d 684, 688 (Pa. 1973).

40.     "[I]n determining whether a particular paragraph in a complaint has been stated with the necessary specificity, such paragraph must be read in context with all other allegations in that complaint." *Yacoub v. Lehigh Valley Med. Assocs., P.C.,* 805 A.2d 579, 589 (Pa. Super. 2002), *appeal denied*, 825 A.2d 639 (2003).

41.     The specificity requirement is not satisfied when a plaintiff pleads "catch-all allegations" against a defendant. *See e.g., Liquori v. Wind Gap Chiropractic Ctr.*, No. C0048-cv-2004-6159, 2005 WL 3947960, 75 Pa. D & C. 4th 106, 112 (Northampton Cnty CCP Mar. 22, 2005) (striking paragraphs 62(a) "failure to possess the degree of care and skill ordinarily exercised in similar cases by other chiropractors"; (b) "failure to exercise the requisite degree of care and

9

Case ID: 241002269
Control No.: 24112026

skill"; (c) "failure to possess the degree of knowledge and skill ordinarily possessed by other

chiropractors"; (d) "failure to perform the requisite standards of care under the circumstances",

and (o) "failure to exercise reasonable care in the diagnosis and treatment of counterclaim plaintiff"

of the counter claim on the ground that these allegations constitute "little more than boilerplate

language, meant as a catch-all provision"); *Latniak v. Von Koch*, No. 04-cv-2253, 2004 WL

3401754, 70 Pa. D. & C. 4th 489, 495-97 (Lackawanna Cnty. CCP 2004) (sustaining the motion to

strike paragraph 15(i) of plaintiffs' complaint – wherein plaintiffs asserted that the defendants

"otherwise failed to use due care under the circumstances" – on the ground that said subparagraph

constituted a "catch-all averment" that failed to provide the defendant with notice as to what claims

the plaintiffs were asserting against them, and "[t]he language of subparagraph 15(i) [gave] the

plaintiffs too much latitude to later amend the complaint and structure a claim against the

defendants without first providing notice of the allegedly wrongful acts"); *Boyd v. Somerset Hosp.*,

24 Pa. P. & C. 4th 564, 567-68 (Somerset Cnty CCP 1993) (granting defendant's motion to strike

certain subparagraphs of plaintiffs' complaint for insufficient specificity, because the challenged

subparagraphs contained nothing more than "catch-all" allegations of negligence and failed to

apprise the defendant of the conduct which the plaintiffs alleged to have been improper and/or

negligent).

  42. Phrases such as "inter alia," "including but not limited to," "among other things"

and "or otherwise" are improperly vague and general, because this language allows a plaintiff too

much latitude to later add allegations not previously plead to the detriment of the defendant, and

thus such language must be stricken "whenever [ ] appear[ing] in the complaint of a plaintiff."

*Kapas v. Martin*, No. 04-cv-5151, 2006 WL 4663417, 81 Pa. D & C. 4th 509, 520 (Lackawanna

Cnty. CCP June 6, 2006) (striking the language "including but not limited to" from the complaint

Case ID: 241002269
Control No.: 24112026

as insufficiently specific).  *See also Green v. Kline*, No. 2381-2010, 2010 WL 5647126, 16 Pa. D. & C. 144, 155- 56 (Monroe Cnty CCP Aug. 10, 2010) (striking allegations containing the phrases "or otherwise", "among other things", and "including those" as insufficiently specific).

43.     The Complaint violates the specificity requirements of Rules 1019(a) and 1019(f) because it fails to identify the products attributable to Beauty Bell that actually caused Plaintiff Karen Uqdah's alleged damages, the chemicals contained in the Beauty Bell products that Plaintiff claims caused her harm, and how many times she used the products during the 50 years she allegedly used relaxer products.

44.     Further, Plaintiff impermissibly uses vague, expansive language that does not put Beauty Bell on notice regarding the parameters of her claims, making it impossible for Beauty Bell to defend against allegations that do not sufficiently put it on notice of the facts and circumstances underlying Plaintiff's claims.

45.     In evaluating whether Plaintiff's allegations against Beauty Bell are sufficiently pled, the proper inquiry is whether the Complaint includes sufficient specifics to "inform[] the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *Ammlung v. City of Chester*, 302 A.2d 491, 498 n.36 (Pa. Super. 1973) (quoting 1 Goodrich-Amram § 1017(b)).

46.     The vague and nebulous averments asserted in the Complaint fail to meet the above standard and prejudice Beauty Bell in preparing a defense to Plaintiff's claims, because the specific conduct that Plaintiff asserts was improper on the part of Beauty Bell is unknown to Beauty Bell.

47.     Additionally, the broad and all-encompassing language of the allegations within the Complaint provide Plaintiffs too much latitude to later seek to amend the complaint to add claims against Beauty Bell without first providing notice to Beauty Bell of the allegedly wrongful acts.

Case ID: 241002269
Control No.: 24112026

48.    Where the reasons for dismissal of allegations within a complaint are clearly established, a court may strike a complaint or strike allegations within a complaint by way of preliminary objection.  *See Witherspoon v. City of Philadelphia*, 768 A.2d 1079, 1080, 1083 (Pa. 2001).

49.    Accordingly, all counts against Beauty Bell, wherein Plaintiff alleges general, vague and catch-all allegations against Beauty Bell that are overly vague and ambiguous on their face, in addition to Plaintiff Emmanuel Bullock's derivative Loss of Consortium claim in Count V, must be stricken for lack of specificity.

50.    Upon the consideration of the above, the Court should dismiss Plaintiffs' Complaint in its entirety, as it applies to Beauty Bell.

### C.    All Counts against Beauty Bell (Counts I through V) in the Complaint should be dismissed, pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(2) and 1019, for failure to conform to law

51.    Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary Objections as though set forth herein.

52.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2), a preliminary objection may be filed if a pleading fails to conform to Pennsylvania rules governing pleadings. Pa. R. Civ. P. 1028(a)(2).

53.    Rule 1019(a) requires that the "material facts on which a cause of action or defense is based shall be stated in concise and summary form."  Pa. R. Civ. P. 1019(a).

54.    "The purpose of Rule 1019(a) is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case."  *Landau v. W. Pa. Nat'l Bank*, 445 Pa. 217, 225 (1971); *see also Commonwealth v. Peoples Benefit Servs.*, 895 A.2d 683 (Pa. Commw. Ct. 2006).

12

Case ID: 241002269
Control No.: 24112026

55.     To comply with Rule 1019(a), a Complaint must be clear and legible to allow the defendant to understand the material facts of the Complaint and be able to prepare a defense. *Bennett v. Beard*, 919 A.2d 365, 367 (Pa. Commw. Ct. 2007).

56.     Rule 1022 provides that "[e]very pleading shall be divided into paragraphs numbered consecutively," and "[e]ach paragraph shall contain as far as practicable only one material allegation."  The test of compliance with Rule 1022 is the difficulty or impossibility in preparing an Answer to the Complaint. *General State Authority v. Sutter Corp.*, 24 Pa. Commw. 391, 394 (Pa. Commw. Ct. 1976).

57.     Under these rules, a "shotgun approach to pleading," where the Complaint fails to "allege the nature or type of liability relied upon against each defendant" is "simply unacceptable." *Garland v. J.W.J.*, Nos. 05-S-285, 05-S-312, 2006 Pa. Dist. & Cnty. Dec. LEXIS 535, at *10-11 (C.P. June 9, 2006).

58.     Plaintiffs' Complaint fails to comply with Rules 1019(a) and 1022, and, in doing so, it fails to apprise Beauty Bell of the nature of the allegations against it, to wit:  Plaintiff Karen Uqdah has named 11 different defendants in this matter, including different corporations and limited liability companies with no apparent relationship to one another. Ex. A, ¶¶ 2-15.  Some Defendants manufacture hair relaxer products, other(s) sell hair relaxer products, and some do neither. Ex. A, ¶¶ 19-21.  Yet, several of the allegations in the Complaint group "Defendants" together with no mention of their discrete roles.  *See e.g.*, Ex. A, ¶¶ 45, 48, 54 134.

59.     Beauty Bell cannot defend against the imprecise allegations set forth in the Complaint, as it does not disclose the "material facts" that Beauty Bell needs to prepare its case, including disclosure of which Beauty Bell products Plaintiff Karen Uqdah used that she alleges were defective or how Beauty Bell's alleged defective products proximately caused Plaintiff's

Case ID: 241002269
Control No.: 24112026

injury.

60.     By way of an example, in Paragraph No. 162 of the Complaint, Plaintiff Karen

Uqdah avers a multitude of material allegations regarding the alleged conduct of Defendants, in

violation of Rule 1022, stating:

> Defendants disseminated information that was inaccurate, false, and
> misleading and that failed to communicate accurately or adequately the
> comparative severity, duration, and extent of the risk of injuries associated
> with use and frequent use of the Chemical Hair Relaxer Products; and
> continued to promote the efficacy of the relaxers, even after they knew or
> should have known of the unreasonable risks from use; and concealed,
> downplayed, or otherwise suppressed, through aggressive marketing and
> promotion, any information or research about the risks and dangers of use of
> the relaxers.

61.     As pled, the Complaint fails to identify which of Beauty Bell's communications

she takes issue with, when they were made, or to what products they pertained.

62.     Moreover, by failing to make separate allegations against each Defendant, Plaintiff

fails to identify the nature or type of liability relied upon against each Defendant.

63.     These defects permeate the Complaint, rendering it fundamentally unanswerable.

64.     Additionally, Plaintiffs use boilerplate claims for punitive damages against

Defendants in their *ad damnum* clauses in their Complaint, demonstrating that their claims are

indiscriminate without any material facts to support them.  *Snead v. Society of Prevention of*

*Cruelty to Animals of Pennsylvania*, 929 A.2d 1169, 1184 (Pa. Super. 2007); *see also Valley*

*Forge Towers v. Ron-Ike Foam Insolutions, Inc*., 574 A.2d 641 (Pa. Super. 1990), affirmed, 605

A.2d 798 (Pa. 1992) (a plaintiff may not defeat preliminary objections with allegations lacking

material facts to support them).

65.     The allegations of the Complaint are insufficient to support claims for punitive

damages against Beauty Bell as they fail to describe any specific conduct attributable to Beauty Bell

14

that gives rise to the level of maliciousness, outrageousness or evil motive required for the recovery of punitive damages under Pennsylvania Law.

66.     Overall, the Complaint contains nothing more than vague and conclusory allegations to apprise Beauty Bell of the nature of Plaintiff Karen Uqdah's claims with sufficient specificity to enable Beauty Bell to pursue a defense against same.  Therefore, the Court should dismiss Plaintiffs' Complaint in its entirety, including Plaintiff Emmanuel Bullock's derivative Loss of Consortium claim in Count V.

> **D.     Plaintiff Karen Uqdah's strict liability claims in Count I and Count II against Beauty Bell in the Complaint should be dismissed, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), for legal insufficiency, <u>because Plaintiff fails to identify the product(s) that caused her injury</u>**

67.     Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary Objections as though set forth herein.

68.     Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection may be filed if a pleading is legally insufficient.  Pa. R. Civ. P. 1028(a)(4).

69.     "Preliminary objections in the nature of a demurrer test the legal insufficiency of the complaint.  When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Fiedler v. Spencer*, 231 A.3d 831, 835 (Pa. Super. 2020).  However, the court "need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion." *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. Ct. 1998), *petition for allowance of appeal denied*, 560 Pa. 677, 742 A.2d 173 (Pa. 1999).

70.     Although Plaintiff Karen Uqdah did not allege sufficient facts regarding which hair relaxer product(s) Plaintiff used, which relaxer products contained the alleged endocrine disrupting chemicals, and which of the named defendants produced the defective or dangerous product,

Case ID: 241002269
Control No.: 24112026

Plaintiff asserts product liability claims against Beauty Bell.

71.    To state a strict products liability claim, Pennsylvania law requires that an allegedly defective product be "causally connected to a compensable injury." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383-84 (Pa. 2014); *Spino v. John S. Tilley Ladder Co*., 696 A.2d 1169, 1172 (Pa. 1997) ("Pennsylvania law requires that a plaintiff prove two elements in a product liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.").

72.    The key inquiry in all products liability cases is whether or not there is a defect—it is the product, and not the defendant's conduct, that is on trial. *See, e.g., Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983 (Pa. Super. 2005), *affirmed*, 592 Pa. 38, 922 A.2d 890 (Pa. 2007).

73.    Plaintiff's "failure to identify the offending product [is] a fatal deficiency" to Plaintiff's claim for strict liability. *Cummins*, 495 A.2d at 968.

74.    Pennsylvania courts impose liability for physical harm caused to the user only upon that person who sold a product in a defective condition. A plaintiff must therefore at least designate the product alleged to be defective in order to recover from the one who sells it. *Id.* at 969.

75.    The Complaint cannot adequately aver the requisite connection between Beauty Bell and the alleged defective product, and cannot support a cause of action in strict liability. *Id.*

76.    To state a strict products liability claim, Pennsylvania law requires that an allegedly defective product be "causally connected to a compensable injury." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383-84 (Pa. 2014); *Spino v. John S. Tilley Ladder Co*., 696 A.2d 1169, 1172 (Pa. 1997) ("Pennsylvania law requires that a plaintiff prove two elements in a product liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.").

77.    Plaintiff listed 3 products she claims were manufactured by Beauty Bell and

Case ID: 241002269
Control No.: 24112026

Defendant, House of Cheatham, LLC, that she used from 1968 through 2018, without identifying whether any of the products she mentioned were defective, much less alleging a causal connection between any such product and Plaintiff's alleged injury.[4]

78.     Therefore, Plaintiff Karen Uqdah's strict liability claims in Counts I and II against Beauty Bell should be dismissed.

> **E.     Plaintiff Karen Uqdah's claims for Negligence in Count III and Breach of Implied Warranties in Count IV against Beauty Bell in the Complaint should be dismissed, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), for legal insufficiency, because Plaintiff fails to identify the product(s) that caused her injury and fails to establish the requisite duty <u>of Beauty Bell owed to Plaintiff</u>**

79.     Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary Objections as though set forth herein.

80.     Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection may be filed if a pleading is legally insufficient.  Pa. R. Civ. P. 1028(a)(4).

81.     Our Supreme Court has held that an implied warranty of fitness for a particular purpose is breached when a seller: (1) on whose skill and judgment a buyer relies, and (2) who has reason to know, at the time of contracting, (3) of a particular purpose for which the goods are required, (4) fails to provide goods that perform to the specific use contemplated by the buyer. *Gall v. Allegheny County Health Department*, 521 Pa. 68, 555 A.2d 786 (Pa. 1989).  Specifically, "[a] 'particular purpose' differs from an ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to his business."  UCC § 2–315 (1984).

82.     Further, to state a cause of action in negligence, Plaintiff must allege facts showing:

---

[4] Plaintiff Karen Uqdah alleges she used different hair relaxer variations of the Affirm brand, which she claims was manufactured by Beauty Bell and Defendant House of Cheatham, LLC, in Paragraph No. 93, but then asserts that Defendant Avlon Industries, Inc., manufactured Affirm brand hair relaxers in Paragraph Nos. 33 and 99.

Case ID: 241002269
Control No.: 24112026

"(1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff, (2) a failure by the defendant to so conform, [and] (3) a reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff[s]." *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 967 (Pa. Super. 1985).

83.    A negligence claim is appropriately dismissed where the plaintiff does not specifically allege the existence of a statutory or common law duty. *See Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) ("is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty "to conform to a certain standard of conduct;" that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage.") *Phillips v. Cricket Lighters*, 576 Pa. 644, 658, 841 A.2d 1000, 1008 (Pa. 2003).

84.    Plaintiff's cause of action in negligence must be defeated by her failure to identify a specific product and the resultant, causal connection between the conduct of Beauty Bell and her injuries. *Cummins*, 495 A.2d at 969.

85.    To establish negligence in the products liability context, Pennsylvania courts recognize the "general rule requiring identification of [the defendant,] as the manufacturer or seller of the particular offending product, before [the plaintiff's] injuries may be found to be proximately caused by some negligence." *Id.* at 967.

86.    Absent such identification, there can be no allegations of duty, breach of a duty, or legal causation, and hence there can be no liability. *Id.* at 967-68.

87.    Plaintiff "must therefore at least designate the product alleged to be defective in order to recover from the one who sells it," and Plaintiff's claims must be defeated by her failure to identify a specific product and the resultant, causal connection between the conduct of Beauty

Case ID: 241002269
Control No.: 24112026

Bell and her injuries. *Id*. at 969.

88.    Not once does the Complaint identify a single product of Beauty Bell product that caused Plaintiff's harm, much less the alleged causal connection between any such product and Plaintiff's diagnosis of cancer.

89.    To allow Plaintiff to circumvent the necessity to identify the offending product in her claims against Defendants would violate the traditional standards of sufficiency in pleading that calls for the nature of the liability of each defendant sued. *Id.* at 968.

90.    Plaintiff is unable to make a *prima facie* case for either negligence or breach of implied warranty, since Plaintiff cannot identify a single product of Beauty Bell that was used by Plaintiff that actually caused her harm,

91.    Therefore, Plaintiff Karen Uqdah's cause of action for negligence in Count III and implied breach of warranty in Count IV should be dismissed for legal insufficiency, pursuant to Rule 1028(a)(4).

> **F.    Count III and Count IV against Beauty Bell of the Complaint should be dismissed, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), for legal insufficiency, because federal rule preempts Plaintiff Karen Uqdah's non-products liability claims**

92.    Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary Objections as though set forth herein.

93.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection may be filed if a pleading is legally insufficient. Pa. R. Civ. P. 1028(a)(4).

94.    "Preliminary objections in the nature of a demurrer test the legal insufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Fiedler v. Spencer*, 231 A.3d 831, 835 (Pa. Super. 2020). However, the court "need not accept as true

Case ID: 241002269
Control No.: 24112026

conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion." *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. Ct. 1998), *petition for allowance of appeal denied*, 560 Pa. 677, 742 A.2d 173 (Pa. 1999).

95.    Plaintiff Karen Uqdah's non-products liability claims, including Plaintiff's claims for negligence (Count III) and breach of implied warranties (Count IV) are legally insufficient because they are expressly preempted by the Food Drug and Cosmetic Act ("FDCA") and Fair Packaging and Labeling Act ("FPLA").

96.    "The Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law." *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (citations omitted).

97.    The FDCA's "broad preemption clause" prohibits any state from "establish[ing] or continu[ing] in effect any requirement for labeling or packaging of a cosmetic that is *different from* or *in addition to*, or that is *otherwise not identical with*, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." *Critcher v. L'Oréal US, Inc.*, 959 F.3d 31, 35 (2d Cir. 2020); 21 U.S.C. § 379(a) (emphasis supplied). Thus, a plaintiff cannot seek to "impose labeling requirements that are additional to, or different from those that federal law has established." *Critcher*, 959 F.3d at 38.

98.    Congress conferred authority to the agency to promulgate rules and regulations under the FDCA, 21 U.S.C. section 371(a), and the FPLA, 15 U.S.C. section 1454(a). Under those regulations, manufacturers are not required to identify constituent fragrance ingredients. 21 C.F.R. § 701.3(a).

99.    As in *Critcher*, while the FDCA requires labels to contain an "accurate statement of the quantity of the [products'] contents in terms of weight, measure or numerical count," the FDA

Case ID: 241002269
Control No.: 24112026

promulgated more "specific labeling requirements" consistent with the statute, and no statute or regulation required Plaintiffs' desired disclosure. *Id.* at 35. Because the FDCA preempts "*any state law that provides for labeling requirements that are not exactly the same* as those set forth in the FDCA and its regulations," the claims were found to be preempted. *Id.* at 35-36 (emphasis added). The same is true here.

100. Plaintiff alleges that Defendants harmed her by failing to identify the constituent ingredients that compose the fragrance in their products. Ex. A, ¶¶ 61, 76. According to Plaintiff, "EDCs in the hair relaxers and other unknown chemicals" are "hidden under the ingredient title "fragrances"" in the product label. *Id.* at ¶ 76. Yet, FDA regulations do not require manufacturers to identify fragrance ingredients on product labels. 21 C.F.R. § 701.3(a), (1). Beauty Bell, therefore, cannot be liable for failing to disclose those ingredients.

101. Plaintiff is precluded from "us[ing] state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Critcher*, 959 F.3d at 36. Specifically, the FDCA provides that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise no identical with, a requirement specifically applicable to a particular cosmetic under this chapter." 21 U.S.C. § 379s(a).

102. For these reasons, Plaintiff Karen Uqdah's non-products liability claims in Count III and Count IV are preempted and should be dismissed.

### G. Count III and Count IV against Beauty Bell of the Complaint should be stricken, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), for legal insufficiency, because Pennsylvania does not recognize a claim for <u>negligent failure to test</u>

103. Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary

Case ID: 241002269
Control No.: 24112026

Objections as though set forth herein.

104.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection may be filed if a pleading is legally insufficient.  Pa. R. Civ. P. 1028(a)(4).

105.    Though Plaintiff Karen Uqdah alleges that Beauty Bell was negligent because it failed to sufficiently test its hair relaxers and their inert ingredients (Ex. A, ¶ 176(a)-(b), (h)), Pennsylvania courts do not recognize a claim for negligent failure to test." *Viguers v. Philip Morris USA, Inc.,* 837 A.2d 534, 541 (Pa. 2003), *affd,* 881 A.2d 1262 (2005) ("[T]he claim for 'negligent failure to test' is not a viable cause of action recognized by our courts, and we have found no 'duty to test' that would be the basis of such a claim.").

106.    Plaintiff Karen Uqdah, therefore, has no viable claim against Beauty Bell for failure to test at law.

107.    Accordingly, Counts III and IV against Beauty Bell should be dismissed for legal insufficiency.

### H.    Plaintiffs' claims for punitive damages against Beauty Bell should be stricken, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), for legal insufficiency

108.    Beauty Bell incorporates by reference the preceding paragraphs of these Preliminary Objections as though set forth herein.

109.    Pennsylvania "case law makes it clear that punitive damages are an 'extreme remedy' available in only the most exceptional matter." *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439, 445 (Pa. 2005).  Punitive damages are designed to "heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious." *Phillips, supra*, at 190, 883 A.2d at 446.

110.    When assessing the propriety of punitive damages, "the state of mind of the actor is

Case ID: 241002269
Control No.: 24112026

vital" and "[t]he act, or the failure to act, must be intentional, reckless or malicious." *Hutchison v. Luddy*, 582 Pa. 114, 123, 870 A.2d 766, 771 (Pa. 2005); *Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909, 929 (Pa. Super. 2011).

111.   In Pennsylvania, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [s]he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison, supra*, at 124, 870 A.2d at 772; *Daniel, supra*.

112.   Here, Plaintiffs' Complaint is devoid of any allegations of conduct by Beauty Bell to support a claim involving outrageous behavior or a conscious disregard for risks confronted by Plaintiffs to justify punitive damages.  The Complaint merely alleges that Beauty Bell failed to exercise reasonable care with respect to the manufacture of unidentified products of Beauty Bell.

113.   Absent some arguable proof of a subjective appreciation of Plaintiff Karen Uqdah's risk of harm and a conscious disregard of that risk by Beauty Bell, Plaintiffs have not identified a factual or legal basis to include a claim for punitive damages against Beauty Bell.

114.   Therefore, all allegations seeking punitive damages should be stricken throughout the Complaint.

**WHEREFORE**, Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, respectfully requests that this Honorable Court sustain its Preliminary Objections and enter the attached proposed Order, dismissing all claims of Plaintiffs, Karen Uqdah and Emmanuel Bullock, against Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, with prejudice.

Case ID: 241002269
Control No.: 24112026

Respectfully submitted,

**LITCHFIELD CAVO LLP**

Dated:  November 12, 2024                    By: _____
                                             Anthony J. Calati, Esquire
                                             Suchi Vuu, Esquire
                                             Identification Nos.: 326536/323630
                                             1515 Market Street, Suite 1220
                                             Philadelphia, PA 19102
                                             215-557-0111
                                             *Attorneys for Defendant,*
                                             *Beauty Bell Enterprise, d/b/a House of*
                                             *Cheatham, Inc. and House of Cheatham,*
                                             *LLC*

24

Case ID: 241002269
Control No.: 24112026

**LITCHFIELD CAVO LLP**
By:  Anthony J. Calati, Esquire
     Suchi Vuu, Esquire
Attorney ID Nos.:  326536/323630
1515 Market Street, Suite 1220
Philadelphia, PA  19102
T. 215.557.0111
F. 215.557.3771
*calati@litchfieldcavo.com*
*vuu@litchfieldcavo.com*

*Attorneys for Defendant,*
*Beauty Bell Enterprise, d/b/a House of Cheatham, Inc.*
*and House of Cheatham, LLC*

---

| | |
|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK,<br><br>               Plaintiffs,<br><br>        v.<br><br>L'OREAL USA, INC., et. al.,<br><br>           Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br>No. 241002269 |

---

### MEMORANDUM IN SUPPORT OF THE PRELIMINARY OBJECTIONS OF DEFENDANT, BEAUTY BELL ENTERPRISE, d/b/a HOUSE OF CHEATHAM, INC. AND HOUSE OF CHEATHAM, LLC TO THE COMPLAINT OF PLAINTIFFS, <u>KAREN UQDAH AND EMMANUEL BULLOCK</u>

**NOW COMES** the Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, and (hereinafter referred to herein as "Beauty Bell"), by and through its counsel, Litchfield Cavo LLP, hereby files the herein Memorandum of Law in support of their Preliminary Objections to the Complaint of Plaintiffs, Karen Uqdah and Emmanuel Bullock, and, in support thereof, avers as follows:

### I.    <u>MATTER BEFORE THE COURT</u>

The matter before the Court are the Preliminary Objections of Beauty Bell to the Complaint of Plaintiffs, Karen Uqdah and Emmanuel Bullock.

II.    **STATEMENT OF QUESTIONS PRESENTED**

**Question (1):**  Should this Court dismiss Plaintiffs' Complaint because Plaintiffs have not established specific personal jurisdiction over Beauty Bell, as Plaintiff Karen Uqdah failed to identify a single product giving rise to her claims against Beauty Bell?

**Suggested Answer (1):**  Yes.

**Question (2):**  Should this Court dismiss all Counts against Beauty Bell (Counts I through V) in the Complaint, pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(3) and 1019, for insufficient specificity, for failing to expressly identify the product(s) attributable to Beauty Bell that caused Plaintiff Karen Uqdah's alleged injuries, the chemicals contained in the unspecified product or products which caused her harm, and how many times and when she used the product or products during the 50 years she used hair relaxers?

**Suggested Answer (2):**  Yes.

**Question (3):**  Should this Court dismiss all Counts against Beauty Bell (Counts I through V) in the Complaint, including Plaintiff Emmanuel Bullock's derivative Loss of Consortium claim in Count V and Plaintiffs' claims for punitive damages, pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(2) and 1019, as Plaintiff Karen Uqdah failed to disclose which product of Beauty Bell is alleged to be defective, how this product was defective, or how this product caused Plaintiff's injury?

**Suggested Answer (3):**  Yes.

**Question (4):**  Should this Court dismiss Plaintiff Karen Uqdah's strict liability claims in Count I and Count II against Beauty Bell in the Complaint for legal insufficiency, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), because Plaintiff failed to identify the product or products of Beauty Bell that caused her alleged injury?

Case ID: 241002269
Control No.: 24112026

**Suggested Answer (4):** Yes.

**Question (5):** Should this Court dismiss Count III and Count IV against Beauty Bell in the Complaint for legal insufficiency, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), because Plaintiff Karen Uqdah failed to identify the product or products of Beauty Bell that allegedly caused her injury and failed to establish the requisite duty of Beauty Bell owed to Plaintiff?

**Suggested Answer (5):** Yes.

**Question (6):** Should this Court dismiss Count III and Count IV against Beauty Bell in the Complaint for legal insufficiency, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), because federal rule expressly preempts Plaintiff Karen Uqdah's non-products liability claims?

**Suggested Answer (6):** Yes.

**Question (7):** Should this Court dismiss Count III and Count IV against Beauty Bell in the Complaint for legal insufficiency, because Pennsylvania does not recognize a claim for negligent failure to test?

**Suggested Answer (7):** Yes.

**Question (8):** Should this Court strike all claims for punitive damages against Beauty Bell, pursuant to Rule 1028(a)(4), for legal insufficiency, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), when the Complaint does not demonstrate any conduct of Beauty Bell to support a claim involving outrageous behavior or conscious disregard for risks confronted by Plaintiffs to justify punitive damages?

**Suggested Answer (8):** Yes.

Case ID: 241002269
Control No.: 24112026

III.     **FACTUAL BACKGROUND**

In the interest of brevity, Beauty Bell repeats and incorporates the averments set forth in the Factual Background section of its Preliminary Objections to Plaintiffs' Complaint as if fully set forth herein at length.

IV.     **LEGAL ARGUMENT**

In the interest of brevity, Beauty Bell repeats and incorporates the averments set forth in its Argument section of its Preliminary Objections to Plaintiffs' Complaint as if fully set forth herein at length.

V.     **RELIEF REQUESTED**

Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, respectfully requests that this Honorable Court sustain its Preliminary Objections and enter the attached proposed Order, dismissing all claims of Plaintiffs, Karen Uqdah and Emmanuel Bullock, against Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, with prejudice.

Respectfully submitted,

**LITCHFIELD CAVO LLP**

Dated:  November 12, 2024          By: _____

Anthony J. Calati, Esquire
Suchi Vuu, Esquire
Identification Nos.: 326536/323630
1515 Market Street, Suite 1220
Philadelphia, PA 19102
215-557-0111
*Attorneys for Defendant,*
*Beauty Bell Enterprise, d/b/a*
*House of Cheatham, Inc. and House of*
*Cheatham, LLC*

Case ID: 241002269
Control No.: 24112026

**LITCHFIELD CAVO LLP**
By:  Anthony J. Calati, Esquire
　　 Suchi Vuu, Esquire
Attorney ID Nos.:  326536/323630
1515 Market Street, Suite 1220
Philadelphia, PA  19102
T. 215.557.0111
F. 215.557.3771
*calati@litchfieldcavo.com*
*vuu@litchfieldcavo.com*

*Attorneys for Defendant,*
*Beauty Bell Enterprise, d/b/a House of Cheatham, Inc.*
*and House of Cheatham, LLC*

| | |
|---|---|
| KAREN UQDAH and EMMANUEL BULLOCK,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>L'OREAL USA, INC., et. al.,<br><br>　　　　　　　　Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br>No. 241002269 |

## CERTIFICATE OF SERVICE

I, Suchi Vuu, Esquire, certify that on this 12th day of November, 2024, a true and correct copy of the Preliminary Objections of Defendant, Beauty Bell Enterprise, d/b/a House of Cheatham, Inc. and House of Cheatham, LLC, to the Complaint of Plaintiffs, Karen Uqdah and Emmanuel Bullock, in the above-captioned matter was electronically filed and served via the Court's electronic notification system on all counsel of record.

**LITCHFIELD CAVO LLP**

Dated:  November 12, 2024                By: _Suchi Vuu_
　　　　　　　　　　　　　　　　　　　　　　Suchi Vuu, Esquire

Case ID: 241002269
Control No.: 24112026

# EXHIBIT "A"

Case ID: 241002269
Control No.: 24112026

**KLINE & SPECTER** PC

ATTORNEYS AT LAW

1525 LOCUST STREET

PHILADELPHIA, PENNSYLVANIA 19102

WWW.KLINESPECTER.COM

SHERRELL L. DANDY                                                                                    SHERRELL.DANDY@KLINESPECTER.COM

215-792-5608

FAX: 215-402-2352

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 47 / 9590 9402 8751 3310 0833 99**

Beauty Bell Enterprise
647 Mimosa Blvd.
Roswell, GA 30075

     *Re:    Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

                    Very truly yours

                    Sherrell L. Dandy

SLD/cm
encls

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | **OCTOBER 2024** |
| | E-Filing Number: 2410041108 |
| | **02269** |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN UQDAH | L'ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| EMMANUEL BULLOCK | L'ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 2 | 11 | ☒ Complaint | ☐ Petition Action | ☐ Notice of Appeal |
| | | ☐ Writ of Summons | ☐ Transfer From Other Jurisdictions | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☒ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED**<br>**PRO PROTHY**<br>OCT **17** 2024<br>**L. BREWINGTON** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES        NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: KAREN UQDAH , EMMANUEL BULLOCK

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C.<br>1525 LOCUST STREET |

| PHONE NUMBER | FAX NUMBER | 19TH FLOOR |
|---|---|---|
| (215)772-1000 | none entered | PHILADELPHIA PA 19102 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 309348 | sherrell.dandy@klinespecter.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *SHERRELL DANDY* | Thursday, October 17, 2024, 04:07 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

<span style="color:red">Case ID: 241002269<br>Control No.: 24112026</span>

**COMPLETE LIST OF DEFENDANTS:**

1. L'ORÉAL USA, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
2. L'ORÉAL USA PRODUCTS, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
   10 HUDSON YARDS
   NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
   64 ROSS ROAD
   SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
   64 ROSS ROAD
   SAVANNAH GA 31405
6. BEAUTY BELL ENTERPRISE
   ALIAS: HOUSE OF CHEATHAM LLC
   647 MIMOSA BLVD.
   ROSWELL GA 30075
7. HOUSE OF CHEATHAM, LLC
   1445 ROCK MOUNTAIN BLVD
   STONE MOUNTAIN GA 30083
8. LUSTER PRODUCTS, INC.
   1104 WEST 43RD STREET
   CHICAGO IL 60609
9. AFAM CONCEPT, INC.
   ALIAS: JF LABS, INC.
   7401 S. PULASKI ROAD
   CHICAGO IL 60629
10. AVLON INDUSTRIES, INC.
    1999 NORTH 15TH STREET
    MELROSE PARK IL 60160
11. THE GIANT COMPANY, LLC
    1149 HARRISBURG PIKE
    CARLISLE PA 17013

Case ID: 241002269
Control No.: 24112026

**KLINE & SPECTER, P.C.**

By:  SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
    TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
    BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
    SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)

Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)

*Filed and Attested by the Office of Judicial Records 17 OCT 2024 04:41 pm E. BREWINGTON*

ATTORNEYS FOR PLAINTIFFS

---

KAREN UQDAH AND EMMANUEL
BULLOCK, H/W
1049 LAURELEE AVENUE
READING, PA 19605

                    *Plaintiffs*

            V.

L'ORÉAL USA, INC.
10 HUDSON YARDS
NEW YORK, NY 10017

AND

L'ORÉAL USA PRODUCTS, INC.
10 HUDSON YARDS
NEW YORK, NY 10001

AND

SOFT SHEEN-CARSON, LLC
10 HUDSON YARDS
NEW YORK, NY 10001

AND

STRENGTH OF NATURE, LLC
64 ROSS ROAD
SAVANNAH, GA 31405

AND

|  |
IN THE COURT OF COMMON PLEAS
*PHILADELPHIA* COUNTY,
PENNSYLVANIA

**JURY TRIAL DEMANDED**

---

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

BEAUTY BELL ENTERPRISE D/B/A
HOUSE OF CHEATHAM, INC. AND
HOUSE OF CHEATHAM LLC
647 MIMOSA BLVD
ROSWELL, GA 30075

AND

HOUSE OF CHEATHAM, LLC
1445 ROCK MOUNTAIN BLVD
STONE MOUNTAIN, GA 30083

AND

LUSTER PRODUCTS, INC.
1104 WEST 43RD STREET
CHICAGO, IL 60609

AND

AFAM CONCEPT, INC. D/B/A JF LABS,
INC.
7401 S. PULASKI ROAD
CHICAGO, IL 60629

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

THE GIANT COMPANY, LLC
1149 HARRISBURG PIKE
CARLISLE, PA 17013

*Defendants*

Case ID: 241002269
Control No.: 24112026

## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 241002269
Control No.: 24112026

## CIVIL ACTION – COMPLAINT

Plaintiffs, Karen Uqdah and Emmanuel Bullock, through their undersigned counsel, Kline & Specter, P.C., hereby demand damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.      Plaintiffs Karen Uqdah and Emmanuel Bullock are adult individual citizens and residents of Pennsylvania, residing therein at 1049 Laurelee Avenue, Reading, PA 19605.

2.      Defendant, L'Oréal USA, Inc., ("L'Oréal") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

3.      Defendant, L'Oréal USA Products, Inc., ("L'Oréal Products") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

4.      Defendant, SoftSheen-Carson, LLC, ("Softsheen") is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.      Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson, LLC, will be collectively referred to as "L'Oréal Defendants."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

6.      Defendant Strength of Nature, LLC, ("Strength of Nature") is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

7.      Defendant Godrej SON Holdings, Inc., ("Godrej") is, a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, GA. Upon information and belief, at all times relevant to this action, Godrej SON Holdings, Inc., has been the sole member and interested party of Strength of Nature, LLC.

8.      Defendants Strength of Nature, LLC and Godrej SON Holdings, Inc. will be collectively referred to as "Strength of Nature Defendants."

9.      Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. ("Beauty Bell") is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Blvd, Roswell, Georgia 30075. Upon information and belief, Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Gorgia.

10.     Defendant House of Cheatham, LLC, ("House of Cheatham") is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

11.     Defendants Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc and House of Cheatham, LLC, will be collectively referred to as "House of Cheatham Defendants."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

12.     Defendant Luster Products, Inc. ("Luster Products") is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd Street, Chicago, IL 60609.

13.     Defendant AFAM Concept, Inc. d/b/a JF Labs Inc. ("AFAM"), is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, IL 60629.

14.     Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

15.     Defendant The Giant Company, LLC a/k/a and/or d/b/a Giant is a corporation with its principal place of business and headquarters located at 1149 Harrisburg Pike, Carlisle, PA 17013. At all times relevant hereto, The Giant Company owned and/or operated Giant located at 2174 W Union Blvd, Bethlehem, PA 18018.

## JURISDICTION

16.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, House of Cheatham Defendants, Defendant Luster Products, Defendant AFAM Concept, and Defendant Avlon Industries (hereinafter "Manufacturer Defendants") contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Mrs. Uqdah purchased and applied to her hair, to various companies and stores within the

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

Commonwealth of Pennsylvania, including but not limited to Defendant The Giant Company, LLC (hereinafter "Retailer Defendant").

20.     At all times relevant hereto, Manufacturer Defendants engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to be sold by Retailer Defendant.

21.     At all times relevant hereto, Retailer Defendant conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and merchandise, including Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm (hereinafter "Chemical Hair Relaxer Products") in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including the Chemical Hair Relaxer Products, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.     At all times relevant hereto, Manufacturer Defendants had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.     Additionally, Manufacturer Defendants' presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, Manufacturer Defendants consented to the exercise of

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.    A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

25.    Upon information and belief, at all relevant times, Manufacturer Defendants sold their products in Philadelphia County and regularly conducts business in Philadelphia County.

26.    Upon information and belief, at all relevant times, The Giant Company LLC, has and continues to regularly conduct business in Philadelphia County through the operation of their nine Philadelphia retail locations.

27.    The damages Plaintiffs seek, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiffs seek more than $50,000 in damages.

### **FACTUAL BACKGROUND**

28.    At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

      a.    Dark & Lovely

      b.    Optimum

      c.    Bantu; and,

      d.    Mizani.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

29.    At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

      a.      African Pride

      b.      Dr. Miracle's

      c.      Gentle Treatment

      d.      TCB; and,

      e.      Ultra Sheen.

30.    At all times material hereto, House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Africa's Best brand that Mrs. Uqdah used to chemically straighten her hair.

31.    At all times material hereto, Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Luster's Pink Oil brand that Mrs. Uqdah used to chemically straighten her hair.

32.    At all times material hereto, Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Hawaiian Silky brand that Mrs. Uqdah used to chemically straighten her hair.

33.    At all times material hereto, Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

specifically marketed to black women, including but not limited to the Affirm brand that Mrs. Uqdah used to chemically straighten her hair.

34.     Mrs. Uqdah developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

35.     Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

36.     This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

37.     Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau. The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

38.     In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool. The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

39.     In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse. Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

40. In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

41. Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

42. The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

43. The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

44. For first-time application, the relaxer cream is placed on the hair from the root to the end. After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

45. Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026



46.    In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

47.    In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 241002269
Control No.: 24112026



48.      For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

49.      In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child. Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Page **13** of **41**

Case ID: 241002269
Control No.: 24112026

50.    Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

51.    Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



52.    It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

53.    The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:

 

Case ID: 241002269
Control No.: 24112026





54.    Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

## ENDOCRINE DISRUPTING CHEMICALS

55.    Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

56.    These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

57.    EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

58.    This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

59.    A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

60.    Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

### Phthalates

61.    Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

62.    Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

63.    Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

64.     Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible. Testing of chemical hair relaxers found the presence of DEHP.

65.     In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

66.     Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

### Parabens

67.     Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

68.     Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

69.     A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

70.     In February of 2012, an article published in New America Medica authored by Thandisizwe Chimurenga entitled "How Toxic is Black Hair Care?" discussed prior and ongoing research regarding EDCs in black hair care products, and noted that "a team of researchers led by Dr. Lauren Wise of Boston University's Slone Epidemiology Center found strong evidence indicating that Black women's hair relaxer use increases the risk for uterine fibroid tumors by exposing Black women to various chemicals through scalp lesions and burns from the products."

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

71.     Chimurenga further noted that "May of 2011, Dr. Mary Beth Terry and others authored a study, the findings of which showed that African-American and African-Caribbean women were more likely to be exposed to hormonally-active chemicals in hair products."

72.     An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer. It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

73.     Dr. Terry's study, "Racial/Ethnic Differences in Hormonally-Active Hair Product Use: A Plausible Risk Factor for Health Disparities," published in the Journal of Immigrant Health, found that the African-American and African Caribbean women surveyed used products that contained chemicals—commonly referred to as endocrine-disrupting chemicals (EDCs)—linked to various reproductive and birth defects, breast cancer and heart disease.

74.     Studies have shown that black women have elevated levels of phthalates in their urine compared to white women. Additionally, a May 2021 study showed higher levels of parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

75.     In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

76.     The synergistic effects of the combination of the known EDCs in the hair relaxers and other unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

77.    Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

78.    Despite decades of studies revealing the harmful effects of EDCs, the presence of EDCs in chemical hair relaxers, and the overwhelming disparity of gynecologic related injuries in black women that are known to be caused by EDC exposure, Defendants continue to produce the chemical hair relaxers without warning of the toxicity to the consumer.

## PLAINTIFF KAREN UQDAH'S HAIR RELAXER USE

79.    Plaintiff, Karenn Uqdah, consistently and frequently used Hair Relaxers, starting in 1968 through her final use on or around 2018.

80.    For decades, Mrs. Uqdah used the Chemical Hair Relaxer Products, which are manufactured and advertised by the named Manufacturer Defendants.

### L'Oréal Defendants

81.    Mrs. Uqdah used different variations of L'Oréal Defendants' Dark & Lovely hair relaxers, including but not limited to Dark and Lovely Beautiful Beginnings No-Mistake Smooth Relaxer.

82.    Mrs. Uqdah used different variations of L'Oréal Defendants' Optimum hair relaxers, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

83.    Mrs. Uqdah used different variations of L'Oréal Defendants' Bantu hair relaxers, including but not limited to Bantu No Base Relaxer.

84.    Mrs. Uqdah used different variations of L'Oréal Defendants' Mizani hair relaxers, including but not limited to Mizani Sensitive Scalp Relaxer.

Case ID: 241002269
Control No.: 24112026

85.    Mrs. Uqdah has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oréal Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Strength of Nature Defendants</u>

86.    Mrs. Uqdah used different variations of Strength of Nature Defendants' African Pride hair relaxers, including but not limited to:

    a.  African Pride Olive Miracle Deep Conditioning Crème-on-Crème No Lye Relaxer 8 Salon Pack Touch-UpsGentle Treatment No-Lye Relaxer

    b.  African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer

    c.  African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer With Aloe Deep Conditioner

    d.  African Pride Olive Miracle Deep Conditioning No-Lye Relaxer One Complete Application; and,

    e.  African Pride Olive Miracle Deep Conditioning No-Lye Relaxer, One Complete Touch-Up.

87.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Dr. Miracle's hair relaxers, including but not limited to Dr. Miracle's No Lye Relaxer Kit.

88.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Gentle Treatment hair relaxers, including but not limited to Gentle Treatment No-Lye Relaxer.

89.    Mrs. Uqdah used different variations of Strength of Nature Defendants' TCB hair relaxers, including but not limited to:

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

    a.  TCB Naturals Conditioning Argan Oil Vitamin E & Olive No-Lye Relaxer, 2

        Applications; and,

    b.  TCB No-Base Crème Hair Relaxer with Protein & DNA.

90.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxers, including but not limited to:

    a.    UltraSheen Supreme Conditioning No-Lye RelaxerGentle Treatment No-

        Lye Relaxer

    b.    UltraSheen Ultra Moisturizing No-Lye Relaxer; and,

    c.    UltraSheen Ultra Moisturizing No-Lye Relaxer, with Keratin.

91.    Mrs. Uqdah has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

House of Cheatham Defendants

92.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Africa's Best hair relaxers, including but not limited to Africa's Best Herbal Intensive No-Lye Relaxer System.

93.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Affirm hair relaxers, including but not limited to:

    a.    Affirm Crème Relaxer; and,

    b.    Affirm Sensitive Scalp Relaxer.

94.    Mrs. Uqdah has reason to believe that House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

products known to House of Cheatham, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

### Defendant Luster Products

95.    Mrs. Uqdah used different variations of Defendant Luster Products' Luster Pink Oil hair relaxers, including but not limited to Luster's Pink Oil Moisturizer No-Lye Conditioning Relaxer.

96.    Mrs. Uqdah has reason to believe that Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Luster Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

### Defendant AFAM

97.    Mrs. Uqdah used different variations of Defendant AFAM's Hawaiian Silky hair relaxers, including but not limited to Hawaiian Silky - Crème Conditioning No Lye Silky Smooth Sheen Relaxer.

98.    Mrs. Uqdah has reason to believe that Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant AFAM Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

### Defendant Avlon

99.    Mrs. Uqdah used different variations of Defendant Avlon's Affirm hair relaxers, including but not limited to:

      a.      Affirm Crème Relaxer; and,

      b.      Affirm Sensitive Scalp Relaxer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

100.   Mrs. Uqdah has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

101.   She reapplied the relaxer to newly grown hair approximately every three months at both home and add hair salons using home hair relaxer kits until her last application on or around 2018.

102.   Mrs. Uqdah purchased hair relaxer home kits from various retailers, including but not limited to Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant.

103.   Mrs. Uqdah purchased multiple hair relaxer home kits from Giant for several years up until 2015, including the Chemical Hair Relaxer Products.

104.   The Chemical Hair Relaxer Products purchased and used by the Mrs. Uqdah to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

105.   Mrs. Uqdah has reason to believe that the Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm contained:

      a.   phthalates, including but not limited to diethyl phthalate (DEP), bis(2-ethyhexyl) phthalate (DEHP), and benzylbutyl phthalate

      b.   Bisphenol A;

      c.   cyclosiloxanes, including but not limited to octamethylcycloetrasiloxane (D4), decamethylcyclopentasiloxane (D5), and dodecamethylcyclohexylsiloxane (D6) parabens, including but not limited methyl paraben, ethyl paraben, bis(2-ethylhexyl);

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

d.      antimicrobials, including but not limited to o-phenylphenol, triclosan, and triclocarban;

e.      ethanolamines, including but not limited to menoethanolamine and diethanolamine;

f.      alkylphenols, including but not limited to 4-t-octylphenol, 4-t-nonylphenol, nonylphenol monoethoxylate, and nonylphenol diethoxylate;

g.      UV filters including, but not limited to benzophenone, benzophenone-1, benzophenone-2, benzophenone-3, oxtinoxate, and octadimethyl PABA;

h.      fragrances, including but not limited to benzylcetate, eugenol, hexyl cinnemal, limonene, linalool, methyl eugenol, methyl salicylate, pinene, terpineol, AHTN, bucinal, diphenyl ether, DPMI, HHCB, isobornyl acetate, methyl ionone, musk ketone, musk xylene, and phenethyl alcohol.

106.    The Chemical Hair Relaxer Products purchased and used by Mrs. Uqdah increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

## HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS

107.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

108.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

109.    Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

110.    There are two types of endometrial cancers. Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

111.    Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

112.    Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

113.    Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

114.    Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

115.    One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body. Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

116.    Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

117.    For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

118.    Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

119.    Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

120.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

121.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

122.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

123.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

124.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

125.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

126.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

127.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

relaxers. Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70. However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

128.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years. The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

129.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

130.    The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

## PLAINTIFF KAREN UQDAH'S CANCER DIAGNOSIS

131.    In December of 2016, at the age of fifty-eight, Ms. Uqdah was diagnosed with endometrial adenocarcinoma, FIGO grade 2.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

132.    Mrs. Uqdah's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

133.    Ms. Uqdah suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy, radiation, and chemotherapy.

## DISCOVERY RULE

134.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

135.    Plaintiffs reserve the right to plead and invoke the discovery rule. Mrs. Uqdah's endometrial cancer is a latent injury. Accordingly, under such circumstances, Plaintiffs could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiffs lacked the salient facts behind the cause of her endometrial cancer, and Plaintiffs could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiffs' action.

136.    Further, Plaintiffs did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

137.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Mrs. Uqdah at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiffs.

## COUNT I
## STRICT LIABILITY – DESIGN DEFFECT

Page **28** of **41**

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

**(Karen Uqdah v. All Defendants)**

138.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

139.     At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and distribution of the Chemical Hair Relaxer Products in a defective and unreasonably dangerous condition to consumers, including Mrs. Uqdah.

140.     Mrs. Uqdah used the Chemical Hair Relaxer Products frequently and consistently.

141.     Defendants marketed and advertised the Chemical Hair Relaxer Products as a safe product for use by consumers, specifically to black women and women of color, including Mrs. Uqdah, despite knowing that they contained EDCs and other harmful chemicals.

142.     At all relevant times, the Chemical Hair Relaxer Products reached their intended consumers, including Mrs. Uqdah, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

143.     Manufacturer Defendants had a duty to create the Chemical Hair Relaxer Products in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

144.     Retailer Defendants had a duty to ensure that the Chemical Hair Relaxer Products were not defective and safe for their intended use before selling said products to consumers, such as Ms. Uqdah.

145.     Defendants' Chemical Hair Relaxer Products were defective as they were formulated, designed, and manufactured with carcinogens.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

146.    The Defendants' Chemical Hair Relaxer Products were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as Mrs. Uqdah, would contemplate.

147.    Further, the magnitude of the danger associated with use of the Chemical Hair Relaxer Products outweighs the utility of these products.

148.    The dangers of the Chemical Hair Relaxer Products were unknown to the ordinary consumer.

149.    Mrs. Uqdah did not know of these dangers. If she would have known, these dangers would have been unacceptable to her, and she would not have used the Chemical Hair Relaxer Products.

150.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

151.    At the time of Mrs. Uqdah's exposure, the Chemical Hair Relaxer Products were being used in a normal, intended, or anticipated manner, as a chemical hair straightener product.

152.    Mrs. Uqdah used the Chemical Hair Relaxer Products without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

153.    The foreseeable risks associated with use of the Chemical Hair Relaxer Products exceeded the alleged benefits associated with their design and formulation.

154.    Defects in Defendants' Chemical Hair Relaxer Products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

155.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and,

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

### COUNT II
### STRICT LIABILITY – FAILURE TO WARN
### (Karen Uqdah v. All Defendants)

156.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

157.    Mrs. Uqdah brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

158.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products, which are defective and unreasonably dangerous to its consumers, including Mrs. Uqdah because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

159.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

160.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

161.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

162.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of the Chemical Hair Relaxer Products; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

163.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

164.    Mrs. Uqdah reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

165.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Mrs. Uqdah could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

166.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Mrs. Uqdah was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

167.    Defendants' failure to warn regarding the dangers associated with use of the Chemical Hair Relaxer Products increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

168.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

        a.    Economic losses, including medical care and lost earnings; and

        b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

### COUNT III
### NEGLIGENCE
### (Karen Uqdah v. Manufacturer Defendants)

169.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

170.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products.

171.    Mrs. Uqdah used the Chemical Hair Relaxer Products.

172.    Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of the Chemical Hair Relaxer Products, including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

173.    Defendants had a duty to provide true and accurate information and warnings concerning the risks of using the Chemical Hair Relaxer Products.

174.    Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products and the propensity for the Hair Relaxers to cause cancer.

175.    Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of the Chemical Hair Relaxer Products were unaware of the carcinogenic risks associated with use of the product.

176.    Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

        a.     Failing to sufficiently test the Chemical Hair Relaxer Products to determine whether they were safe for their intended use;

        b.     Failing to sufficiently test the Chemical Hair Relaxer Products to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

c.     Marketing, advertising, and recommending the use of the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

d.     Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

e.     Failing to disclose the risk of serious harm associated with use the Chemical Hair Relaxer Products;

f.     Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use the Chemical Hair Relaxer Products;

g.     Failing to use reasonable and prudent care in the design, development, and manufacturing of the Chemical Hair Relaxer Products, so as to avoid the risk of serious harm associated with use;

h.     Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within the Chemical Hair Relaxer Products, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

i.     Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to the Chemical Hair Relaxer Products, such as side effects of exposure to endocrine-disrupting chemicals;

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

j.     Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included the Chemical Hair Relaxer Products; and,

k.     Marketing, advertising, and recommending the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

l.     Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

m.     Failing to disclose the risk of serious harm associated with use of Chemical Hair Relaxer Products;

n.     Representing that the Chemical Hair Relaxer Products were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not; and

o.     Continuing to manufacture and sell the Chemical Hair Relaxer Products, with the knowledge that the relaxers were unreasonably safe and dangerous.

177.    It was reasonably foreseeable that consumers, including Mrs. Uqdah, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Chemical Hair Relaxer Products.

178.    Defendants' negligent decisions to market and distribute the Chemical Hair Relaxer Products increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Mrs. Uqdah's cancer.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

179.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

  a. Economic losses, including medical care and lost earnings; and,

  b. Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES
### (Karen Uqdah v. All Defendants)

180.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

181.    At all relevant times, Manufacturer Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Chemical Hair Relaxer Products that Mrs. Uqdah used into the stream of commerce.

182.    At the time Manufacturer and Retailer Defendants, marketed, sold, and distributed their Chemical Hair Relaxer Products for use by Mrs. Uqdah, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

183.    Before the time of Mrs. Uqdah's use of the Chemical Hair Relaxer Products, Defendants impliedly warranted to consumers, including Mrs. Uqdah, that their relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

184.    Defendants, however, failed to disclose that the Chemical Hair Relaxer Products have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Mrs. Uqdah's cancer.

185.    Mrs. Uqdah reasonably relied upon the skill, superior knowledge, and judgment of Defendants, and upon their implied warranties that their Chemical Hair Relaxer Products were of merchantable quality and fit for their intended purpose or use.

186.    Manufacturer Defendants' Chemical Hair Relaxer Products were expected to reach, and did in fact reach, consumers and/or users, including Mrs. Uqdah, without substantial change in the condition in which they were manufactured and by Manufacturer Defendants and sold by Retailer Defendants.

187.    At all relevant times to this litigation, Defendants were aware that consumers and users of their Chemical Hair Relaxer Products, including Mrs. Uqdah, would use the products as marketed; therefore, Mrs. Uqdah was a foreseeable user of the Chemical Hair Relaxer Products.

188.    Defendants intended that their Chemical Hair Relaxer Products relaxers be used in the manner in which Mrs. Uqdah was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

189.    In reliance on Defendants' implied warranty, Mrs. Uqdah used the Chemical Hair Relaxer Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Manufacturer and Retailer Defendants.

190.    Mrs. Uqdah could not have reasonably discovered or known of the risks of serious injury associated with the Chemical Hair Relaxer Products.

191.    Defendants breached their implied warranty to Mrs. Uqdah in that the Chemical Hair Relaxer Products were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

192.    Defendants' Chemical Hair Relaxer Products have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Mrs. Uqdah sustained.

193.    The harm caused by Defendants' Chemical Hair Relaxer Products far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

194.    As a direct and proximate result of Defendants' wrongful acts and omissions Mrs. Uqdah has suffered severe and permanent physical and emotional injuries.

195.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.    Economic losses, including medical care and lost earnings; and

      b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

### COUNT V
### LOSS OF CONSORTIUM
### (Emmanuel Bullock v. All Defendants)

196.    The Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

197.    As a result of the negligence detailed at length above of all the above-named Defendants, their agents, servants, employees and agents ostensible or direct set forth herein, Plaintiff Emmanuel Bullock suffered the loss of services, society and comfort and companionship of his wife, Karen Uqdah.

1.    As the result of the negligence of the above-named Defendants, Emmanuel Bullock claims the full measure of damages allowable under Pennsylvania law for the loss of consortium of his wife, Karen Uqdah.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:    October 17, 2024

Case ID: 241002269
Case ID: 241002269
Control No.: 24112026

## **VERIFICATION**

I, Karen Uqdah, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: _10/17/2024_

Karen Uqdah, Plaintiff

## **VERIFICATION**

I, Emmanuel Bullock, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: ___10/17/2024___

Emmanuel Bullock, Plaintiff

# Exhibit A-9

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE  (Attorney I.D. No.: 40928)
      TOBI L. MILLROOD, ESQUIRE  (Attorney I.D. No.: 77764)
      BRADEN R. LEPISTO, ESQUIRE  (Attorney I.D. No.: 313586)
      SHERRELL L. DANDY, ESQUIRE (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                ATTORNEYS FOR PLAINTIFF

Filed and Attested by the
Office of Judicial Records
15 NOV 2024 04:25 pm
S. GILLIAN

| | |
|---|---|
| **KAREN UQDAH** and **EMMANUEL BULLOK,** h/w<br><br>        *Plaintiff,*<br><br>    V.<br><br>**L'ORÉAL USA, INC.,** et al.<br><br>        *Defendants.* | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>OCTOBER TERM, 2024<br><br>NO. 02269<br><br>**<u>JURY TRIAL DEMANDED</u>** |

<u>**PRAECIPE TO REINSTATE COMPLAINT**</u>

TO THE PROTHONOTARY:

    Kindly reinstate the attached Complaint for an additional thirty (30) days.

                        **KLINE & SPECTER, P.C.**

By:    _____
                        SHERRELL L. DANDY, ESQUIRE
                        *Attorney for Plaintiffs*

Date: <u>November 15, 2024</u>

Case ID: 241002269

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**OCTOBER 2024**                    **02269**

E-Filing Number: 2410041108

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN UQDAH | L'ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| EMMANUEL BULLOCK | L'ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1049 LAURELEE AVENUE<br>READING PA 19605 | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
|  | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
|  | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 11 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | |
|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort            ☐ Commerce            ☐ Settlement<br>☐ Savings Action     ☐ Minor Court Appeal  ☐ Minors<br>☐ Petition             ☐ Statutory Appeals   ☐ W/D/Survival |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

OCT **17** 2024

**L. BREWINGTON**

IS CASE SUBJECT TO
COORDINATION ORDER?

YES          NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>KAREN UQDAH , EMMANUEL BULLOCK</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C.<br>1525 LOCUST STREET<br>19TH FLOOR<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)772-1000 | none entered | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 309348 | sherrell.dandy@klinespecter.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *SHERRELL DANDY* | Thursday, October 17, 2024, 04:07 pm |

Case ID: 241002269

**COMPLETE LIST OF DEFENDANTS:**

1. L☐ORÉAL USA, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
2. L☐ORÉAL USA PRODUCTS, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
   10 HUDSON YARDS
   NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
   64 ROSS ROAD
   SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
   64 ROSS ROAD
   SAVANNAH GA 31405
6. BEAUTY BELL ENTERPRISE
   ALIAS: HOUSE OF CHEATHAM LLC
   647 MIMOSA BLVD.
   ROSWELL GA 30075
7. HOUSE OF CHEATHAM, LLC
   1445 ROCK MOUNTAIN BLVD
   STONE MOUNTAIN GA 30083
8. LUSTER PRODUCTS, INC.
   1104 WEST 43RD STREET
   CHICAGO IL 60609
9. AFAM CONCEPT, INC.
   ALIAS: JF LABS, INC.
   7401 S. PULASKI ROAD
   CHICAGO IL 60629
10. AVLON INDUSTRIES, INC.
    1999 NORTH 15TH STREET
    MELROSE PARK IL 60160
11. THE GIANT COMPANY, LLC
    1149 HARRISBURG PIKE
    CARLISLE PA 17013

Case ID: 241002269

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE   (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE   (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE  (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                ATTORNEYS FOR PLAINTIFFS

*Filed and Attested by the Office of Judicial Records 17 OCT 2024 04:11 pm L. BREWINGTON*

---

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W<br>1049 LAURELEE AVENUE<br>READING, PA 19605<br><br>*Plaintiffs*<br><br>V.<br><br>L'ORÉAL USA, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10017<br><br>AND<br><br>L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405<br><br>AND | IN THE COURT OF COMMON PLEAS<br>*PHILADELPHIA* COUNTY,<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Case ID: 241002269

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

BEAUTY BELL ENTERPRISE D/B/A
HOUSE OF CHEATHAM, INC. AND
HOUSE OF CHEATHAM LLC
647 MIMOSA BLVD
ROSWELL, GA 30075

AND

HOUSE OF CHEATHAM, LLC
1445 ROCK MOUNTAIN BLVD
STONE MOUNTAIN, GA 30083

AND

LUSTER PRODUCTS, INC.
1104 WEST 43RD STREET
CHICAGO, IL 60609

AND

AFAM CONCEPT, INC. D/B/A JF LABS,
INC.
7401 S. PULASKI ROAD
CHICAGO, IL 60629

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

THE GIANT COMPANY, LLC
1149 HARRISBURG PIKE
CARLISLE, PA 17013

*Defendants*

Case ID: 241002269

**NOTICE TO PLEAD**



Filed and Attested by the
Office of Judicial Records
15 NOV 2024 04:41 pm
S. GILLIAM

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 241002269

## CIVIL ACTION – COMPLAINT

Plaintiffs, Karen Uqdah and Emmanuel Bullock, through their undersigned counsel, Kline & Specter, P.C., hereby demand damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.     Plaintiffs Karen Uqdah and Emmanuel Bullock are adult individual citizens and residents of Pennsylvania, residing therein at 1049 Laurelee Avenue, Reading, PA 19605.

2.     Defendant, L'Oréal USA, Inc., ("L'Oréal") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

3.     Defendant, L'Oréal USA Products, Inc., ("L'Oréal Products") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

4.     Defendant, SoftSheen-Carson, LLC, ("Softsheen") is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.     Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson, LLC, will be collectively referred to as "L'Oréal Defendants."

Case ID: 241002269

6.     Defendant Strength of Nature, LLC, ("Strength of Nature") is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

7.     Defendant Godrej SON Holdings, Inc., ("Godrej") is, a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, GA. Upon information and belief, at all times relevant to this action, Godrej SON Holdings, Inc., has been the sole member and interested party of Strength of Nature, LLC.

8.     Defendants Strength of Nature, LLC and Godrej SON Holdings, Inc. will be collectively referred to as "Strength of Nature Defendants."

9.     Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. ("Beauty Bell") is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Blvd, Roswell, Georgia 30075. Upon information and belief, Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Gorgia.

10.     Defendant House of Cheatham, LLC, ("House of Cheatham") is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

11.     Defendants Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc and House of Cheatham, LLC, will be collectively referred to as "House of Cheatham Defendants."

Case ID: 241002269

12.     Defendant Luster Products, Inc. ("Luster Products") is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd Street, Chicago, IL 60609.

13.     Defendant AFAM Concept, Inc. d/b/a JF Labs Inc. ("AFAM"), is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, IL 60629.

14.     Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

15.     Defendant The Giant Company, LLC a/k/a and/or d/b/a Giant is a corporation with its principal place of business and headquarters located at 1149 Harrisburg Pike, Carlisle, PA 17013. At all times relevant hereto, The Giant Company owned and/or operated Giant located at 2174 W Union Blvd, Bethlehem, PA 18018.

## **JURISDICTION**

16.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, House of Cheatham Defendants, Defendant Luster Products, Defendant AFAM Concept, and Defendant Avlon Industries (hereinafter "Manufacturer Defendants") contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Mrs. Uqdah purchased and applied to her hair, to various companies and stores within the

Case ID: 241002269

Commonwealth of Pennsylvania, including but not limited to Defendant The Giant Company, LLC (hereinafter "Retailer Defendant").

20.     At all times relevant hereto, Manufacturer Defendants engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to be sold by Retailer Defendant.

21.     At all times relevant hereto, Retailer Defendant conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and merchandise, including Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm (hereinafter "Chemical Hair Relaxer Products") in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including the Chemical Hair Relaxer Products, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.     At all times relevant hereto, Manufacturer Defendants had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.     Additionally, Manufacturer Defendants' presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, Manufacturer Defendants consented to the exercise of

Case ID: 241002269

jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.     A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

25.     Upon information and belief, at all relevant times, Manufacturer Defendants sold their products in Philadelphia County and regularly conducts business in Philadelphia County.

26.     Upon information and belief, at all relevant times, The Giant Company LLC, has and continues to regularly conduct business in Philadelphia County through the operation of their nine Philadelphia retail locations.

27.     The damages Plaintiffs seek, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiffs seek more than $50,000 in damages.

## **FACTUAL BACKGROUND**

28.     At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

    a.     Dark & Lovely

    b.     Optimum

    c.     Bantu; and,

    d.     Mizani.

Case ID: 241002269

29.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Mrs. Uqdah used to chemically straighten her hair:

      a.     African Pride

      b.     Dr. Miracle's

      c.     Gentle Treatment

      d.     TCB; and,

      e.     Ultra Sheen.

30.     At all times material hereto, House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Africa's Best brand that Mrs. Uqdah used to chemically straighten her hair.

31.     At all times material hereto, Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Luster's Pink Oil brand that Mrs. Uqdah used to chemically straighten her hair.

32.     At all times material hereto, Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Hawaiian Silky brand that Mrs. Uqdah used to chemically straighten her hair.

33.     At all times material hereto, Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were

Case ID: 241002269

specifically marketed to black women, including but not limited to the Affirm brand that Mrs. Uqdah used to chemically straighten her hair.

34.    Mrs. Uqdah developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

35.    Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

36.    This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

37.    Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau.  The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

38.    In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool.  The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

39.    In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse. Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

Case ID: 241002269

40. In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

41. Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

42. The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

43. The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

44. For first-time application, the relaxer cream is placed on the hair from the root to the end. After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

45. Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 241002269



46.     In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

47.     In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 241002269



48.     For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

49.     In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child.  Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Case ID: 241002269

50.    Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

51.    Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



52.    It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

53.    The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:



Case ID: 241002269






54.     Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

**ENDOCRINE DISRUPTING CHEMICALS**

55.     Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 241002269

56.     These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

57.     EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

58.     This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

59.     A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

60.     Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

**Phthalates**

61.     Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

62.     Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

63.     Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 241002269

64.     Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

65.     In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

66.     Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

**Parabens**

67.     Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

68.     Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

69.     A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

70.     In February of 2012, an article published in New America Medica authored by Thandisizwe Chimurenga entitled "How Toxic is Black Hair Care?" discussed prior and ongoing research regarding EDCs in black hair care products, and noted that "a team of researchers led by Dr. Lauren Wise of Boston University's Slone Epidemiology Center found strong evidence indicating that Black women's hair relaxer use increases the risk for uterine fibroid tumors by exposing Black women to various chemicals through scalp lesions and burns from the products."

Case ID: 241002269

71.    Chimurenga further noted that "May of 2011, Dr. Mary Beth Terry and others authored a study, the findings of which showed that African-American and African-Caribbean women were more likely to be exposed to hormonally-active chemicals in hair products."

72.    An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

73.    Dr. Terry's study, "Racial/Ethnic Differences in Hormonally-Active Hair Product Use: A Plausible Risk Factor for Health Disparities," published in the Journal of Immigrant Health, found that the African-American and African Caribbean women surveyed used products that contained chemicals—commonly referred to as endocrine-disrupting chemicals (EDCs)—linked to various reproductive and birth defects, breast cancer and heart disease.

74.    Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

75.    In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

76.    The synergistic effects of the combination of the known EDCs in the hair relaxers and other unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

Case ID: 241002269

77.     Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

78.     Despite decades of studies revealing the harmful effects of EDCs, the presence of EDCs in chemical hair relaxers, and the overwhelming disparity of gynecologic related injuries in black women that are known to be caused by EDC exposure, Defendants continue to produce the chemical hair relaxers without warning of the toxicity to the consumer.

### PLAINTIFF KAREN UQDAH'S HAIR RELAXER USE

79.     Plaintiff, Karenn Uqdah, consistently and frequently used Hair Relaxers, starting in 1968 through her final use on or around 2018.

80.     For decades, Mrs. Uqdah used the Chemical Hair Relaxer Products, which are manufactured and advertised by the named Manufacturer Defendants.

### L'Oréal Defendants

81.     Mrs. Uqdah used different variations of L'Oréal Defendants' Dark & Lovely hair relaxers, including but not limited to Dark and Lovely Beautiful Beginnings No-Mistake Smooth Relaxer.

82.     Mrs. Uqdah used different variations of L'Oréal Defendants' Optimum hair relaxers, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

83.     Mrs. Uqdah used different variations of L'Oréal Defendants' Bantu hair relaxers, including but not limited to Bantu No Base Relaxer.

84.     Mrs. Uqdah used different variations of L'Oréal Defendants' Mizani hair relaxers, including but not limited to Mizani Sensitive Scalp Relaxer.

Case ID: 241002269

85.     Mrs. Uqdah has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oréal Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>Strength of Nature Defendants</u>

86.     Mrs. Uqdah used different variations of Strength of Nature Defendants' African Pride hair relaxers, including but not limited to:

a.  African Pride Olive Miracle Deep Conditioning Crème-on-Crème No Lye Relaxer 8 Salon Pack Touch-UpsGentle Treatment No-Lye Relaxer

b.  African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer

c.  African Pride Olive Miracle Deep Conditioning Curls & Coils Texturizer With Aloe Deep Conditioner

d.  African Pride Olive Miracle Deep Conditioning No-Lye Relaxer One Complete Application; and,

e.  African Pride Olive Miracle Deep Conditioning No-Lye Relaxer, One Complete Touch-Up.

87.     Mrs. Uqdah used different variations of Strength of Nature Defendants' Dr. Miracle's hair relaxers, including but not limited to Dr. Miracle's No Lye Relaxer Kit.

88.     Mrs. Uqdah used different variations of Strength of Nature Defendants' Gentle Treatment hair relaxers, including but not limited to Gentle Treatment No-Lye Relaxer.

89.     Mrs. Uqdah used different variations of Strength of Nature Defendants' TCB hair relaxers, including but not limited to:

Case ID: 241002269

    a.  TCB Naturals Conditioning Argan Oil Vitamin E & Olive No-Lye Relaxer, 2

        Applications; and,

    b.  TCB No-Base Crème Hair Relaxer with Protein & DNA.

90.    Mrs. Uqdah used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxers, including but not limited to:

    a.    UltraSheen Supreme Conditioning No-Lye RelaxerGentle Treatment No-

          Lye Relaxer

    b.    UltraSheen Ultra Moisturizing No-Lye Relaxer; and,

    c.    UltraSheen Ultra Moisturizing No-Lye Relaxer, with Keratin.

91.    Mrs. Uqdah has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

<u>House of Cheatham Defendants</u>

92.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Africa's Best hair relaxers, including but not limited to Africa's Best Herbal Intensive No-Lye Relaxer System.

93.    Mrs. Uqdah used different variations of House of Cheatham Defendants' Affirm hair relaxers, including but not limited to:

    a.    Affirm Crème Relaxer; and,

    b.    Affirm Sensitive Scalp Relaxer.

94.    Mrs. Uqdah has reason to believe that House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer

Case ID: 241002269

products known to House of Cheatham, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

Defendant Luster Products

95.     Mrs. Uqdah used different variations of Defendant Luster Products' Luster Pink Oil hair relaxers, including but not limited to Luster's Pink Oil Moisturizer No-Lye Conditioning Relaxer.

96.     Mrs. Uqdah has reason to believe that Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Luster Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

Defendant AFAM

97.     Mrs. Uqdah used different variations of Defendant AFAM's Hawaiian Silky hair relaxers, including but not limited to Hawaiian Silky - Crème Conditioning No Lye Silky Smooth Sheen Relaxer.

98.     Mrs. Uqdah has reason to believe that Defendant AFAM developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant AFAM Products, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

Defendant Avlon

99.     Mrs. Uqdah used different variations of Defendant Avlon's Affirm hair relaxers, including but not limited to:

      a.     Affirm Crème Relaxer; and,

      b.     Affirm Sensitive Scalp Relaxer.

Case ID: 241002269

100.    Mrs. Uqdah has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Mrs. Uqdah, that contained endocrine disrupting chemicals.

101.    She reapplied the relaxer to newly grown hair approximately every three months at both home and add hair salons using home hair relaxer kits until her last application on or around 2018.

102.    Mrs. Uqdah purchased hair relaxer home kits from various retailers, including but not limited to Sally Beauty, BJ's Wholesale Club, Walmart, Kmart, and Giant.

103.    Mrs. Uqdah purchased multiple hair relaxer home kits from Giant for several years up until 2015, including the Chemical Hair Relaxer Products.

104.    The Chemical Hair Relaxer Products purchased and used by the Mrs. Uqdah to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

105.    Mrs. Uqdah has reason to believe that the Dark & Lovely, Optimum, Bantu, Mizani, Gentle Treatment, TCB, Africa's Best, Luster's Pink Oil, Hawaiian Silky, and Affirm contained:

    a.    phthalates, including but not limited to diethyl phthalate (DEP), bis(2-ethyhexyl) phthalate (DEHP), and benzylbutyl phthalate

    b.    Bisphenol A;

    c.    cyclosiloxanes, including but not limited to octamethylcycloetrasiloxane (D4), decamethylcyclopentasiloxane (D5), and dodecamethylcyclohexylsiloxane (D6) parabens, including but not limited methyl paraben, ethyl paraben, bis(2-ethylhexyl);

Case ID: 241002269

d.        antimicrobials, including but not limited to o-phenylphenol, triclosan, and triclocarban;

e.        ethanolamines, including but not limited to menoethanolamine and diethanolamine;

f.        alkylphenols, including but not limited to 4-t-octylphenol, 4-t-nonylphenol, nonylphenol monoethoxylate, and nonylphenol diethoxylate;

g.        UV filters including, but not limited to benzophenone, benzophenone-1, benzophenone-2, benzophenone-3, oxtinoxate, and octadimethyl PABA;

h.        fragrances, including but not limited to benzylcetate, eugenol, hexyl cinnemal, limonene, linalool, methyl eugenol, methyl salicylate, pinene, terpineol, AHTN, bucinal, diphenyl ether, DPMI, HHCB, isobornyl acetate, methyl ionone, musk ketone, musk xylene, and phenethyl alcohol.

106.    The Chemical Hair Relaxer Products purchased and used by Mrs. Uqdah increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

### HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS

107.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

108.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

109.    Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

Case ID: 241002269

110.    There are two types of endometrial cancers.  Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

111.    Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

112.    Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

113.    Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

114.    Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

115.    One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body.  Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

116.    Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

117.     For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

118.    Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

119.    Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

Case ID: 241002269

120.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

121.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

122.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

123.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

124.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

125.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

126.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

127.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair

Case ID: 241002269

relaxers. Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70. However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

128.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years. The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

129.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

130.    The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

### PLAINTIFF KAREN UQDAH'S CANCER DIAGNOSIS

131.    In December of 2016, at the age of fifty-eight, Ms. Uqdah was diagnosed with endometrial adenocarcinoma, FIGO grade 2.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 241002269

132.     Mrs. Uqdah's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

133.     Ms. Uqdah suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy, radiation, and chemotherapy.

**DISCOVERY RULE**

134.     Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

135.     Plaintiffs reserve the right to plead and invoke the discovery rule.  Mrs. Uqdah's endometrial cancer is a latent injury.  Accordingly, under such circumstances, Plaintiffs could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiffs lacked the salient facts behind the cause of her endometrial cancer, and Plaintiffs could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiffs' action.

136.     Further, Plaintiffs did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

137.     The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Mrs. Uqdah at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiffs.

**COUNT I**
**STRICT LIABILITY – DESIGN DEFFECT**

Case ID: 241002269

## (Karen Uqdah v. All Defendants)

138.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

139.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and distribution of the Chemical Hair Relaxer Products in a defective and unreasonably dangerous condition to consumers, including Mrs. Uqdah.

140.     Mrs. Uqdah used the Chemical Hair Relaxer Products frequently and consistently.

141.    Defendants marketed and advertised the Chemical Hair Relaxer Products as a safe product for use by consumers, specifically to black women and women of color, including Mrs. Uqdah, despite knowing that they contained EDCs and other harmful chemicals.

142.    At all relevant times, the Chemical Hair Relaxer Products reached their intended consumers, including Mrs. Uqdah, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

143.    Manufacturer Defendants had a duty to create the Chemical Hair Relaxer Products in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

144.    Retailer Defendants had a duty to ensure that the Chemical Hair Relaxer Products were not defective and safe for their intended use before selling said products to consumers, such as Ms. Uqdah.

145.    Defendants' Chemical Hair Relaxer Products were defective as they were formulated, designed, and manufactured with carcinogens.

Case ID: 241002269

146. The Defendants' Chemical Hair Relaxer Products were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as Mrs. Uqdah, would contemplate.

147. Further, the magnitude of the danger associated with use of the Chemical Hair Relaxer Products outweighs the utility of these products.

148. The dangers of the Chemical Hair Relaxer Products were unknown to the ordinary consumer.

149. Mrs. Uqdah did not know of these dangers. If she would have known, these dangers would have been unacceptable to her, and she would not have used the Chemical Hair Relaxer Products.

150. Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

151. At the time of Mrs. Uqdah's exposure, the Chemical Hair Relaxer Products were being used in a normal, intended, or anticipated manner, as a chemical hair straightener product.

152. Mrs. Uqdah used the Chemical Hair Relaxer Products without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

153. The foreseeable risks associated with use of the Chemical Hair Relaxer Products exceeded the alleged benefits associated with their design and formulation.

154. Defects in Defendants' Chemical Hair Relaxer Products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

Case ID: 241002269

155.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.    Economic losses, including medical care and lost earnings; and,

      b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN
### (Karen Uqdah v. All Defendants)

156.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

157.    Mrs. Uqdah brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

158.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products, which are defective and unreasonably dangerous to its consumers, including Mrs. Uqdah because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

Case ID: 241002269

159.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

160.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

161.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

162.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of the Chemical Hair Relaxer Products; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

163.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

164.    Mrs. Uqdah reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

165.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Mrs. Uqdah could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

Case ID: 241002269

166.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Mrs. Uqdah was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

167.    Defendants' failure to warn regarding the dangers associated with use of the Chemical Hair Relaxer Products increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Mrs. Uqdah's cancer.

168.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

> a.    Economic losses, including medical care and lost earnings; and
>
> b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

**COUNT III**
**NEGLIGENCE**
**(Karen Uqdah v. Manufacturer Defendants)**

169.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

Case ID: 241002269

170.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products.

171.     Mrs. Uqdah used the Chemical Hair Relaxer Products.

172.     Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of the Chemical Hair Relaxer Products, including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

173.     Defendants had a duty to provide true and accurate information and warnings concerning the risks of using the Chemical Hair Relaxer Products.

174.     Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products and the propensity for the Hair Relaxers to cause cancer.

175.     Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of the Chemical Hair Relaxer Products were unaware of the carcinogenic risks associated with use of the product.

176.     Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

    a.     Failing to sufficiently test the Chemical Hair Relaxer Products to determine whether they were safe for their intended use;

    b.     Failing to sufficiently test the Chemical Hair Relaxer Products to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 241002269

c.      Marketing, advertising, and recommending the use of the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

d.      Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

e.      Failing to disclose the risk of serious harm associated with use the Chemical Hair Relaxer Products;

f.      Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use the Chemical Hair Relaxer Products;

g.      Failing to use reasonable and prudent care in the design, development, and manufacturing of the Chemical Hair Relaxer Products, so as to avoid the risk of serious harm associated with use;

h.      Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within the Chemical Hair Relaxer Products, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

i.      Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to the Chemical Hair Relaxer Products, such as side effects of exposure to endocrine-disrupting chemicals;

Case ID: 241002269

j.     Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included the Chemical Hair Relaxer Products; and,

k.     Marketing, advertising, and recommending the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

l.     Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

m.     Failing to disclose the risk of serious harm associated with use of Chemical Hair Relaxer Products;

n.     Representing that the Chemical Hair Relaxer Products were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not; and

o.     Continuing to manufacture and sell the Chemical Hair Relaxer Products, with the knowledge that the relaxers were unreasonably safe and dangerous.

177.    It was reasonably foreseeable that consumers, including Mrs. Uqdah, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Chemical Hair Relaxer Products.

178.    Defendants' negligent decisions to market and distribute the Chemical Hair Relaxer Products increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Mrs. Uqdah's cancer.

Case ID: 241002269

179.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.    Economic losses, including medical care and lost earnings; and,

      b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

**COUNT IV**
**BREACH OF IMPLIED WARRANTIES**
**(Karen Uqdah v. All Defendants)**

180.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

181.     At all relevant times, Manufacturer Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Chemical Hair Relaxer Products that Mrs. Uqdah used into the stream of commerce.

182.     At the time Manufacturer and Retailer Defendants, marketed, sold, and distributed their Chemical Hair Relaxer Products for use by Mrs. Uqdah, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 241002269

183.    Before the time of Mrs. Uqdah's use of the Chemical Hair Relaxer Products, Defendants impliedly warranted to consumers, including Mrs. Uqdah, that their relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

184.    Defendants, however, failed to disclose that the Chemical Hair Relaxer Products have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Mrs. Uqdah's cancer.

185.    Mrs. Uqdah reasonably relied upon the skill, superior knowledge, and judgment of Defendants, and upon their implied warranties that their Chemical Hair Relaxer Products were of merchantable quality and fit for their intended purpose or use.

186.    Manufacturer Defendants' Chemical Hair Relaxer Products were expected to reach, and did in fact reach, consumers and/or users, including Mrs. Uqdah, without substantial change in the condition in which they were manufactured and by Manufacturer Defendants and sold by Retailer Defendants.

187.    At all relevant times to this litigation, Defendants were aware that consumers and users of their Chemical Hair Relaxer Products, including Mrs. Uqdah, would use the products as marketed; therefore, Mrs. Uqdah was a foreseeable user of the Chemical Hair Relaxer Products.

188.    Defendants intended that their Chemical Hair Relaxer Products relaxers be used in the manner in which Mrs. Uqdah was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

Case ID: 241002269

189.    In reliance on Defendants' implied warranty, Mrs. Uqdah used the Chemical Hair Relaxer Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Manufacturer and Retailer Defendants.

190.    Mrs. Uqdah could not have reasonably discovered or known of the risks of serious injury associated with the Chemical Hair Relaxer Products.

191.    Defendants breached their implied warranty to Mrs. Uqdah in that the Chemical Hair Relaxer Products were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

192.    Defendants' Chemical Hair Relaxer Products have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Mrs. Uqdah sustained.

193.    The harm caused by Defendants' Chemical Hair Relaxer Products far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

194.    As a direct and proximate result of Defendants' wrongful acts and omissions Mrs. Uqdah has suffered severe and permanent physical and emotional injuries.

195.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Mrs. Uqdah sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.    Economic losses, including medical care and lost earnings; and

      b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

Case ID: 241002269

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

**COUNT V**
**LOSS OF CONSORTIUM**
**(Emmanuel Bullock v. All Defendants)**

196.    The Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

197.    As a result of the negligence detailed at length above of all the above-named Defendants, their agents, servants, employees and agents ostensible or direct set forth herein, Plaintiff Emmanuel Bullock suffered the loss of services, society and comfort and companionship of his wife, Karen Uqdah.

1.    As the result of the negligence of the above-named Defendants, Emmanuel Bullock claims the full measure of damages allowable under Pennsylvania law for the loss of consortium of his wife, Karen Uqdah.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Case ID: 241002269

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____

SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:  October 17, 2024

Case ID: 241002269

## <u>VERIFICATION</u>

I, Karen Uqdah, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: __10/17/2024__

_____
Karen Uqdah, Plaintiff

## <u>VERIFICATION</u>

I, Emmanuel Bullock, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: __10/17/2024__

_____
Emmanuel Bullock, Plaintiff

# Exhibit A-10

**KLINE & SPECTER, P.C.**

By:   SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE      (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE      (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE     (Attorney I.D. No.: 309348)

Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                    *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:46 am G. IMPERATO*

---

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | |
| V. | October Term, 2024 |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

---

**AFFIDAVIT OF SERVICE**

COMMONWEALTH OF PENNSYLVANIA    :
                                                                  : SS
COUNTY OF PHILADELPHIA             :


        CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, L'Oreal USA Products, Inc.** via Certified Mail, Return Receipt Requested and that same was received on October 24, 2024, and received by Defendant's front desk agent and/or representative. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this _13th_ day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 241002269

# EXHIBIT "A"

Case ID: 241002269

**KLINE & SPECTER** PC
ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

———

215-792-5608
FAX: 215-402-2352

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0464 93 / 9590 9402 8751 3310 0833 51**

L'Oreal USA Products, Inc.
10 Hudson Yards
New York, NY 10001

     **Re:**    ***Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.***

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

    Very truly yours

*Sherrell L. Dandy*

Sherrell L. Dandy

SLD/cm
encls

Case ID: 241002269

# USPS Tracking®

FAQs >

**Tracking Number:**

## 9589071052702357046493

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:06 pm on October 24, 2024 in NEW YORK, NY 10001.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Front Desk/Reception/Mail Room**
NEW YORK, NY 10001
October 24, 2024, 2:06 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ∨ |
| --- | --- |

| USPS Tracking Plus® | ∨ |
| --- | --- |

| Product Information | ∨ |
| --- | --- |

Feedback

**See Less ∧**

Track Another Package

[ Enter tracking or barcode numbers ]

## Need More Help?

Contact USPS Tracking support for further assistance.

[ **FAQs** ]

Case ID: 241002269

# Exhibit A-11

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE     (Attorney I.D. No.: 40928)
      TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
      BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
      SHERRELL L. DANDY, ESQUIRE   (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                          *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:48 am C. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | |
| | October Term, 2024 |
| V. | |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA      :
                                  : SS
COUNTY OF PHILADELPHIA            :


        CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024 , I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, Soft Sheen-Carson, LLC via Certified Mail, Return Receipt Requested and that same was received on October 24, 2024, and received by Defendant's front desk agent and/or representative. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

                                          _____
                                          CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this _____ day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 241002269

# EXHIBIT "A"

Case ID: 241002269

## KLINE & SPECTER PC

ATTORNEYS AT LAW
1525LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY

215-792-5608

FAX: 215-402-2352

SHERRELL.DANDY@KLINESPECTER.COM

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 09 / 9590 9402 8751 3310 0833 68**

Soft Sheen-Carson, LLC
10 Hudson Yards
New York, NY 10001

    *Re:*    *Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

Very truly yours

*Sherrell L. Dandy*

Sherrell L. Dandy

SLD/cm
encls

11/13/24, 1:34 PM                                          USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs ›

Tracking Number:                                                                        Remove ✕

## 9589071052702357046509

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:06 pm on October 24, 2024 in NEW YORK, NY 10001.

**Get More Out of USPS Tracking:**

    USPS Tracking Plus®

## Delivered

**Delivered, Front Desk/Reception/Mail Room**

NEW YORK, NY 10001
October 24, 2024, 2:06 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

**See Less** ⌃

Track Another Package

    Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

    FAQs

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9589071052702357046509

# Exhibit A-12

**ppKLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
      TOBI L. MILLROOD, ESQUIRE     (Attorney I.D. No.: 77764)
      BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
      SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)

Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                              *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:20 am G. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | October Term, 2024 |
| V. | |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

<u>**AFFIDAVIT OF SERVICE**</u>

COMMONWEALTH OF PENNSYLVANIA      :
                                  : SS
COUNTY OF PHILADELPHIA            :


    CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, L'Oreal USA, Inc.** via Certified Mail, Return Receipt Requested and that same was received on October 24, 2024, and received by Defendant's front desk agent and/or representative. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this 13th     day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

# EXHIBIT "A"

Case ID: 241002269

# KLINE & SPECTER PC

ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

———————

215-792-5608
FAX: 215-402-2352

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0464 86 / 9590 9402 8751 3310 0833 44**

L'Oreal USA, Inc.
10 Hudson Yards
New York, NY 10001

     ***Re:***    ***Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.***

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

      Very truly yours

*Sherrell L. Dandy*

      Sherrell L. Dandy

SLD/cm
encls

Case ID: 241002269

11/13/24, 1:34 PM                                USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs ›

Tracking Number:                                                                                    Remove ✕

## 9589071052702357046486

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:06 pm on October 24, 2024 in NEW YORK, NY 10001.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered

**Delivered, Front Desk/Reception/Mail Room**
NEW YORK, NY 10001
October 24, 2024, 2:06 pm

See All Tracking History

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

Text & Email Updates                                                              ⌄

USPS Tracking Plus®                                                               ⌄

Product Information                                                               ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 2410022269

# Exhibit A-13

**KLINE & SPECTER, P.C.**
By:  SHANIN SPECTER, ESQUIRE     (Attorney I.D. No.: 40928)
     TOBI L. MILLROOD, ESQUIRE   (Attorney I.D. No.: 77764)
     BRADEN R. LEPISTO, ESQUIRE  (Attorney I.D. No.: 313586)
     SHERRELL L. DANDY, ESQUIRE  (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                          *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:28 am C. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | |
| V. | October Term, 2024 |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA    :
                                : SS
COUNTY OF PHILADELPHIA          :

CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18,2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, AFAM Concept, Inc.** via Certified Mail, Return Receipt Requested and that same was received on October 25, 2024, and received by Defendant's front desk agent and/or representative. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before this ___ day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

# EXHIBIT "A"

Case ID: 241002269

**KLINE & SPECTER** PC
ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM
————
215-792-5608
FAX: 215-402-2352

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 61 / 9590 9402 8751 3310 0834 29**

AFAM Concept, Inc.
7401 S. Pulaski Rd.
Chicago, IL 60629

    *Re:*    *Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

    Very truly yours

*Sherrell L. Dandy*

Sherrell L. Dandy

SLD/cm
encls

<span style="color:red">Case ID: 241002269</span>

11/13/24, 1:29 PM                              USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Tracking Number:                                                    Remove ✕

## 9589071052702357046561

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 3:35 pm on October 25, 2024 in CHICAGO, IL 60629.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered

**Delivered, Left with Individual**
CHICAGO, IL 60629
October 25, 2024, 3:35 pm

See All Tracking History

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

Text & Email Updates                                                 ⌄

USPS Tracking Plus®                                                   ⌄

Product Information                                                   ⌄

See Less ∧

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9589071052702357046561

# Exhibit A-14

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE        (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE      (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE     (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE     (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                    *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:40 am G. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | October Term, 2024 |
| V. | |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA    :
                                : SS
COUNTY OF PHILADELPHIA          :


    CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18 ,2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, Luster Products, Inc.** via Certified Mail, Return Receipt Requested and that same was received on October 18, 2024, and received by John Hill. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

                                                    _____
                                                     CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this _____ day of
_____, 2024.

_____
           NOTARY PUBLIC

| |
|---|
| Commonwealth of Pennsylvania - Notary Seal |
| ANGELA F. FATTIZZO, Notary Public |
| Philadelphia County |
| My Commission Expires November 9, 2025 |
| Commission Number 1048180 |

Case ID: 241002269

# EXHIBIT "A"

Case ID: 241002269

### KLINE & SPECTER PC
ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY

215-792-5608
FAX: 215-402-2352

SHERRELL.DANDY@KLINESPECTER.COM

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 54 / 9590 9402 8751 3310 0834 12**

Luster Products, Inc.
1104 W. 43rd St.
Chicago, IL 60609

      ***Re:***     ***Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.***

Dear Sir/Madam:

      Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

      Very truly yours

      Sherrell L. Dandy

SLD/cm
encls

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Luster Products, Inc.
1104 W. 43rd Street
Chicago, IL 60609

9590 9402 8751 3310 0834 12

2. Article Number *(Transfer from service label)*

99 0710 5270 2357 0465 54

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

John Grill    10/28

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# Exhibit A-15

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE   (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE   (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE   (Attorney I.D. No.: 309348)

Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                          *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:41 am G. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | |
| V. | October Term, 2024 |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA      :
                                                              : SS
COUNTY OF PHILADELPHIA                    :


       CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, Godrej Son Holdings, Inc.** via Certified Mail, Return Receipt Requested and that same was received on October 31, 2024, and received by David Ditman. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this _____ day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 241002269

# EXHIBIT "A"

Case ID: 241002269

**KLINE & SPECTER** PC

ATTORNEYS AT LAW

1525 LOCUST STREET

PHILADELPHIA, PENNSYLVANIA 19102

WWW.KLINESPECTER.COM

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

215-792-5608

FAX: 215-402-2352

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 23 / 9590 9402 8751 3310 0833 82**

Godrej Son Holdings, Inc.
64 Ross Road
Savannah, GA 31405

     *Re:*    *Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

    Very truly yours

*Sherrell L. Dandy*

Sherrell L. Dandy

SLD/cm
encls

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Dere Dur_  ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery<br>_DAVID DITHM_ |
| 1. Article Addressed to:<br><br>Godrej SON Holdings, Inc.<br>64 Ross Road<br>Savannah, GA 31405 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 8751 3310 0833 82

| 2. Article Number (Transfer from service label) | 3. Service Type | ☐ Priority Mail Express® |
|---|---|---|
| 89 0710 5270 2357 0465 23 | ☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery<br>(over $500) | ☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

PS Form 3811, July 2020 PSN 7530-02-000-9053                    Domestic Return Receipt

Case ID: 241002269

# Exhibit A-16

**KLINE & SPECTER, P.C.**
By:  SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
     TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
     BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
     SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                    *Attorneys for Plaintiffs*



*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:32 am C. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W<br><br>*Plaintiffs*<br><br>V.<br><br>L'ORÉAL USA, INC., et al.<br><br>*Defendants* | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>October Term, 2024<br><br>No. 02269 |

## **AFFIDAVIT OF SERVICE**

COMMONWEALTH OF PENNSYLVANIA        :
                                   : SS
COUNTY OF PHILADELPHIA             :


CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, Avlon Industries** via Certified Mail, Return Receipt Requested and that same was received on October 25, 2024, and received by Defendant's agent and/or representative. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this  13th  day of
_____, 2024
_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 241002269

# EXHIBIT "A"

Case ID: 241002269

**KLINE & SPECTER** PC

ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

———

215-792-5608

FAX: 215-402-2352

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 78 / 9590 9402 8751 3310 0800 22**

Avlon Industries, Inc.
1999 North 15th Street
Melrose Park, IL 60160

   ***Re:***  ***Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.***

Dear Sir/Madam:

   Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

    Very truly yours

    Sherrell L. Dandy

SLD/cm
encls

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X Avlon     ☑ Agent  ☐ Addressee<br>B. Received by (Printed Name)     C. Date of Delivery<br>Avlon     10-25-24 |
| 1. Article Addressed to:<br><br>Avlon Industries, Inc.<br>1999 N. 15th Avenue<br>Melrose Park, IL 60160 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 8751 3310 0800 22

| 3. Service Type | |
|---|---|
| ☑ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☑ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Signature Confirmation™ |
| ☐ Collect on Delivery | ☐ Signature Confirmation |
| ☐ Collect on Delivery Restricted Delivery | Restricted Delivery |
| ☐ Insured Mail | |
| ☐ Insured Mail Restricted Delivery (over $500) | |

2. Article Number (Transfer from service label)
9589 0710 5270 2357 0465 78

PS Form 3811, July 2020 PSN 7530-02-000-9053                    Domestic Return Receipt

Case ID: 241002269

# Exhibit A-17

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                               *Attorneys for Plaintiffs*


*Filed and Attested by the
Office of Judicial Records
16 NOV 2024 10:41 am
G. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | |
| V. | October Term, 2024 |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

## <u>AFFIDAVIT OF SERVICE</u>

COMMONWEALTH OF PENNSYLVANIA        :
                                    : SS
COUNTY OF PHILADELPHIA              :


CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, Beauty Bell Enterprise** via Certified Mail, Return Receipt Requested and that same was received on October 25, 2024, and received by Defendant's front desk agent and/or representative. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this 13th day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

# EXHIBIT "A"

Case ID: 241002269

**KLINE & SPECTER** PC
ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM
————
215-792-5608
FAX: 215-402-2352

SHERRELL L. DANDY                                    SHERRELL.DANDY@KLINESPECTER.COM

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 47 / 9590 9402 8751 3310 0833 99**

Beauty Bell Enterprise
647 Mimosa Blvd.
Roswell, GA 30075

      *Re:*    *Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

        Very truly yours

        *Sherrell L. Dandy*

        Sherrell L. Dandy

SLD/cm
encls

Case ID: 241002269

11/13/24, 1:51 PM                    USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Tracking Number:                                                    Remove ✕

## 9589071052702357046547

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 2:17 pm on October 25, 2024 in ROSWELL, GA 30075.

**Get More Out of USPS Tracking:**

   USPS Tracking Plus®

### Delivered
**Delivered, Left with Individual**
ROSWELL, GA 30075
October 25, 2024, 2:17 pm

See All Tracking History

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9589071052702357046547

Case ID: 241092269

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Beauty Bell Enterprise
647 Mimosa Blvd.
Roswell, GA 30075

9590 9402 8751 3310 0833 99

2. Article Number *(Transfer from service label)*

1 0710 5270 2357 0465 47

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Case ID: 241002269

# Exhibit A-18

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE      (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE     (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                          *Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 16 NOV 2024 10:48 am G. IMPERATO*

| | |
|---|---|
| KAREN UQDAH AND EMMANUEL BULLOCK, H/W | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiffs* | October Term, 2024 |
| V. | |
| L'ORÉAL USA, INC., et al. | No. 02269 |
| *Defendants* | |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA     :
                                                        : SS
COUNTY OF PHILADELPHIA                    :


        CAROLYN METCALF, being duly sworn according to law, deposes and says that on October 18, 2024 , I mailed a true and correct copy of the Complaint in the above-captioned matter to **Defendant, Strength of Nature, LLC** via Certified Mail, Return Receipt Requested and that same was received on  October 31, 2024, and received by David Ditman. A copy of the transmittal letter, and return receipt is attached hereto as Exhibit A.

_____
CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this _____ day of
_____, 2024.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 241002269

# EXHIBIT "A"

Case ID: 241002269

# KLINE & SPECTER PC

ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY
SHERRELL.DANDY@KLINESPECTER.COM

215-792-5608
FAX: 215-402-2352

October 18, 2024

**VIA CERTIFIED MAIL/RRR:**
**9589 0710 5270 2357 0465 16 / 9590 9402 8751 3310 0833 75**

Strength of Nature, LLC
64 Ross Road
Savannah, GA 31405

    *Re:*    *Karen Uqdah, et al. v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on October 17, 2024.

    Very truly yours

*Sherrell L. Dandy*

Sherrell L. Dandy

SLD/cm
encls

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Strength of Nature, LLC
64 Ross Road
Savannah, GA 31405

9590 9402 8751 3310 0833 75

2. Article Number *(Transfer from service label)*

89 0710 5270 2357 0465 16

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

DAVID DITMAN

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt